# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Horizon Global Americas Inc., | Case No. 2:17-cv-11879-AC-SDD |
| Plaintiff, | |
| | Hon. Avern Cohn |
| v. | |
| | ***JURY TRIAL DEMANDED*** |
| CURT Manufacturing, LLC, | |
| Defendant. | |

## DEFENDANT'S ANSWER AND COUNTERCLAIMS

David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
(216) 348-5400
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Timothy J. Lowe (P68669)
MCDONALD HOPKINS LLC
39533 Woodward Ave., Suite 318
Bloomfield Hills, Michigan 48034
(248) 646-5070
tlowe@mcdonaldhopkins.com

*Attorneys for Plaintiff and
Counterdefendant Horizon Global
Americas Inc.*

J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
315 East Eisenhower Parkway,
Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
mhuget@honigman.com
swaidelich@honigman.com

*Attorneys For Defendant and
Counterclaimant CURT
Manufacturing, LLC*

Defendant CURT Manufacturing, LLC ("CURT") answers the complaint ("Complaint") of Plaintiff Horizon Global Americas Inc. ("Horizon" or "Plaintiff") as follows:

## Summary of Case

1.     This is an action for damages and injunctive relief to remedy the infringement by Curt of U.S. Patent Nos. 9,522,583 (the "'583 patent"), 9,248,713 (the "'713 patent"), and 9,592,863 (the "'863 patent"). Collectively, the '583, '713, and '863 patents are the "Patents."

**ANSWER:** CURT admits that the Complaint purports to include claims alleging infringement of the '583 patent, the '713 patent, and the '863 patent, and seeks damages and injunctive relief.  CURT denies both that Plaintiff's allegations have any merit and that Plaintiff is entitled to relief.

2.     The Patents are directed to equipment for the towing industry, including an improved fifth wheel hitch and unique devices for securing trailer safety chains to towing vehicles.

**ANSWER:** CURT admits the patents purport to be directed to equipment for the towing industry.  CURT denies the remaining allegations of this paragraph and denies that the patents are valid.

## The Parties

3.    Horizon is a Delaware corporation with a principal place of business in Michigan. Prior to a recent name change, Horizon was known as Cequent Performance Products, Inc.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

4.    Curt is a Delaware limited liability company with a principal place of business in Wisconsin.

**ANSWER:** Admitted.

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over Horizon's patent infringement claims under 28 U.S.C. § 1331 and § 1338 because it arises under federal law.

**ANSWER:** CURT admits that this Court has subject matter jurisdiction over this action.  CURT denies that Horizon's patent infringement claims have any merit.

6.    This Court has personal jurisdiction over Curt on various grounds, including (without limitation) because it has offered to sell and, upon information and belief, has actually sold products infringing the Patents in Michigan; it has intentionally caused tortious harm to Horizon in Michigan resulting from its infringing activities, with knowledge that such harm would be sustained by Horizon

in Michigan; and, upon information and belief, it has regularly solicited business in Michigan, engaged in a persistent course of conducting business in Michigan, and derived substantial revenue from goods sold in Michigan.

**ANSWER:** CURT admits that this Court has personal jurisdiction over CURT in this action.  CURT denies the remaining allegations of this paragraph.

7.     Venue is proper under 28 U.S.C. § 1400 because Curt has committed acts of infringement in this district, and it has a regular and established place of business in this district. Curt sells products in this district through online stores, including Amazon.com and etrailer.com, and through many brick-and-mortar dealers, installers, and retailers in this district. Furthermore, Curt has a physical warehouse and engineering facility, staffed by Curt employees and engineers, in Wixom, Michigan.

**ANSWER:** CURT admits that venue is proper in the Eastern District of Michigan. CURT admits that it has a regular and established place of business in this district. CURT denies that it has committed acts of infringement in this district or elsewhere.

## Relevant Facts

### I.     Horizon's Legal Rights

8.     Since around 1950, Horizon and its predecessors and affiliates have continually designed, produced, manufactured, and marketed a wide array of towing

and trailer hitch products and accessories for trailer equipment manufacturers, wholesaler-distributors, and retail markets.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

9.      Under its popular *Reese* brand name and other brands, Horizon (and its predecessors) has been a market leader for towing products for decades.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

10.     The '583 patent issued on December 20, 2016.

**ANSWER:** CURT admits that the '583 patent lists an issuance date of December 20, 2016.    CURT denies that the '583 patent was properly issued or is otherwise valid.

11.     The '713 patent issued on February 2, 2016.

**ANSWER:** CURT admits that the '713 patent lists an issuance date of February 2, 2016. CURT denies that the '713 patent was properly issued or is otherwise valid.

12.     The '863 patent issued on March 14, 2017.

**ANSWER:** CURT admits that the '863 patent lists an issuance date of March 14, 2017.  CURT denies that the '863 patent was properly issued or is otherwise valid.

13.     The '583 patent is directed to unique devices and apparatuses for securely and conveniently tying things *(e.g.,* safety chains) to towing vehicles.

5

**ANSWER:** Denied.

14.     The '713 patent is directed to unique devices that can be used to secure a safety chain in gooseneck hitch applications.

**ANSWER:** Denied.

15.      The '863 patent is directed to improved fifth wheel hitch devices.

**ANSWER:** Denied.

16.     Horizon is the exclusive owner of the Patents.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

## II.     Curt's Infringement of the Patents

17.     Curt is making, importing, using, selling, and/or offering to sell products in the United States that: (a) are covered by one or more claims of the '583 patent, including, without limitation, the Curt OEM-compatible gooseneck safety chain anchors (part nos. 60617, 60608, 60617, and 60691); (b) are covered by one or more claims of the '713 patent, including, without limitation, the Curt OEM-Style Gooseneck Hitch for Ram (part no. 60613); and (c) are covered by one or more claims of the '863 patent, including, without limitation, the Curt A.1.6 5th Wheel Hitch. Collectively, the infringing Curt products are the "Infringing Products."

**ANSWER:** Denied.

6

18.     Among its various methods of sale, Curt has been selling the Infringing Products through online stores, including, without limitation, Amazon.com and etrailer.com. Customers in Michigan and other states can order the Infringing Products from those online stores, which the stores will ship to any address in the United States, including in Michigan.

**ANSWER:** Denied.

19.     Curt's website also identifies numerous brick-and-mortar dealers, retailers, and installers in Michigan that sell the Infringing Products.

**ANSWER:** Denied.

### Count One
*Infringement of the '583 patent*

20.     Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above.

21.     Curt has directly infringed, and continues to directly infringe, the '583 patent at least by selling, offering to sell, using, making and/or importing gooseneck safety chain anchors, including (without limitation) part nos. 60617, 60608, 60617, and 60691 (collectively, the "Infringing Anchors").

**ANSWER:** Denied.

22.     As an illustrative example shown below, part no. 60608 (which functions in materially the same way as the other Infringing Anchors) has each of

7

the limitations in claim 1 of the '583 patent. The drawings in the chart are copied from Curt's Installation Instructions for the product (available at *https://assets.curtmfg.com/masterlibrary/60608/installsheet/CM_60608_INS.pdf),* and the photo on p. 8 is of the product itself.

| *Claim Limitation* | *Element on Infringing Product* |
|---|---|
| 1. A tie down apparatus for securing an item, the tie down apparatus comprising: | Curt's website (www.curtmfg.com/part/60608) and the name of the product itself confirm that the anchor is for securing a gooseneck trailer safety chain. |
| a body member rotatable about an axis between first and second rotational positions within a receiving member | Curt's instructions show that the anchor is rotatable about an axis between two positions within a receiving member:<br><br>Figure 3<br><br>Figure 4<br><br>Figure 5 |

| *Claim Limitation* | *Element on Infringing Product* |
|---|---|
| a locking member extending through the body member and being axially moveable relative to the body member between first and second axial positions, wherein the locking member in the second axial position prevents rotation of the body member from the second rotational position to the first rotational position and the locking member is prevented from moving from the first axial position to the second axial position until the body member is rotated from the first rotational position to the second rotational position. | <br>Figure 5<br><br>Figure 6<br><br>The locking member, when in second axial position, prevents the body member from rotating within the receiving member:<br><br><br><br>The Curt anchor must be rotated into the second rotational position before the locking member can be moved into the second axial position, which is confirmed by Curt instructing customers to rotate the anchor 90° before fully inserting the locking member (a 10 mm pin). |

9

| Claim Limitation | Element on Infringing Product |
|---|---|
| | This is further confirmed by the shape of the receiving member shown on the Curt instructions, which will not permit the pin to reach the second axial position while the body member is in the first rotational position:<br><br> |

red shaded region is part of receiving member that prevents pin from reaching second axial position until body member is rotated to second rotational position

when pin moves into second axial position on body member (after Curt anchor is rotated into second rotational position), pin sits in green shaded region of receiving member and thereby prevents anchor from being rotated back to first rotational position.

Figure 3

**<u>ANSWER:</u>** CURT admits that Plaintiff's Complaint includes a chart that purports to show that part no. 60608 contains each of the limitations in claim 1 of the '583 patent.  CURT admits that certain of the images in the chart appear to originate from CURT's installation instructions for part no. 60608.  CURT denies that there is any merit to the remaining allegations within that chart.

10

23.     Upon information and belief, Curt has had actual knowledge of the '583 patent and actual knowledge that its Infringing Anchors infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Anchors. Upon information and belief, Curt knew about the '583 patent prior to this lawsuit at least because: (a) two of its patents (U.S. Patent Nos. 9,452,647 and 8,925,952) cite to Cequent patents (U.S. Patent No. 8,215,658 and 8,360,458) that are related to the '583 patent and which expressly claim priority to the same parent application (12/578,978) as the '583 patent; and (b) Curt and Cequent are head-to-head competitors in the hitch product market and, upon information and belief, Curt has been monitoring Cequent's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Cequent's safety chain tie down product, which is marked with the '583 patent in accordance with 35 U.S.C. § 287(a), and the December 20, 2016 issuance of the '583 patent that covers that product.

**ANSWER:** Denied.

24.     Each of the Infringing Anchor's only commercial use is as a safety chain tie down device.

**ANSWER:** Denied.

25.     Any use of the Infringing Anchors as a safety chain tie down device is an act of direct infringement of the '583 patent.

**ANSWER:** Denied.

26.     Because the sole intended use of the Infringing Anchors is an infringing use, the Infringing Anchors have no substantial non-infringing uses.

**ANSWER:** Denied.

27.     Curt has induced infringement of the '583 patent at least because, with knowledge of the '583 patent, it intentionally and actively induced end users of the Infringing Anchors (through instructions, videos, and otherwise) to use them in a manner that infringes the '583 patent with specific intent that they do so.

**ANSWER:** Denied.

28.     Curt has further induced infringement of the '583 patent at least by selling the Infringing Anchors to distributors, retailers, and other resellers with specific intent that they infringe the '583 patent by reselling the Infringing Anchors to others.

**ANSWER:** Denied.

29.     Curt has contributed to infringement of the '583 patent at least by selling the Infringing Anchors, which have no substantial use other than an infringing use as either chain tie down devices or hitches for towing applications.

**ANSWER:** Denied.

30.     Curt's infringements of the '583 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

31.    Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:** Denied.

## Count Two
*Infringement of the '713 patent*

32.    Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above.

33.    Curt has directly infringed, and continues to directly infringe, the '713 patent at least by selling, offering to sell, using, making and/or importing gooseneck hitch safety chain tie-downs, including (without limitation) the Curt OEM-Style Gooseneck Hitch for Ram, part no. 60613 (collectively, the "Infringing Tie-Downs").

**ANSWER:** Denied.

34.    As an illustrative example of Curt's infringement, part no. 60613 has each of the limitations in claim 1 of the '713 patent. The images in the chart below are screenshots from Curt's installation video for the product (available at http://www.curtmfg.com/part/60613).

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A safety chain engaging device for a towing vehicle having a gooseneck hitch attached with transversely extending frame member of the towing vehicle, the safety chain engaging device comprising: | Curt's website (www.curtmfg.com/part/60613) confirms that the Infringing Tie-Downs are for securing a gooseneck trailer safety chain. |

| Claim Limitation | Element on Infringing Product |
|---|---|
| a first bracket configured to be secured with the frame member of the towing vehicle and having at least a portion thereof configured to be disposed axially beneath the frame member upon securement of the first bracket with the frame member;<br><br>frame member of the towing vehicle<br><br>first bracket, secured to frame with bolts (shown) and nut plates (not shown) | Curt's installation video shows the product has a first bracket as claimed:<br><br> |
| a second bracket attached with the first bracket, the second bracket including a plate member spaced from the first bracket such that at least a portion of the frame member is configured to be positioned between the plate member and the first bracket; and<br><br>second bracket | portion of frame member positioned between the plate member and the first bracket<br><br><br><br>plate member |

14



| Claim Limitation | Element on Infringing Product |
|---|---|
| at least one safety chain engaging member secured with the plate member, wherein the at least one safety chain engaging member is spaced from the frame member upon securement of the first bracket with the frame member. | Top view of safety chain engaging members:<br><br>Bottom view of safety chain engaging members (two u-bolts) secured with the plate member:<br><br>plate member<br><br>both safety chain engaging members are spaced from the frame member<br><br>frame member |

**ANSWER:** CURT admits that Plaintiff's Complaint includes a chart that purports to show that part no. 60613 contains each of the limitations in claim 1 of the '713 patent. CURT admits that certain of the images in the chart appear to originate, in part, from CURT's installation video for part no. 60613. CURT denies that there is any merit to the remaining allegations within that chart.

15

35.     Upon information and belief, Curt has had actual knowledge of the '713 patent and actual knowledge that its Infringing Tie-Downs infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Tie-Downs. Upon information and belief, Curt knew about the '713 patent prior to this lawsuit at least because Curt and Cequent are head-to-head competitors in the hitch product market and, upon information and belief, Curt has been monitoring Cequent's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Cequent's safety chain tie down products, which are marked with the '713 patent in accordance with 35 U.S.C. § 287(a), and the February 2, 2016 issuance of the '713 patent that covers those products.

**ANSWER:** Denied.

36.     Each of the Infringing Tie-Downs' only commercial use is as a safety chain tie down device for gooseneck trailer applications.

**ANSWER:** Denied.

37.     Any use of the Infringing Tie-Downs as a safety chain tie down device for gooseneck trailers is an act of direct infringement of the '713 patent.

 **ANSWER:** Denied.

38.     Because the sole intended use of the Infringing Tie-Downs is an infringing use, the Infringing Tie-Downs have no substantial non-infringing uses.

16

**ANSWER:** Denied.

39.     Curt has induced infringement of the '713 patent at least because, with knowledge of the '713 patent, it intentionally and actively induced end users of the Infringing Tie-Downs (through instructions, videos, and otherwise) to use them in a manner that infringes the '713 patent with specific intent that they do so.

**ANSWER:** Denied.

40.     Curt has further induced infringement of the '713 patent by selling the Infringing Tie-Downs to distributors, retailers, and other resellers with specific intent that they infringe the '713 patent by reselling the Infringing Tie-Downs to others.

**ANSWER:** Denied.

41.     Curt has contributed to infringement of the '713 patent at least by selling the Infringing Tie-Downs, which have no substantial use other than an infringing use as chain tie down devices for gooseneck trailer applications.

**ANSWER:** Denied.

42.     Curt's infringements of the '713 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

43.     Horizon has been damaged by Curt's infringing activities, and it will
continue to be irreparably injured unless the infringing activities are enjoined by this
Court.

**ANSWER:** Denied.

<div align="center">

**Count Three**
*Infringement of the '863 patent*

</div>

44.     Horizon incorporates by reference all allegations in all preceding
paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above.

45.     Curt has directly infringed, and continues to directly infringe, the '863
patent at least by selling, offering to sell, using, making and/or importing fifth wheel
hitches with isolation systems including (without limitation) the A16 5th Wheel
Hitch (collectively, the "Infringing Hitches").

**ANSWER:** Denied.

46.   As an illustrative example, part no. 16120 has each of the limitations
in claim 1 of the '863 patent. The drawings in the chart are copied from Curt's
Installation       Instructions       for       the       product       (available       at
*https://assets.curtmfg.com/masterlibrary/16120/installsheet/CM_16120_INS.pdf),*
and the photo on p. 19 is of the product itself.

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A fifth wheel hitch comprising: | Curt's website (www.curtmfg.com/part/ 16120) and the name of the product itself confirm that the product is a fifth wheel hitch. |
| at least one support frame capable of engagement with a towing vehicle; |  support frame that attaches to the tow vehicle's mounting rails<br><br>Figure 24 |

| Claim Limitation | Element on Infringing Product |
|---|---|
| a cross-member attached to said at least one support frame; |  cross-member<br><br>Figure 24 |
| an isolation system operatively coupled with said cross-member, said isolation system comprising: a beam engaged with said cross-member about a first axis, wherein a cross-member isolator dampens longitudinal displacement of said beam generally along said first axis; and |  a beam engaged with cross-member<br><br>cross-member isolator |

20

| Claim Limitation | Element on Infringing Product |
|---|---|
| a skid plate engaged with said beam about a second axis, where a wing isolator dampens radial displacement of said skid plate relative to said second axis. |  |

**ANSWER:** CURT admits that Plaintiff's Complaint includes a chart that purports to show that part no. 16120 contains each of the limitations in claim 1 of the '863 patent. CURT admits that certain of the images in the chart appear to originate from CURT's installation instructions for part no. 16120. CURT denies that there is any merit to the remaining allegations within that chart.

47.    Upon information and belief, Curt has had actual knowledge of the '863 patent and actual knowledge that its Infringing Hitches infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Hitches. Upon information and belief, Curt knew about the '863 patent prior to this lawsuit at least because Curt and Cequent are head-to-head competitors in the hitch product industry and, upon information and

belief, Curt has been monitoring Cequent's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Cequent's fifth wheel hitch products, which are marked with the '863 patent in accordance with 35 U.S.C. § 287(a), and the March 14, 2017 issuance of the '863 patent that covers those products.

**ANSWER:** Denied.

48.     Each of the Infringing Hitches' only commercial use is as a fifth wheel hitch device.

**ANSWER:** Denied.

49.     Any use of the Infringing Hitches as a fifth wheel hitch device is an act of direct infringement of the '863 patent.

**ANSWER:** Denied.

50.     Because the sole intended use of the Infringing Hitches is an infringing use, the Infringing Hitches have no substantial non-infringing uses.

**ANSWER:** Denied.

51.     Curt has induced infringement of the '863 patent at least because, with knowledge of the '863 patent, it intentionally and actively induced end users of the Infringing Hitches (through instructions, videos, and otherwise) to use them in a manner that infringes the '863 patent with specific intent that they do so.

**ANSWER:** Denied.

52.     Curt has further induced infringement of the '863 patent at least by selling the Infringing Hitches to distributors, retailers, and other resellers with specific intent that they infringe the '863 patent by reselling the Infringing Hitches to others.

**ANSWER:** Denied.

53.     Curt has contributed to infringement of the '863 patent at least by selling the Infringing Hitches, which have no substantial use other than an infringing use as a fifth wheel hitch device.

**ANSWER:** Denied.

54.     Curt's infringements of the '863 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

55.     Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:** Denied.

<div align="center">

**ANSWER TO PRAYER FOR RELIEF**

</div>

CURT denies that Plaintiff is entitled to any relief whatsoever, including the relief requested in Plaintiff's Prayer for Relief.

All allegations in the Complaint not specifically admitted or denied are hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

2.     CURT does not infringe, and has not infringed literally or under the doctrine of equivalents under any theory (including jointly, directly, contributorily, or by inducement), any claim of the '583, '713, and '863 patents.

### THIRD DEFENSE

3.     One or more claims of the '583, '713, and '863 patents are invalid because they fail to meet one or more conditions for patentability set forth in Title 35, U.S.C. § 101, *et seq.*, including those of sections 101, 102, 103, and 112.

### FOURTH DEFENSE

4.     By reason of the prior art and/or statements and representations made to and by the United States Patent and Trademark Office during the prosecution of the applications that led to the issuance of the '583, '713, and '863 patents, the '583, '713, and '863 patents are so limited that none of their claims can be construed as covering any activity or product of CURT.

24

## FIFTH DEFENSE

5.      The '583, '713, and '863 patents are unenforceable because of estoppel, laches or other equitable doctrines.

## SIXTH DEFENSE

6.      Plaintiff is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

## SEVENTH DEFENSE

7.      Plaintiff's claims are barred in whole or in part due to Plaintiff's failure to mitigate damages, if any.

## EIGHTH DEFENSE

8.      Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## NINTH DEFENSE

9.      Plaintiff's claims are barred or otherwise limited based on exhaustion, the second-sale doctrine, express or implied license, and restrictions on double recovery.

## TENTH DEFENSE

10.     Plaintiff's claims are barred in whole or in part to the extent that they seek damages for actions occurring after the expiration of the '583, '713, and '863 patents.

## ELEVENTH DEFENSE

11.     Plaintiff's claims for infringement of the '583, '713, and '863 patents are precluded by operation of the reverse doctrine of equivalents.

## RESERVATION OF DEFENSES

12.     CURT reserves the right to add additional defenses pending any further investigation and discovery.

## COUNTERCLAIMS

1.     The Counterclaims asserted below in no way constitute waiver of any defense asserted by CURT.   Thus, subject to and without waiving any of the foregoing defenses, Counterclaimant CURT, by its undersigned counsel, hereby states its Counterclaims:

2.     CURT incorporates by reference its responses to the Complaint in paragraphs 1-55 as though fully set forth herein.

## PARTIES

3.     CURT is a Delaware limited liability company with a principal place of business in Wisconsin.

4.     On information and belief, Counterclaim Defendant Horizon is a Delaware corporation with a principal place of business in Michigan.  Horizon was formerly known as Cequent.  On information and belief, Horizon markets its towing products under the *Reese* brand.  (*See* http://www.horizonglobal.com/brands.)

## JURISDICTION AND VENUE

5.     On June 13, 2017, Horizon filed its Complaint alleging that CURT infringes U.S. Patent Nos. 9,522,583 (the "'583 patent"), 9,248,713 (the "'713 patent), and 9,592,863 (the "'863 patent").

6.     This Court has subject matter jurisdiction over CURT's counterclaims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the patent laws of the United States, Title 35, United States Code, for which jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a).

7.     By filing its Complaint, Horizon has consented to the personal jurisdiction of this Court.

8.     Venue is proper as to Horizon under 28 U.S.C. §§ 1391(b) and 1400 (b).

9.     Horizon, by its Complaint, asserts that CURT has infringed the '583, '713, and '863 patents.  CURT, by its Answer, asserts that it does not infringe the claims of the '583, '713, and '863 patents, and that the claims of the '583, '713, and '863 patents are invalid.  Thus, an actual and justiciable controversy exists between CURT and Horizon concerning the infringement and validity of the claims of the '583, '713, and '863 patents.

## FIRST COUNTERCLAIM
### (Declaration of Noninfringement of the '583 patent)

10.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-9 of its Counterclaims as though fully set forth herein.

11.     CURT does not, and has not, infringed any valid claim of the '583 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '583 patent do not infringe at least because they lack the following limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: "locking member;" "extending through the body member;" "being axially moveable relative to the body member between first and second axial positions;" and "locking member is prevented from moving from the first axial position to the second axial position until the body member is rotated from the first rotational position to the second rotational position."

12.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '583 patent.

## SECOND COUNTERCLAIM
### (Declaration of Invalidity of the '583 patent)

13.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-12 of its Counterclaims as though fully set forth herein.

28

14.     One or more claims of the '583 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.  By way of example, numerous claims of the '583 patent (including the only asserted claim, claim 1) are invalid as anticipated pursuant to 35 U.S.C. § 102 in light of U.S. Patent No. 1,829,293, which has a locking pin (20) axially movable between first and second axial positions.

15.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '583 patent are invalid.

### THIRD COUNTERCLAIM
### (Declaration of Noninfringement of the '713 patent)

16.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-15 of its Counterclaims as though fully set forth herein.

17.     CURT does not, and has not, infringed any valid claim of the '713 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '713 patent do not infringe at least because they are not safety chain engaging devices as claimed in the '713 patent.

18.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '713 patent.

## FOURTH COUNTERCLAIM
### (Declaration of Invalidity of the '713 patent)

19.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-18 of its Counterclaims as though fully set forth herein.

20.     One or more claims of the '713 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.

21.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '713 patent are invalid.

## FIFTH COUNTERCLAIM
### (Declaration of Noninfringement of the '863 patent)

22.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-21 of its Counterclaims as though fully set forth herein.

23.     CURT does not, and has not, infringed any valid claim of the '863 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing

30

the '863 patent do not infringe at least because they lack a cross-member isolator which dampens longitudinal displacement, as required by the claims of the '863 patent.

24.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '863 patent.

## SIXTH COUNTERCLAIM
### (Declaration of Invalidity of the '863 patent)

25.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-24 of its Counterclaims as though fully set forth herein.

26.     One or more claims of the '863 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.  By way of example, numerous claims of the '863 patent (including the only asserted claim, claim 1) are invalid as anticipated pursuant to 35 U.S.C. § 102 in light of U.S. Patent No. 7,475,899, which discloses elastomeric pads for dampening longitudinal displacement.

27.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '863 patent are invalid.

31

## SEVENTH COUNTERCLAIM
### (Infringement of U.S. Patent No. 7,195,269)

28.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-27 of its Counterclaims as though fully set forth herein.

29.     CURT is the owner of the entire right, title and interest in and to U.S. Patent No. 7,195,269 B2 ("the '269 patent"), entitled "Hitch," which was duly issued on March 27, 2007.  A copy of the '269 Patent is attached as **Exhibit A** hereto.

30.     Horizon has infringed and is currently infringing the '269 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '269 patent including at least independent claims 7, 8, and 10.  Such products include at least, for example, Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311.

31.     As an illustrative example, Horizon ball mount product number 7060700 infringes at least claim 10 of the '269 patent as depicted below:

| Claim Limitation | Element of Infringing Product |
|---|---|
| 10. A hitch for use with a hitch receiver of a towing vehicle comprising: | Horizon's      Reese      Brands      website (http://www.reesebrands.com/reese-towpower/ball-mounts-and-hitch-balls/ball-mounts/carbon- |

| Claim Limitation | Element of Infringing Product |
|---|---|
|  | forged/reese-towpower-carbon-forged-black-nickel-interlock-ball-mount-bar-2-in-dr-7060700) confirms that the hitch is intended for use with a hitch receiver and a towing vehicle. |
| a hitch tongue for supporting a ball of a ball hitch, the hitch tongue extending generally horizontally and having a top surface defining a hitch plane; | This image of Horizon part number 7060700 depicts a hitch tongue which is used to support a ball of a ball hitch, with a horizontal orientation and a top surface defining a hitch plane:  |

| Claim Limitation | Element of Infringing Product |
|---|---|
| |  (*See, e.g.*, https://www.amazon.com/Reese-Towpower-7060700-Nickel-Interlock/dp/B009F5ACEA) |
| a hitch engagement sized to be received in the hitch receiver of the towing vehicle, wherein the hitch engagement has a generally uniform height and width, the hitch engagement having a bottom defining a generally horizontal base plane; | This image of Horizon part number 7060700 depicts a hitch engagement sized to be received in the hitch receiver of the towing vehicle, with a generally uniform height and width, with a bottom defining a generally horizontal base plane:  |

| Claim Limitation | Element of Infringing Product |
|---|---|
|  |  hitch engagement having generally uniform height and width |
|  | (*See, e.g.*, https://www.amazon.com/Reese-Towpower-7060700-Nickel-Interlock/dp/B009F5ACEA) |

| Claim Limitation | Element of Infringing Product |
|---|---|
| and a stress reduction connection between the hitch tongue and the hitch engagement, the stress reduction connection defining an open space therewithin, the stress reduction connection comprising a strength bridge disposed above the hitch plane and above the base plane, the strength bridge being wider than the width of the hitch engagement. | This image of Horizon part number 7060700 depicts a stress reduction connection located between the hitch tongue and the hitch engagement, which defines an open space therewithin, that stress reduction comprising a strength bridge that is located above the hitch and base planes.  The website also depicts the strength bridge as being wider than the width of the hitch engagement.  |

| Claim Limitation | Element of Infringing Product |
|---|---|
| |  (*See, e.g.*, https://www.amazon.com/Reese-Towpower-7060700-Nickel-Interlock/dp/B009F5ACEA) |

32.     On information and belief, Horizon has had actual knowledge of the '269 patent and actual knowledge that its ball mount products infringe that patent when they are manufactured, used, imported, sold, or offered for sale.  Yet Horizon has continued to sell the infringing ball mount products.  Upon information and belief, Horizon knew about the '269 patent prior to this lawsuit at least because Horizon and CURT are head-to-head competitors in the hitch product market and towing industry and because Horizon cited CURT's '269 patent on July 24, 2013 to the United States Patent and Trademark Office as part of Horizon's prosecution of the patent application that eventually issued as U.S. Patent No. 9,308,789.  At a minimum, Horizon knew about its infringement of the '269 patent since at least receipt of a July 25, 2017 letter from CURT's counsel, which specifically identified Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311, and their infringement of at least independent claims 7, 8, 10, and 14 of CURT's U.S. Patent 7,195,269.

33.     Each of the infringing ball mount products' only commercial use is as a hitch receiver of a towing vehicle.

34.     Any use of the infringing ball mount products as a hitch receiver of a towing vehicle is an act of direct infringement of the '269 patent.

35.    Because the sole intended use of the infringing ball mount products is an infringing use, the infringing ball mount products have no substantial non-infringing uses.

36.    Horizon induced and is actively inducing the infringement of the '269 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '269 patent.  Such products include at least, for example, Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311.

37.    Horizon has contributorily infringed and is currently infringing the '269 patent, in violation of 35 U.S.C. § 271(c), by among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products that constitute a material part of the '269 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of

the '269 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

38.     Horizon has infringed and is currently infringing the '269 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '269 patent.  Such products include at least, for example, Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311.

39.     Horizon's infringement of the '269 patent has been and continues to be willful and deliberate.

## EIGHTH COUNTERCLAIM
### (Infringement of U.S. Patent No. 7,475,899)

40.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-39 of its Counterclaims as though fully set forth herein.

41.     CURT is the owner of the entire right, title and interest in and to U.S. Patent No. 7,475,899 B2 ("the '899 patent"), entitled "Trailer Hitch," which was duly issued on January 13, 2009.  A copy of the '899 Patent is attached as **Exhibit B** hereto.

40

42.     Horizon has infringed and is currently infringing the '899 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '899 patent including at least independent claims 9 and 13. Such products include at least, for example, Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870.

43.     As an illustrative example, Horizon fifth wheel product number 30867 infringes at least claim 13 of the '899 patent as depicted below:

| Claim Limitation | Element of Infringing Product |
|---|---|
| 13. A trailer hitch for engaging a kingpin of a trailer, the trailer hitch comprising: | Horizon's Reese Products website (http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH) confirms that the trailer hitch is intended for use with a kingpin of a trailer. |

41

| Claim Limitation | Element of Infringing Product |
|---|---|
| a support frame attachable in the bed of a truck; | This image of Horizon fifth wheel product number 30867 depicts a support frame that is attachable in the bed of a truck:<br><br><br><br>(*See, e.g.*, http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH). |

| Claim Limitation | Element of Infringing Product |
|---|---|
| a kingpin retention structure being securable about the kingpin; | This image of Horizon fifth wheel product number 30867 depicts a kingpin retention structure securable about the kingpin:<br><br><br><br>(*See, e.g.*, http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH). |

| Claim Limitation | Element of Infringing Product |
|---|---|
| and a bearing structure supporting the kingpin retention structure from the support frame, the bearing structure permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame and limited side to side movement of the kingpin retention structure relative to the support frame, wherein the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement. | This image of Horizon fifth wheel product number 30867 depicts a bearing structure supporting the kingpin retention structure from the support frame, the bearing structure permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame and limited side to side movement of the kingpin retention structure relative to the support frame, wherein the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement:  (*See, e.g.*, http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH). |

44.     On information and belief, Horizon has had actual knowledge of the '899 patent and actual knowledge that its fifth wheel products infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Horizon has continued to sell the infringing fifth wheel products. Upon information and belief, Horizon knew about the '899 patent prior to this lawsuit at least because Horizon and CURT are head-to-head competitors in the hitch product market and towing industry and because Horizon cited CURT's '899 patent on July 18, 2013 to the United States Patent and Trademark Office as part of Horizon's prosecution of the patent application that eventually issued as U.S. Patent No. 9,511,804. At a minimum, Horizon knew about its infringement of the '899 patent since at least receipt of a July 25, 2017 letter from CURT's counsel, which specifically identified Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870, and their infringement of at least independent claims 9 and 13 of CURT's U.S. Patent 7,475,899.

45.     Each of the infringing fifth wheel products' only commercial use is as a trailer hitch for engaging a kingpin of a trailer.

46.     Any use of the infringing fifth wheel products as a trailer hitch for engaging a kingpin of a trailer is an act of direct infringement of the '899 patent.

47.     Because the sole intended use of the infringing fifth wheel products is an infringing use, the infringing fifth wheel products have no substantial non-infringing uses.

48.     Horizon induced and is actively inducing the infringement of the '899 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '899 patent.  Such products include at least, for example, Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870.

49.     Horizon has contributorily infringed and is currently infringing the '899 patent, in violation of 35 U.S.C. § 271(c), by among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products that constitute a material part of the '899 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '899 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

50.     Horizon has infringed and is currently infringing the '899 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be

46

supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '899 patent.  Such products include at least, for example, Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870.

51.     Horizon's infringement of the '899 patent has been and continues to be willful and deliberate.

## DEMAND FOR JURY TRIAL

52.     CURT demands a jury trial on all claims and issues so triable.

## PRAYER FOR RELIEF

53.     CURT prays for relief as follows:

a) Dismiss with prejudice the Complaint against CURT;

b) The Court enter Judgment in favor of CURT, and against Horizon, on Horizon's claims against CURT for patent infringement;

c) That CURT be found not to infringe the '583, '713, and '863 patents;

d) That the '583, '713, and '863 patents be found invalid;

e) That Judgment be entered that Horizon has directly infringed the '269 and '899 patents;

f) That Judgment be entered that Horizon has induced the

47

infringement of the '269 and '899 patents;

g) That Judgment be entered that Horizon has contributorily infringed the '269 and '899 patents;

h) That Judgment be entered against Horizon and in favor of CURT in all respects;

i) The Court award CURT its costs and disbursements associated with this action;

j) That Horizon be ordered to provide an accounting;

k) That the infringement by Horizon be adjudged willful and that the damages be increased under 35 U.S.C. § 284 to three times the amount found or measured;

k) The Court find this case exceptional under 35 U.S.C. § 285 and order Horizon to pay CURT its costs and attorney's fees; and

l) The Court grant such other relief as the Court deems just and proper.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
*Attorneys for Defendant and Counterclaimant
CURT Manufacturing, LLC*


By: /s/ J. Michael Huget
J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
315 East Eisenhower Parkway
Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
mhuget@honigman.com
Dated: January 8, 2018        swaidelich@honigman.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2018, my assistant electronically filed the foregoing paper with the Clerk of Court using the ECF system, which will send notification of such filing to all attorneys of record.

<div style="margin-left: 40%;">

By:   <u>/s/ J. Michael Huget</u>
J. Michael Huget (P39150)
315 East Eisenhower Parkway
Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
mhuget@honigman.com

</div>