# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| Horizon Global Americas Inc., | Case No. 2:17-cv-11879-AC-SDD |
| Plaintiff, | Hon. Avern Cohn |
| v. | *JURY TRIAL DEMANDED* |
| CURT Manufacturing, LLC, | |
| Defendant. | |

## DEFENDANT'S ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
(216) 348-5400
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Timothy J. Lowe (P68669)
MCDONALD HOPKINS LLC
39533 Woodward Ave., Suite 318
Bloomfield Hills, Michigan 48034
(248) 646-5070
tlowe@mcdonaldhopkins.com

*Attorneys for Plaintiff and
Counterdefendant Horizon Global
Americas Inc.*

J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
315 East Eisenhower Parkway,
Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
mhuget@honigman.com
swaidelich@honigman.com

*Attorneys For Defendant and
Counterclaimant CURT
Manufacturing, LLC*

Defendant CURT Manufacturing, LLC ("CURT") answers the second amended complaint ("Second Amended Complaint") of Plaintiff Horizon Global Americas Inc. ("Horizon" or "Plaintiff") as follows:

## Summary of Case

1.     This is an action for damages and injunctive relief to remedy the infringement by Curt of U.S. Patent Nos. 9,522,583 ("the '583 patent"), 8,360,458 ("the '458 patent"), 8,215,658 ("the '658 patent"), 9,248,713 ("the '713 patent"), 9,592,863 ("the '863 patent"), 8,179,142 ("the '142 patent"), 6,068,352 ("the '352 patent"), and 6,012,780 ("the '780 patent"). Collectively, the '583, '458, '658, '713, '863, '142, '352, and '780 patents are the "Patents."

**ANSWER:** CURT admits that the Second Amended Complaint purports to include claims alleging infringement of the '583 patent, the '458 patent, the '658 patent, the '713 patent, the '863 patent, the '142 patent, the '352 patent, and the '780 patent, and seeks damages and injunctive relief.  CURT denies both that Plaintiff's allegations have any merit and that Plaintiff is entitled to relief.

2.     The Patents are directed to equipment for the towing industry, including improved fifth wheel hitch devices, unique devices for securing trailer safety chains to towing vehicles, improved trailer signal converters, and improved trailer brake controllers.

**ANSWER:** CURT admits the patents purport to be directed to equipment for the

2

towing industry.  CURT denies the remaining allegations of this paragraph and denies that the patents are valid.

## The Parties

3.     Horizon is a Delaware corporation with a principal place of business in Michigan.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

4.     Curt is a Delaware limited liability company with a principal place of business in Wisconsin.

**ANSWER:** Admitted.

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over Horizon's patent infringement claims under 28 U.S.C. § 1331 and § 1338 because it arises under federal law.

**ANSWER:** CURT admits that this Court has subject matter jurisdiction over this action.  CURT denies that Horizon's patent infringement claims have any merit.

6.     This Court has personal jurisdiction over Curt on various grounds, including (without limitation) because it has offered to sell and, upon information and belief, has actually sold products infringing the Patents in Michigan; it has intentionally caused tortious harm to Horizon in Michigan resulting from its

infringing activities, with knowledge that such harm would be sustained by Horizon in Michigan; upon information and belief, it has regularly solicited business in Michigan, engaged in a persistent course of conducting business in Michigan, and derived substantial revenue from goods sold in Michigan; and Curt appeared before this Court and asserted a counterclaim.

**ANSWER:**  CURT admits that this Court has personal jurisdiction over CURT in this action.  CURT denies the remaining allegations of this paragraph.

7.     Venue is proper under 28 U.S.C. § 1400 because Curt has committed acts of infringement in this district, and it has a regular and established place of business in this district. Curt sells products in this district through online stores, including Amazon.com and etrailer.com, and through many brick-and-mortar dealers, installers, and retailers in this district. Furthermore, Curt has a physical warehouse and engineering facility, staffed by Curt employees and engineers, in Wixom, Michigan.

**ANSWER:**  CURT admits that venue is proper in the Eastern District of Michigan. CURT admits that it has a regular and established place of business in this district. CURT denies that it has committed acts of infringement in this district or elsewhere.

**Relevant Facts**

**I.     Horizon's Legal Rights**

8.     Since around 1950, Horizon and its predecessors and affiliates have

4

continually designed, produced, manufactured, and marketed a wide array of towing and trailer hitch products and accessories for trailer equipment manufacturers, wholesaler-distributors, and retail markets.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

9.      Under its popular *Reese*®, *Tekonsha*®, and other brands, Horizon (and its predecessors) has been a market leader for towing products for decades.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

10.     The '583 patent issued on December 20, 2016.

**ANSWER:** CURT admits that the '583 patent lists an issuance date of December 20, 2016.  CURT denies that the '583 patent was properly issued or is otherwise valid.

11.     The '458 patent issued on January 29, 2013.

**ANSWER:** CURT admits that the '458 patent lists an issuance date of January 29, 2013.  CURT denies that the '458 patent was properly issued or is otherwise valid.

12.     The '658 patent issued on July 10, 2012.

**ANSWER:** CURT admits that the '658 patent lists an issuance date of July 10, 2012. CURT denies that the '658 patent was properly issued or is otherwise valid.

13.     The '713 patent issued on February 2, 2016.

**ANSWER:** CURT admits that the '713 patent lists an issuance date of February 2,

2016. CURT denies that the '713 patent was properly issued or is otherwise valid.

14.    The '863 patent issued on March 14, 2017.

**ANSWER:** CURT admits that the '863 patent lists an issuance date of March 14, 2017. CURT denies that the '863 patent was properly issued or is otherwise valid.

15.    The '142 patent issued on May 15, 2012.

**ANSWER:** CURT admits that the '142 patent lists an issuance date of May 15, 2012. CURT denies that the '142 patent was properly issued or is otherwise valid.

16.    The '352 patent issued on May 30, 2000.

**ANSWER:** CURT admits that the '352 patent lists an issuance date of May 30, 2000. CURT denies that the '352 patent was properly issued or is otherwise valid.

17.    The '780 patent issued on January 11, 2000.

**ANSWER:** CURT admits that the '780 patent lists an issuance date of January 11, 2000. CURT denies that the '780 patent was properly issued or is otherwise valid.

18.    The '583, '458, and '658 patents are directed to unique devices and apparatuses for securely and conveniently tying things (*e.g*., safety chains) to towing vehicles.

**ANSWER:** Denied.

19.    The '713 patent is directed to unique devices that can be used to secure a safety chain in gooseneck hitch applications.

**ANSWER:** Denied.

6

20.     The '863 patent is directed to improved fifth wheel hitch devices.

**ANSWER:** Denied.

21.     The '142 patent is directed to improved trailer signal converters.

**ANSWER:** Denied.

22.     The '352 and '780 patents are directed to improved trailer brake controllers.

**ANSWER:** Denied.

23.     Horizon is the exclusive owner of the Patents.

**ANSWER:** CURT lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

## II.     **Curt's Infringement of the Patents**

24.     Curt is making, importing, using, selling, and/or offering to sell products in the United States that: (a) are covered by one or more claims of the '583, '458, and '658 patents, including, without limitation, the Curt OEM-compatible gooseneck safety chain anchors (part nos. 60617, 60608, 60691, 60618, and 60692 and OEM part number 84000862); (b) are covered by one or more claims of the '713 patent, including, without limitation, the Curt OEM-Style Gooseneck Hitch for Ram (part no. 60613); (c) are covered by one or more claims of the '863 patent, including, without limitation, the Curt OEM-compatible and after-market Q-Series 5th Wheel Hitches and A-series 16K and 20K 5th Wheel

Hitches (including part no. 16120 and 16026); (d) are covered by one or more claims of the '142 patent, including, without limitation, the OEM Curt Trailer Signal Converters used on FCA Jeep Renegade vehicles (MY2015 part no. 82215047, manufacturer part nos. 82215047AB and 82214685AC) and Curt after-market Trailer Signal Converters (part nos. 56200 and 56210); and (e) are covered by one or more claims of the '352 and '780 patents, including, without limitation the Curt Triflex brake control (part. no. 51140). Collectively, the infringing Curt products are the "Infringing Products."

**ANSWER:**  Denied.

25.    Among its various methods of sale, Curt has been selling the Infringing Products through online stores, including, without limitation, Amazon.com and etrailer.com.  Customers in Michigan and other states can order the Infringing Products from those online stores, which the stores will ship to any address in the United States, including in Michigan.

**ANSWER:**  Denied.

26.    Curt's website also identifies numerous brick-and-mortar dealers, retailers, and installers in Michigan that sell the Infringing Products.

**ANSWER:**  Denied.

## Count One
*Infringement of the '583 patent*

27.    Horizon incorporates by reference all allegations in all preceding

8

paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**  Admitted or denied as set forth above.

28.    The '583 patent is a continuation-in-part of the application that matured into the '458 patent.

**ANSWER:** Curt admits that the '583 patent is a continuation-in-part of the application that matured into the '458 patent, but denies that either the '583 patent or the '458 patent was properly issued or is otherwise valid.

29.    Curt has directly infringed, and continues to directly infringe, the '583 patent at least by selling, offering to sell, using, making and/or importing gooseneck safety chain anchors, including (without limitation) part nos. 60617, 60608, and 60691 and OEM part no. 84000862 (collectively, the "Infringing Anchors").

**ANSWER:** Denied.

30.    As an illustrative example shown below, part no. 60608 (which functions in materially the same way as the other Infringing Anchors) has each of the limitations in claim 1 of the '583 patent. The drawings in the chart are copied from Curt's Installation Instructions for the product (available at https://assets.curtmfg.com/masterlibrary/60608/installsheet/CM_60608_INS.pdf), and the photo is of the product itself.

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A tie down apparatus for securing an item, the tie down apparatus comprising: | Curt's website (www.curtmfg.com/part/60608) and the name of the product itself confirm that the anchor is for securing a gooseneck trailer safety chain.[1] |
| a body member rotatable about an axis between first and second rotational positions within a receiving member | Curt's instructions show that the anchor is rotatable about an axis between two positions within a receiving member: |

body member

Truck bed

Rear-most under-bed mount (both sides)

receiving member

Figure 3

body member rotating from first to second rotational positions

Figure 4

2 — 3

1

Figure 5

| Claim Limitation | Element on Infringing Product |
|---|---|
| a locking member extending through the body member and being axially moveable relative to the body member between first and second axial positions, wherein the locking member in the second axial position prevents rotation of the body member from the second rotational position to the first rotational position and the locking member is prevented from moving from the first axial position to the second axial position until the body member is rotated from the first rotational position to the second rotational position. | <br><br>The locking member, when in second axial position, prevents the body member from rotating within the receiving member:<br><br><br><br>The Curt anchor must be rotated into the second rotational position before the locking member can be moved into the second axial position, which is confirmed by Curt instructing customers to rotate the anchor 90° before fully inserting the locking member (a 10 mm pin). |



**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 60608 contains each of the limitations in claim 1 of the '583 patent.  CURT admits that certain of the images in the chart appear to originate from CURT's installation instructions for part no.

60608. CURT denies that there is any merit to the remaining allegations within that chart.

31.     Upon information and belief, Curt has had actual knowledge of the '583 patent and actual knowledge that its Infringing Anchors infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Anchors. Upon information and belief, Curt knew about the '583 patent prior to this lawsuit at least because: (a) two of its patents (U.S. Patent Nos. 9,452,647 and 8,925,952) cite to Horizon patents (U.S. Patent No. 8,215,658 and 8,360,458) that are related to the '583 patent and which expressly claim priority to the same parent application (12/578,978) as the '583 patent; and (b) Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and, upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Horizon's safety chain tie down product, which is marked with the '583 patent in accordance with 35 U.S.C. § 287(a), and given the December 20, 2016 issuance of the '583 patent that covers the products.

**ANSWER:** Denied.

32.     Each of the Infringing Anchor's only commercial use is as a safety chain tie down device.

**ANSWER:** Denied.

33.     Any use of the Infringing Anchors as a safety chain tie down device is an act of direct infringement of the '583 patent.

**ANSWER:**  Denied.

34.     Because the sole intended use of the Infringing Anchors is an infringing use, the Infringing Anchors have no substantial non-infringing uses.

**ANSWER:**  Denied.

35.     Curt has induced infringement of the '583 patent at least because, with knowledge of the '583 patent, it intentionally and actively induced end users of the Infringing Anchors (through instructions, videos, and otherwise) to use them in a manner that infringes the '583 patent with specific intent that they do so.

**ANSWER:**  Denied.

36.     Curt has further induced infringement of the '583 patent at least by selling the Infringing Anchors to distributors, retailers, and other resellers with specific intent that they infringe the '583 patent by reselling the Infringing Anchors to others.

**ANSWER:**  Denied.

37.     Curt has contributed to infringement of the '583 patent at least by selling the Infringing Anchors, which have no substantial use other than an infringing use as either chain tie down devices for towing applications.

**ANSWER:**  Denied.

14

38.    Curt's infringements of the '583 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

39.    Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:** Denied.

## Count Two
*Infringement of the '458 patent*

40.    Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above.

41.    The '458 patent is a continuation of the application that matured into the '658 patent.

**ANSWER:** Curt admits that the '458 patent is a continuation of the application that matured into the '658 patent, but denies that either the '458 patent or the '658 patent was properly issued or is otherwise valid.

42.    Curt's Infringing Anchors, described above, indirectly infringe the '458 patent.

**ANSWER:** Denied.

43.    The direct infringement of the '458 patent occurs, at least, when end

15

users use the Infringing Anchors with an OEM underbed puck system, such as those provided with Ford trucks.

**ANSWER:** Denied.

44.    Use of the Infringing Anchors with an underbed system having a rail, socket, and mid rail directly infringes at least claim 1 of the '458 patent.   As an illustrative example shown below, part no. 60609 (which functions in materially the same way as the other Infringing Anchors) has each of the limitations in claim 1 of the '458 patent in operation.

| Claim Limitation | Element on Infringing Product |
| --- | --- |
| 1. A hitch mounting system comprising: | Curt's website (www.curtmfg.com/part/ 60609) confirms that the anchor set is designed to be used for mounting and securing a gooseneck hitch application. |

| Claim Limitation | Element on Infringing Product |
|---|---|
| at least one rail capable of being connected to a vehicle frame; | At least as to Ford pickup trucks, which Curt's website says its #60609 product must be used with,[2] the OEM-supplied underbed "puck" system has "at least one rail capable of being connected to a vehicle frame," which is not visible but shown in blue dotted line below:<br><br><br><br>(pic from Curt's website, www.curtmfg.com/part/60609) |
| at least one socket formed in the at least one rail; | As shown in the picture above (red arrows), the Curt anchors sit in the sockets formed in the side rails under the pickup truck's bed. |
| a mid rail connected to the at least one rail, wherein the mid rail includes a hitch ball socket; | As shown in the picture above, the underbed of at least Ford pickup has a mid rail (dotted yellow lines) connected to the side rails. The mid rail has a hitch ball socket (green arrow). |

| Claim Limitation | Element on Infringing Product |
|---|---|
| a receiving member capable of being secured to the at least one socket; | <br><br>(from Curt installation instructions, available at www.curtmfg.com/part/60609)<br><br>The receiving member is part of OEM-supplied underbed puck system. |
| a body member capable of being inserted into the receiving member; | The Curt safety chain anchors (green arrow above) are the body members capable of being inserted into the receiving member, as shown above. |

18

| Claim Limitation | Element on Infringing Product |
|---|---|
| a locking member extending through the body member, wherein rotating the body member in a direction displaces the locking member perpendicular to the direction of rotation engaging the locking member with the receiving member. |  locking member is silver, L-shaped pin<br><br><br><br>rotating the body member about its longitudinal axis within the receiving member displaces the locking member in a downward direction perpendicular to the direction of rotation<br><br> |

**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 60609 contains each of the limitations in

claim 1 of the '458 patent.  CURT denies that there is any merit to the remaining allegations within that chart.

45.    Upon information and belief, Curt has had actual knowledge of the '458 patent and actual knowledge that its Infringing Anchors infringe that patent when they are manufactured, used, imported, sold, or offered for sale with an underbed puck system. Yet Curt has continued to sell the Infringing Anchors. Upon information and belief, Curt knew about the '458 patent prior to this lawsuit at least because: (a) two of its patents (U.S. Patent Nos. 9,452,647 and 8,925,952) cite to the '458 patent; and (b) Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities so that Curt was undoubtedly aware of Horizon's safety chain tie down product, which is marked with the '458 patent in accordance with 35 U.S.C. § 287(a), and given the January 29, 2013 issuance of the '458 patent that covers the products.

**ANSWER:** Denied.

46.    Each of the Infringing Anchor's only commercial use is a safety chain tie down device with an underbed puck system.

**ANSWER:** Denied.

47.    Any use, sale, or offer of sale of the Infringing Anchors as a safety chain tie down device with an underbed puck system is an act of direct infringement of the

'458 patent.

**ANSWER:** Denied.

48.     Because the sole intended use of the Infringing Anchors is an infringing use, the Infringing Anchors have no substantial non-infringing uses.

**ANSWER:** Denied.

49.     Curt has induced infringement of the '458 patent at least because, with knowledge of the '458 patent, it intentionally and actively induced end users of the Infringing Anchors (through instructions, videos, and otherwise) to use them in a manner that infringes the '458 patent with specific intent that they do so.

**ANSWER:** Denied.

50.     Curt has contributed to infringement of the '458 patent at least by selling the Infringing Anchors, which have no substantial use other than an infringing use as chain tie down devices for towing applications.

**ANSWER:** Denied.

51.     Curt's infringements of the '458 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

52.     Horizon has been damages by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:** Denied.

**Count Three**
*Infringement of the '658 patent*

53.     Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above. Curt's Infringing Anchors, described above, indirectly infringe the

'658 patent.

**ANSWER:** Denied.

54.     The direct infringement of the '658 patent occurs, at least, when end users use the Infringing Members with an OEM underbed puck system, such as those provided with Ford trucks.

**ANSWER:** Denied.

55.     Use of the Infringing Anchors with an underbed system having a receiving member directly infringes at least claim 1 of the '658 patent.  As an illustrative example shown below, part no. 60609 (which functions in materially the same way as the other Infringing Anchors) has each of the limitations in claim 1 of the '658 patent in operation.

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A tie down apparatus for securing an item, said tie down apparatus comprising: | Curt's website (www.curtmfg.com/part/60609) confirms that the anchor set is designed to be used for tying down and securing a gooseneck hitch application. |

| Claim Limitation | Element on Infringing Product |
|---|---|
| a receiving member having an opening located there through; | <br><br>Figure 5<br><br>(from Curt installation instructions, available at www.curtmfg.com/part/60609)<br><br>The receiving member is part of OEM-supplied underbed puck system. |
| a tie down member having at least one aperture, | The tie down member has an aperture through its body:<br><br><br><br>Figure 5<br><br>(from Curt installation instructions, available at www.curtmfg.com/part/60609) |

| Claim Limitation | Element on Infringing Product |
|---|---|
| wherein said tie down member is capable of being located and rotated within said receiving member about an axis; | The tie down is placed in tie down member and rotated:<br><br><br><br>Figure 6<br><br>(from Curt installation instructions, available at www.curtmfg.com/part/60609) |
| a locking member having at least one leg capable of being housed within said at least one aperture; | locking member is silver, L-shaped pin<br><br> |

| Claim Limitation | Element on Infringing Product |
|---|---|
| wherein upon rotation of said tie down member said locking member moves axially perpendicular relative to said axis of rotation of said tie down member engaging said receiving member, thereby trapping the tie down member to the receiving member. |  rotating the body member about its longitudinal axis within the receiving member displaces the locking member in a downward direction perpendicular to the direction of rotation |

**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 60609 contains each of the limitations in claim 1 of the '658 patent. CURT denies that there is any merit to the remaining allegations within that chart.

56.     Upon information and belief, Curt has had actual knowledge of the '658 patent and actual knowledge that its Infringing Anchors infringe that patent when they are manufactured, used, imported, sold, or offered for sale with an underbed puck system. Yet Curt has continued to sell the Infringing Anchors. Upon information and

belief, Curt knew about the '658 patent prior to this lawsuit at least because: (a) two of its patents (U.S. Patent Nos. 9,452,647 and 8,925,952) cite to the '658 patent; and (b) Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and, upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Horizon's safety chain tie down product, which is marked with the '658 patent in accordance with 35 U.S.C. § 287(a), and given the July 10, 2012 issuance of the '658 patent that covers the products.

**ANSWER:** Denied.

57.    Each of the Infringing Anchor's only commercial use is as a safety chain tie down device to be used with receiving members on OEM underbed puck systems.

**ANSWER:** Denied.

58.    Any use of the Infringing Anchors as a safety chain tie down device with receiving members in an underbed system is an act of direct infringement of the '658 patent.

**ANSWER:** Denied.

59.    Because the sole intended use of the Infringing Anchors is an infringing use, the Infringing Anchors have no substantial non-infringing uses.

**ANSWER:** Denied.

60.    Curt has induced infringement of the '658 patent at least because, with

knowledge of the '658 patent, it intentionally and actively induced end users of the Infringing Anchors (through instructions, videos, and otherwise) to use them in a manner that infringes the '658 patent with specific intent that they do so.

**ANSWER:** Denied.

61.    Curt has contributed to infringement of the '658 patent at least by selling the Infringing Anchors, which have no substantial use other than an infringing use as chain tie down devices for towing applications.

**ANSWER:** Denied.

62.    Curt's infringements of the '658 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

63.    Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:** Denied.

## Count Four
*Infringement of the '713 patent*

65.    Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**  Admitted or denied as set forth above.

66.     Curt has directly infringed, and continues to directly infringe,

the'713 patent at least by selling, offering to sell, using, making and/or importing safety chain tie-downs, including (without limitation) the Curt OEM-Style Gooseneck Hitch for Ram, part no. 60613 (collectively, the "Infringing Tie-Downs").

**ANSWER:** Denied.

67.    As an illustrative example of Curt's infringement, part no. 60613 has each of the limitations in claim 1 of the '713 patent. The images in the chart below are screenshots from Curt's installation video for the product (available at http://www.curtmfg.com/part/60613).

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A safety chain engaging device for a towing vehicle having a gooseneck hitch attached with transversely extending frame member of the towing vehicle, the safety chain engaging device comprising: | Curt's website (www.curtmfg.com/part/60613) confirms that the Infringing Tie-Downs are for securing a gooseneck trailer safety chain. |

| Claim Limitation | Element on Infringing Product |
|---|---|
| a first bracket configured to be secured with the frame member of the towing vehicle and having at least a portion thereof configured to be disposed axially beneath the frame member upon securement of the first bracket with the frame member;<br><br><span style="color:red">frame member of the towing vehicle</span><br><br><span style="color:red">first bracket, secured to frame with bolts (shown) and nut plates (not shown)</span> | Curt's installation video shows the product has a first bracket as claimed:<br><br> |
| a second bracket attached with the first bracket, the second bracket including a plate member spaced from the first bracket such that at least a portion of the frame member is configured to be positioned between the plate member and the first bracket; and<br><br><span style="color:red">second bracket</span> | <span style="color:red">portion of frame member positioned between the plate member and the first bracket</span><br><br><br><br><span style="color:red">plate member</span> |



**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 60613 contains each of the limitations in claim 1 of the '713 patent. CURT admits that certain of the images in the chart appear to originate, in part, from CURT's installation video for part no. 60613. CURT denies that there is any merit to the remaining allegations within that chart.

68.     Upon information and belief, Curt has had actual knowledge of the

'713 patent and actual knowledge that its Infringing Tie-Downs infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Tie-Downs. Upon information and belief, Curt knew about the '713 patent prior to this lawsuit at least because Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and, upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Horizon's safety chain tie down products, which are marked with the '713 patent in accordance with 35 U.S.C. § 287(a), and given the February 2, 2016 issuance of the '713 patent that covers the products.

**ANSWER:**  Denied.

69.     Each of the Infringing Tie-Downs' only commercial use is as a safety chain tie down device.

**ANSWER:**  Denied.

70.     Any use of the Infringing Tie-Downs as a safety chain tie down device is an act of direct infringement of the '713 patent.

**ANSWER:**  Denied.

71.     Because the sole intended use of the Infringing Tie-Downs is an infringing use, the Infringing Tie-Downs have no substantial non-infringing uses.

**ANSWER:**  Denied.

72.     Curt has induced infringement of the '713 patent at least because, with knowledge of the '713 patent, it intentionally and actively induced end users of the Infringing Tie-Downs (through instructions, videos, and otherwise) to use them in a manner that infringes the '713 patent with specific intent that they do so.

**ANSWER:**  Denied.

73.     Curt has further induced infringement of the '713 patent by selling the Infringing Tie-Downs to distributors, retailers, and other resellers with specific intent that they infringe the '713 patent by reselling the Infringing Tie-Downs to others.

**ANSWER:**  Denied.

74.     Curt has contributed to infringement of the '713 patent at least by selling the Infringing Tie-Downs, which have no substantial use other than an infringing use as chain tie down devices.

**ANSWER:**  Denied.

75.     Curt's infringements of the '713 patent were, and continue to be, willful and deliberate.

**ANSWER:**  Denied.

76.     Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:**  Denied.

**Count Five**
*Infringement of the '863 patent*

77.    Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**  Admitted or denied as set forth above.

78.    Curt has directly infringed, and continues to directly infringe, the '863 patent at least by selling, offering to sell, using, making and/or importing fifth wheel hitches with isolation systems including (without limitation) the Q-Series and A-Series 16K and 20K 5th Wheel Hitches (collectively, the "Infringing Hitches").

**ANSWER:**  Denied.

79.    As an illustrative example, part no. 16120 has each of the limitations in claim 1 of the '863 patent. The drawings in the chart are copied from Curt's Installation Instructions for the product (available at https://assets.curtmfg.com/masterlibrary/16120/installsheet/CM_16120_INS. pdf), and the photo is of the product itself.

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A fifth wheel hitch comprising: | Curt's website (www.curtmfg.com/part/ 16120) and the name of the product itself confirm that the product is a fifth wheel hitch. |
| at least one support frame capable of engagement with a towing vehicle; | support frame that attaches to the tow vehicle's mounting rails<br><br>Figure 24 |

| Claim Limitation | Element on Infringing Product |
|---|---|
| a cross-member attached to said at least one support frame; | <br>cross-member<br>Figure 24 |
| an isolation system operatively coupled with said cross-member, said isolation system comprising: a beam engaged with said cross-member about a first axis, wherein a cross-member isolator dampens longitudinal displacement of said beam generally along said first axis; and | <br>a beam engaged with cross-member<br>cross-member isolator |



**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 16120 contains each of the limitations in claim 1 of the '863 patent. CURT admits that certain of the images in the chart appear to originate from CURT's installation instructions for part no. 16120. CURT denies that there is any merit to the remaining allegations within that chart.

80. Upon information and belief, Curt has had actual knowledge of the '863 patent and actual knowledge that its Infringing Hitches infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Hitches. Upon information and belief, Curt knew about the '863 patent prior to this lawsuit at least because Curt and Horizon are head-to-head competitors in the hitch product market and towing industry

and, upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Horizon's fifth wheel hitch products, which are marked with the '863 patent in accordance with 35 U.S.C. § 287(a), and given the March 14, 2017 issuance of the '863 patent that covers the products.

**ANSWER:**  Denied.

81.    Each of the Infringing Hitches' only commercial use is as a fifth wheel hitch device.

**ANSWER:**  Denied.

82.    Any use of the Infringing Hitches as a fifth wheel hitch device is an act of direct infringement of the '863 patent.

**ANSWER:**  Denied.

83.    Because the sole intended use of the Infringing Hitches is an infringing use, the Infringing Hitches have no substantial non-infringing uses.

**ANSWER:**  Denied.

84.    Curt has induced infringement of the '863 patent at least because, with knowledge of the '863 patent, it intentionally and actively induced end users of the Infringing Hitches (through instructions, videos, and otherwise) to use them in a manner that infringes the '863 patent with specific intent that they do so.

**ANSWER:**  Denied.

85.    Curt has further induced infringement of the '863 patent at least by selling the Infringing Hitches to distributors, retailers, and other resellers with specific intent that they infringe the '863 patent by reselling the Infringing Hitches to others.

**ANSWER:**  Denied.

86.    Curt has contributed to infringement of the '863 patent at least by selling the Infringing Hitches, which have no substantial use other than an infringing use as a fifth wheel hitch device.

**ANSWER:**  Denied.

87.    Curt's infringements of the '863 patent were, and continue to be, willful and deliberate.

**ANSWER:**  Denied.

88.    Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:**  Denied.

**Count Six**
*Infringement of the '142 patent*

89.    Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above.

90.     Curt has directly infringed, and continues to directly infringe, the '142 patent at least by selling, offering to sell, using, making and/or importing trailer signal converters, including (without limitation) part nos. 56200 and 56210, as well as converters sold to OEMs having manufacturer part nos. 82215047AB and 82214685AC (collectively, the "Infringing Signal Converters").

**ANSWER:** Denied.

91.     An illustrative example shown below, part no. 56200 (which functions in materially the same way as the other Infringing Signal Converters) has each of the limitations in claim 1 of the '142 patent.

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A signal converter comprising: | Curt's website (http://www.curtmfg.com/part/56200) and the name of the product itself confirm that the product is a signal converter. |
| a power supply; | The Curt converter boxes include an onboard power supply that receives power from the vehicle battery. |
| |  |
| | (from Curt installation instructions, available at www.curtmfg.com/part/56200) |

| *Claim Limitation* | *Element on Infringing Product* |
|---|---|
| a microcontroller connected to said power supply, said microcontroller configured to receive a plurality of input signals related to lamp lights of a first vehicle from said first vehicle, and output a plurality of output signals related to one or more vehicle lamp light loads of a second vehicle; | Curt's website (http://www.curtmfg.com/part/56200) describes the product as having a microcontroller as claimed. For example: "This CURT electrical converter is designed to convert an ST (stop/tail) pulse width modulation (PWM) system to a 2-wire system and provides a standard 4-way flat connector socket to plug in your trailer." |
| a current sensing device connected to said microcontroller to monitor current flow at said loads; and | Investigation and testing of the accused product shows the product has a current sensing device as claimed. On information and belief, the software code and schematics for the products should be produced by Curt in discovery and will further demonstrate this element is met. |
| wherein, said microcontroller is capable of reducing the duty cycle of one or more of said output signals in response to said current flow rising above a first predetermined threshold. | Investigation and testing of the accused product shows the product has a current sensing device as claimed. On information and belief, the software code and schematics for the products should be produced by Curt in discovery and will further demonstrate this element is met. |

**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 56200 contains each of the limitations in claim 1 of the '142 patent. CURT denies that there is any merit to the remaining allegations within that chart.

92.    Upon information and belief, Curt has had actual knowledge of the '142 patent and actual knowledge that its Infringing Signal Converters infringe that patent

40

when they are manufactured, used, imported, sold, or offered for sale.  Yet Curt has continued to sell the Infringing Signal Converters. Upon information and belief, Curt knew about the '142 patent prior to the lawsuit at least because Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and, upon information and belief, Curt has been monitoring Horizon's products, its marketing and related patent activities, so that Curt was undoubtedly aware of Horizon's trailer signal converter product, and given the May 15, 2012 issuance of the '142 patent the covers the products.

**ANSWER:** Denied.

93.     Each of the Infringing Signal Converter's only commercial use is as a trailer signal converter.

**ANSWER:** Denied.

94.     Any use of the Infringing Signal Converters as a trailer signal converter is an act of direct infringement of the '142 patent.

**ANSWER:** Denied.

95.     Because the sole intended use of the Infringing Signal Converters is an infringing use, the Infringing Signal Converters have no substantial non-infringing uses.

**ANSWER:** Denied.

96.    Curt has induced infringement of the '142 patent at least because, with knowledge of the '142 patent, it intentionally and actively induced end users of the Infringing Signal Converters (through instructions, videos, and otherwise) to use them in a manner that infringes the '142 patent with specific intent that they do so.

**ANSWER:** Denied.

97.    Curt has further induced infringement of the '142 patent at least by selling the Infringing Signal Converters to distributors, retailers, and other resellers with specific intent that they infringe the '142 patent by reselling the Infringing Signal Converters to others.

**ANSWER:** Denied.

98.    Curt has contributed to infringement of the '142 patent at least by selling the Infringing Signal Converters, which have no substantial use other than an infringing use as trailer signal converters.

**ANSWER:** Denied.

99.    Curt's infringements of the '142 patent were, and continue to be, willful and deliberate.

**ANSWER:** Denied.

100.    Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparable [sic] injured unless the infringing activities are enjoined by this Court.

**ANSWER:** Denied.

## Count Seven
*Infringement of the '352 patent*

101. Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:** Admitted or denied as set forth above.

102. Curt has directly infringed, and continues to directly infringe, the '352 patent at least by selling, offering to sell, using, making and/or importing brake controllers, including (without limitation) the Curt Triflex brake control part no. 51140 (collectively, the "Infringing Brake Controllers").

**ANSWER:** Denied.

103. As an illustrative example shown below, part no. 51140 (which functions in materially the same way as the other Infringing Brake Controllers) has each of the limitations in claim 1 of the '352 patent. The drawings in the chart are copied from Curt's Installation Instructions for the product available at https://assets.curtmfg.com/masterlibrary/51140/installsheet/CME_51140_INS.PDF ).

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A brake controller for controlling the brakes of a towed vehicle, said brake controller comprising: | Curt's website (http://www.curtmfg.com/part/51140) and the name of the product itself confirm that the controller is for controlling the brakes of a towed vehicle. |

43

| Claim Limitation | Element on Infringing Product |
|---|---|
| an input circuit for generating a brake level signal representing the braking force to be applied by the towed vehicle's brakes; | Curt's website confirms the product has an input circuit as claimed. For example: "This proportion-based brake control features a compact size, a digital display and the ability to manage up to eight brakes at a time. The feature that sets the TriFlex apart from all others is its triple-axis motion-sensing accelerometer. This integrated circuit component allows the TriFlex to detect every motion of your vehicle and trailer with exact precision and to then apply the perfect amount of braking power for every situation." Investigation and testing of the accused product also shows the product has an input circuit as claimed. On information and belief, the software code and schematics for the products should be produced by Curt in discovery and will further demonstrate this element is met. |
| a display circuit including a plurality of indicator lights; | Curt's website states and shows the product has a display circuit with a plurality of indicator lights. So does the instruction sheet.  |

| Claim Limitation | Element on Infringing Product |
|---|---|
| | **Digital Display**<br>The digital display shows the output setting when the control is activated. It is used to setup and monitor the brake control and can be used when trouble shooting.<br><br>Blank display, does not illuminate when control is activated, check installation — Flashing, trailer disconnected, off after 60 seconds<br>Blank display, standby mode, illuminates when control is activated — Recalibration needed, unplug and replug trailer connector<br>Standby mode, no trailer connected — Calibrating<br>Standby mode, trailer connected — Overloaded output circuit, trailer brake system fault<br>Brakes activated — Low voltage, tow vehicle system<br>Flashing, output adjustment mode — Accelerometer error, powers brakes using default values<br>Flashing, sensitivity adjustment mode — Stoplight wire (red) shorted to ground<br>Trailer connected, checking calibration — Battery power just connected or engine cranking   PAGE 7 |
| a power switching circuit and adapted for coupling to the brakes of the towed vehicle and to the power supply of the towing vehicle, for selectively supplying power from the towing vehicle power supply to the brakes of the towed vehicle in response to a switching control signal supplied to a control input terminal; | Curt's website and instruction sheet state and show the product has a power switching circuit as claimed. For example:<br><br>**WIRING DIAGRAM**<br><br>See also: "This proportion-based brake control features a compact size, a digital display and the ability to manage up to eight brakes at a time. The feature that sets the TriFlex apart from all others is its triple-axis motion-sensing accelerometer. This integrated circuit component allows the TriFlex to detect every motion of your vehicle and trailer with exact precision and to |

| Claim Limitation | Element on Infringing Product |
|---|---|
| | then apply the perfect amount of braking power for every situation." |
| | Investigation and testing of the accused product also shows the product has a power switching circuit as claimed. On information and belief, the software code and schematics for the products should be produced by Curt in discovery and will further demonstrate this element is met. |
| a current sensing circuit for sensing a level of braking current supplied to the brakes of the towed vehicle through said power switching circuit, and for generating a current level signal representing the sensed level of braking current; and | Curt's website and instruction sheet state and show the product has a current switching circuit as claimed. For example, see the Wiring Diagram above. |
| | See also: "This proportion-based brake control features a compact size, a digital display and the ability to manage up to eight brakes at a time. The feature that sets the TriFlex apart from all others is its triple-axis motion-sensing accelerometer. This integrated circuit component allows the TriFlex to detect every motion of your vehicle and trailer with exact precision and to then apply the perfect amount of braking power for every situation." |
| | Investigation and testing of the accused product also shows the product has a current switching circuit as claimed. On information and belief, the software code and schematics for the products should be produced by Curt in discovery and will further demonstrate this element is met. |

46

| Claim Limitation | Element on Infringing Product |
|---|---|
| a microcontroller coupled to said input circuit, said display circuit, said current circuit, and to said power switching circuit, said microcontroller generating and supplying a switching control signal to said control input terminal of said power switching circuit thereby causing said power switching circuit to deliver a braking current to the brakes of the towed vehicle that is related to the brake level signal supplied to said microcontroller by said input circuit, said microcontroller illuminating one or more of said indicator lights of said display circuit to indicate a relative level of braking of the towed vehicle brakes and controlling one or more of said indicator lights to indicate that the towed vehicle brakes are or are not properly connected to said power switching circuit. | Curt's website and instruction sheet state and show the product has a microcontroller as claimed. For example, see the Wiring Diagram and Digital Display above. See also: "This proportion-based brake control features a compact size, a digital display and the ability to manage up to eight brakes at a time. The feature that sets the TriFlex apart from all others is its triple-axis motion-sensing accelerometer. This integrated circuit component allows the TriFlex to detect every motion of your vehicle and trailer with exact precision and to then apply the perfect amount of braking power for every situation." Investigation and testing of the accused product also shows the product has a microcontroller as claimed. On information and belief, the software code and schematics for the products should be produced by Curt in discovery and will further demonstrate this element is met. |

**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a chart that purports to show that part no. 51140 contains each of the limitations in claim 1 of the '352 patent. CURT admits that certain of the images in the chart appear to originate from CURT's installation instructions for part no. 51140. CURT denies that there is any merit to the remaining allegations within that chart.

104. Upon information and belief, Curt has had actual knowledge of the '352 patent and actual knowledge that its Infringing Brake Controllers infringe that

patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Brake Controllers. Upon information and belief, Curt knew about the '352 patent prior to this lawsuit at least because Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and, upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Horizon's brake controller products, which are marked with the '352 patent in accordance with 35 U.S.C. § 287(a), and given the May 30, 2000 issuance of the '352 patent that covers the products.

**ANSWER:**  Denied.

105.   Each of the Infringing Brake Controllers' only commercial use is a brake controller.

**ANSWER:**  Denied.

106.   Any use of the Infringing Brake Controllers as a brake controller is an act of direct infringement of the '352 patent.

**ANSWER:**  Denied.

107.   Because the sole intended use of the Infringing Brake Controllers is an infringing use, the Infringing Brake Controllers have no substantial non-infringing uses.

**ANSWER:**  Denied.

48

108.   Curt has induced infringement of the '352 patent at least because, with knowledge of the '352 patent, it intentionally and actively induced end users of the Infringing Brake Controllers (through instructions, videos, and otherwise) to use them in a manner that infringes the '352 patent with specific intent that they do so.

**ANSWER:**  Denied.

109.   Curt has further induced infringement of the '352 patent at least by selling the Infringing Brake Controllers to distributors, retailers, and other resellers with specific intent that they infringe the '352 patent by reselling the Infringing Brake Controllers to others.

**ANSWER:**  Denied.

110.   Curt has contributed to infringement of the '352 patent at least by selling the Infringing Brake Controllers, which have no substantial use other than an infringing use as a brake controller.

**ANSWER:**  Denied.

111.   Curt's infringements of the '352 patent were, and continue to be, willful and deliberate.

**ANSWER:**  Denied.

112.   Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:**  Denied.

## Count Eight
*Infringement of the '780 patent*

113.   Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**  Admitted or denied as set forth above.

114.   Curt has directly infringed, and continues to directly infringe, the '780 patent at least by selling, offering to sell, using, making and/or importing the Infringing Brake Controllers described above.

**ANSWER:**  Denied.

115.   As an illustrative example shown below, part no. 51140 (which functions in materially the same way as the other Infringing Brake Controllers) has each of the limitations in claim 1 of the '780 patent. The drawings in the chart are copied from Curt's Installation Instructions for the product (available at https://assets.curtmfg.com/masterlibrary/51140/installsheet/CME_51140_INS.PDF ).

| Claim Limitation | Element on Infringing Product |
|---|---|
| 1. A method for controlling brakes on a trailer being towed by a towing vehicle, comprising: | Curt's website (http://www.curtmfg.com/part/51140) and the name of the product itself confirm that the controller controls brakes on a trailer being towed by a towing vehicle. |
| sensing rate of deceleration of one of the towing vehicle and the trailer; | Curt's website states the product senses rate of deceleration as claimed. For example: "This proportion-based brake control features a compact size, a digital display and the ability to manage up to eight brakes at a time. The feature that sets the TriFlex apart from all others is its triple-axis motion-sensing accelerometer. This integrated circuit component allows the TriFlex to detect every motion of your vehicle and trailer with exact precision and to then apply the perfect amount of braking power for every situation. The TriFlex also automatically adjusts brake output when going up or down a hill and is compatible with anti-lock brakes and cruise control."<br>Curt's instruction sheet also states, for example, "Automatically compensates for uphill and downhill road conditions." |
| sensing inclination of one of the towing vehicle and the trailer; | Curt's website and instruction sheet state the product senses inclination as claimed. For example, see above. |
| generating a variable deceleration signal as a function of said rate of deceleration and a variable inclination signal as a function of said sensed inclination; | Curt's website and instruction sheet state the product generates a variable deceleration signal as claimed. For example, see above. |

| Claim Limitation | Element on Infringing Product |
|---|---|
| sending a brake amperage output signal to control the brakes on the trailer; and | Curt's website and instruction sheet state the product sends a brake amperage output signal as claimed. For example, see above. |
| continuously proportioning said brake amperage output signal in accordance with both said deceleration and said inclination signals. | Curt's website and instruction sheet state the product continuously proportions as claimed. For example, see above. |

**ANSWER:** CURT admits that Plaintiff's Second Amended Complaint includes a

chart that purports to show that part no. 51140 contains each of the limitations in

claim 1 of the '780 patent.  CURT admits that certain of the images in the chart appear to originate from CURT's installation instructions for part no. 51140.  CURT denies that there is any merit to the remaining allegations within that chart.

116.   Upon information and belief, Curt has had actual knowledge of the '780 patent and actual knowledge that its Infringing Brake Controllers infringe that patent when they are manufactured, used, imported, sold, or offered for sale. Yet Curt has continued to sell the Infringing Brake Controllers. Upon information and belief, Curt knew about the '780 patent prior to this lawsuit at least because Curt and Horizon are head-to-head competitors in the hitch product market and towing industry and, upon information and belief, Curt has been monitoring Horizon's products, its marketing, and related patent activities, so that Curt was undoubtedly aware of Horizon's brake controller products, which are marked with the '780 patent in accordance with 35 U.S.C. § 287(a), and given the January 11, 2000 issuance of the '780 patent that covers the products.

**ANSWER:**  Denied.

117.   Each of the Infringing Brake Controllers' only commercial use is a brake controller.

**ANSWER:**  Denied.

118.   Any use of the Infringing Brake Controllers as a brake controller is an act of direct infringement of the '780 patent.

**ANSWER:** Denied.

119. Because the sole intended use of the Infringing Brake Controllers is an infringing use, the Infringing Brake Controllers have no substantial non-infringing uses.

**ANSWER:** Denied.

120. Curt has induced infringement of the '780 patent at least because, with knowledge of the '780 patent, it intentionally and actively induced end users of the Infringing Brake Controllers (through instructions, videos, and otherwise) to use them in a manner that infringes the '780 patent with specific intent that they do so.

**ANSWER:** Denied.

121. Curt has further induced infringement of the '780 patent at least by selling the Infringing Brake Controllers to distributors, retailers, and other resellers with specific intent that they infringe the '780 patent by reselling the Infringing Brake Controllers to others.

**ANSWER:** Denied.

122. Curt has contributed to infringement of the '780 patent at least by selling the Infringing Brake Controllers, which have no substantial use other than an infringing use as a brake controller.

**ANSWER:** Denied.

123. Curt's infringements of the '780 patent were, and continue to be,

willful and deliberate.

**ANSWER:**  Denied.

124.   Horizon has been damaged by Curt's infringing activities, and it will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**ANSWER:**  Denied.

## ANSWER TO PRAYER FOR RELIEF

Curt denies that Plaintiff is entitled to any relief whatsoever, including the relief requested in Plaintiff's Prayer for Relief.

## AFFIRMATIVE DEFENSES

## FIRST DEFENSE

1.     Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

2.     CURT does not infringe, and has not infringed literally or under the doctrine of equivalents under any theory (including jointly, directly, contributorily, or by inducement), any claim of the '583, '458, '658, '713, '863, '142, '352, and '780 patents.

## THIRD DEFENSE

3.      One or more claims of the '583, '458, '658, '713, '863, '142, '352, and '780 patents are invalid because they fail to meet one or more conditions for patentability set forth in Title 35, U.S.C. § 101, *et seq.*, including those of sections 101, 102, 103, and 112.

## FOURTH DEFENSE

4.      By reason of the prior art and/or statements and representations made to and by the United States Patent and Trademark Office during the prosecution of the applications that led to the issuance of the '583, '458, '658, '713, '863, '142, '352, and '780 patents, the '583, '458, '658, '713, '863, '142, '352, and '780 patents are so limited that none of their claims can be construed as covering any activity or product of CURT.

## FIFTH DEFENSE

5.      The '583, '458, '658, '713, '863, '142, '352, and '780 patents are unenforceable because of estoppel, laches or other equitable doctrines.

## SIXTH DEFENSE

6.      Plaintiff is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

**SEVENTH DEFENSE**

7.     Plaintiff's claims are barred in whole or in part due to Plaintiff's failure to mitigate damages, if any.

**EIGHTH DEFENSE**

8.     Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

**NINTH DEFENSE**

9.     Plaintiff's claims are barred or otherwise limited based on exhaustion, the second-sale doctrine, express or implied license, and restrictions on double recovery.

**TENTH DEFENSE**

10.     Plaintiff's claims are barred in whole or in part to the extent that they seek damages for actions occurring after the expiration of the '583, '458, '658, '713, '863, '142, '352, and '780 patents.

**ELEVENTH DEFENSE**

11.     Plaintiff's claims for infringement of the '583, '458, '658, '713, '863, '142, '352, and '780 patents are precluded by operation of the reverse doctrine of equivalents.

## RESERVATION OF DEFENSES

12.    CURT reserves the right to add additional defenses pending any further investigation and discovery.

## COUNTERCLAIMS

1.    The Counterclaims asserted below in no way constitute waiver of any defense asserted by CURT.   Thus, subject to and without waiving any of the foregoing defenses, Counterclaimant CURT, by its undersigned counsel, hereby states its Counterclaims:

2.    CURT incorporates by reference its responses to the Second Amended Complaint in paragraphs 1-124 as though fully set forth herein.

## PARTIES

3.    CURT is a Delaware limited liability company with a principal place of business in Wisconsin.

4.    On information and belief, Counterclaim Defendant Horizon is a Delaware corporation with a principal place of business in Michigan.   Horizon was formerly known as Cequent.   On information and belief, Horizon markets its towing    products    under    the    *Reese*    brand.        (*See* http://www.horizonglobal.com/brands.)

## JURISDICTION AND VENUE

5.      On June 13, 2017, Horizon filed its original Complaint alleging that CURT infringes U.S. Patent Nos. 9,522,583 (the "'583 patent"), 9,248,713 (the "'713 patent), and 9,592,863 (the "'863 patent").

6.      On January 29, 2018, Horizon filed its First Amended Complaint alleging that CURT infringes U.S. Patent Nos. 9,522,583 ("the '583 patent"), 8,360,458 ("the '458 patent"), 8,215,658 ("the '658 patent"), 9,248,713 ("the '713 patent"), 9,592,863 ("the '863 patent"), 8,179,142 ("the '142 patent"), 6,068,352 ("the '352 patent"), and 6,012,780 ("the '780 patent").

7.      On March 9, 2018, Horizon filed its Second Amended Complaint alleging that CURT infringes U.S. Patent Nos. 9,522,583 ("the '583 patent"), 8,360,458 ("the '458 patent"), 8,215,658 ("the '658 patent"), 9,248,713 ("the '713 patent"), 9,592,863 ("the '863 patent"), 8,179,142 ("the '142 patent"), 6,068,352 ("the '352 patent"), and 6,012,780 ("the '780 patent").

8.      This Court has subject matter jurisdiction over CURT's counterclaims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the patent laws of the United States, Title 35, United States Code, for which jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a).

9.     By filing its original Complaint, First Amended Complaint, and Second Amended Complaint, Horizon has consented to the personal jurisdiction of this Court.

10.     Venue is proper as to Horizon under 28 U.S.C. §§ 1391(b) and 1400 (b).

11.     Horizon, by its Second Amended Complaint, asserts that CURT has infringed the '583, '458, '658, '713, '863, '142, '352, and '780 patents.  CURT, by its Answer, asserts that it does not infringe the claims of the '583, '458, '658, '713, '863, '142, '352, and '780 patents, and that the claims of the '583, '458, '658, '713, '863, '142, '352, and '780 patents are invalid.  Thus, an actual and justiciable controversy exists between CURT and Horizon concerning the infringement and validity of the claims of the '583, '458, '658, '713, '863, '142, '352, and '780 patents.

## FIRST COUNTERCLAIM
### (Declaration of Noninfringement of the '583 patent)

12.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-11 of its Counterclaims as though fully set forth herein.

13.     CURT does not, and has not, infringed any valid claim of the '583 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '583 patent do not infringe at least because they lack the following

limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: "locking member;" "extending through the body member;" "being axially moveable relative to the body member between first and second axial positions;" and "locking member is prevented from moving from the first axial position to the second axial position until the body member is rotated from the first rotational position to the second rotational position."

14.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '583 patent.

## SECOND COUNTERCLAIM
### (Declaration of Invalidity of the '583 patent)

15.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-14 of its Counterclaims as though fully set forth herein.

16.     One or more claims of the '583 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.  By way of example, numerous claims of the '583 patent (including the only asserted claim, claim 1) are invalid as anticipated pursuant to 35 U.S.C. § 102 in light of U.S. Patent No. 1,829,293, which has a locking pin (20) axially movable between first and second axial positions.

17.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '583 patent are invalid.

## THIRD COUNTERCLAIM
### (Declaration of Noninfringement of the '458 patent)

18.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-17 of its Counterclaims as though fully set forth herein.

19.     CURT does not, and has not, infringed any valid claim of the '458 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '458 patent do not infringe at least because they lack the following limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: "wherein rotating the body member in a direction displaces the locking member perpendicular to the direction of rotation engaging the locking member with the receiving member."

20.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '458 patent.

## FOURTH COUNTERCLAIM
### (Declaration of Invalidity of the '458 patent)

21.   CURT incorporates by reference each and every allegation contained in Paragraphs 1-20 of its Counterclaims as though fully set forth herein.

22.   One or more claims of the '458 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.

23.   Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '458 patent are invalid.

## FIFTH COUNTERCLAIM
### (Declaration of Noninfringement of the '658 patent)

24.   CURT incorporates by reference each and every allegation contained in Paragraphs 1-23 of its Counterclaims as though fully set forth herein.

25.   CURT does not, and has not, infringed any valid claim of the '658 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '658 patent do not infringe at least because they lack the following limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: "wherein upon rotation of said tie down member said locking member moves axially perpendicular relative to said axis of rotation of said tie

down member engaging said receiving member, thereby trapping the tie down member to the receiving member."

26.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '658 patent.

## SIXTH COUNTERCLAIM
### (Declaration of Invalidity of the '658 patent)

27.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-26 of its Counterclaims as though fully set forth herein.

28.     One or more claims of the '658 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.

29.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '658 patent are invalid.

## SEVENTH COUNTERCLAIM
### (Declaration of Noninfringement of the '713 patent)

30.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-29 of its Counterclaims as though fully set forth herein.

31.     CURT does not, and has not, infringed any valid claim of the '713 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '713 patent do not infringe at least because they are not safety chain engaging devices as claimed in the '713 patent.

32.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '713 patent.

**EIGHTH COUNTERCLAIM**
**(Declaration of Invalidity of the '713 patent)**

33.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-32 of its Counterclaims as though fully set forth herein.

34.     One or more claims of the '713 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.  By way of example, numerous claims of the '583 patent (including the only asserted claim, claim 1) are invalid as anticipated pursuant to 35 U.S.C. § 102 in light of at least U.S. Patent No. 6,846,140.

35.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '713 patent are invalid.

## NINTH COUNTERCLAIM
### (Declaration of Noninfringement of the '863 patent)

36.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-35 of its Counterclaims as though fully set forth herein.

37.     CURT does not, and has not, infringed any valid claim of the '863 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the A-series products Horizon has accused of infringing the '863 patent do not infringe at least because they lack a cross-member isolator which dampens longitudinal displacement, as required by the claims of the '863 patent.

38.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '863 patent.

## TENTH COUNTERCLAIM
### (Declaration of Invalidity of the '863 patent)

39.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-38 of its Counterclaims as though fully set forth herein.

40.    One or more claims of the '863 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.  By way of example, numerous claims of the '863 patent (including the only asserted claim, claim 1) are invalid as anticipated or obvious pursuant to 35 U.S.C. § 102 or 103 in light of U.S. Patent No. 7,475,899.

41.    CURT further notes that the release date of the accused Q-Series Fifth Wheel Hitches predates the filing of the '863 patent application by more than one year; thus, based on Horizon's own pleadings, this patent is invalid under 35 U.S.C. § 102.  The '863 patent application was filed on July 26, 2011 and purports to claim priority to a provisional application filed on July 26, 2010, while the accused Q-Series Fifth Wheel Hitches were in public use or on sale in the United States prior to July 26, 2009.

42.    In fact, the Q-Series Fifth Wheel Hitches were in public use or on sale in the United States by no later than November 7, 2006, as confirmed by the Wayback Machine printouts attached hereto as **Exhibit A**.

43.    Attached hereto as **Exhibit B** is a true and correct copy of Wayback Machine printouts from December 20, 2008, further confirming the public use and sale of the Q-Series Fifth Wheel Hitches prior to July 26, 2009.

44.     Other readily available public materials show full images of this publicly-available Q5 Fifth Wheel Hitch, as well as expanded-view drawings.  A true and correct copy of the Amazon.com page for the CURT 16125 Q5 Fifth Wheel Hitch is attached hereto as **Exhibit C.**  Exhibit C lists a "date first available" for this product as October 20, 2006.

45.     Attached hereto as **Exhibit D** is a true and correct copy of the instruction sheet for the CURT 16125 Q5 Fifth Wheel Hitch.

46.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '863 patent are invalid.

47.     Pursuant to 35 U.S.C. § 285, if Horizon continues to assert the '863 patent despite CURT's own Q-Series Fifth Wheel Hitches predating the filing of the '863 patent priority application by more than one year, this case should be deemed exceptional, entitling CURT to recover its attorneys' fees from defending against this clearly invalid patent.

## ELEVENTH COUNTERCLAIM
### (Declaration of Noninfringement of the '142 patent)

48.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-47 of its Counterclaims as though fully set forth herein.

49.     CURT does not, and has not, infringed any valid claim of the '142 patent literally, directly, contributorily, by way of inducement, or under the

doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '142 patent do not infringe at least because they lack the following limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: "wherein, said microcontroller is capable of reducing the duty cycle of one or more said output signals in response to said current flow rising above a first predetermined threshold."

50.    CURT notes that Horizon has not alleged that the accused 56200 Signal Converter contains a microcontroller capable of reducing the duty cycle of one or more of said output signals in response to said current flow rising above a predetermined threshold.   CURT further notes that Horizon's excuse for failing to include any facts on this limitation is nonsensical, as CURT's source code is unnecessary to evaluate this limitation; any meter reading would show that CURT's products do not reduce the duty cycle of one or more output signals.

51.    CURT notes that Horizon has not made any specific allegations against the accused 56210, 82215047AB and 82214685AC products, and has not alleged that the accused 56210, 82215047AB and 82214685AC products even have a microcontroller, much less a microcontroller capable of reducing the duty cycle of one or more of said output signals in response to said current flow rising above a predetermined threshold.  CURT notes that Horizon has not alleged that

the accused 56210, 82215047AB and 82214685AC products are materially similar to the 56200 Signal Converter, and, in fact, they are materially different.

52.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '142 patent. Pursuant to 35 U.S.C. § 285, this case should be deemed exceptional and CURT should be granted its attorneys' fees in defending against this meritless infringement allegation, when a simple meter reading of the output of any of the accused 56200, 56210, 82215047AB and 82214685AC products would show that CURT does not infringe this patent.

## TWELFTH COUNTERCLAIM
### (Declaration of Invalidity of the '142 patent)

53.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-52 of its Counterclaims as though fully set forth herein.

54.     One or more claims of the '142 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.

55.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '142 patent are invalid.

## THIRTEENTH COUNTERCLAIM
### (Declaration of Noninfringement of the '352 patent)

56.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-55 of its Counterclaims as though fully set forth herein.

57.     CURT does not, and has not, infringed any valid claim of the '352 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '352 patent do not infringe at least because they lack the following limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: a power switching circuit, selectively supplying power in response to a switching control signal supplied to a control input terminal, a current sensing circuit for sensing a level of braking current supplied to the brakes of the towed vehicle, generating a current level signal representing the sensed level of braking current, or that the microcontroller generates and supplies a switching control signal, and an indicator light to indicate that the towed vehicle brakes are or are not properly connected to a power switching circuit.

58.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '352 patent.

## FOURTEENTH COUNTERCLAIM
### (Declaration of Invalidity of the '352 patent)

59.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-58 of its Counterclaims as though fully set forth herein.

60.     One or more claims of the '352 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.

61.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '352 patent are invalid.

## FIFTEENTH COUNTERCLAIM
### (Declaration of Noninfringement of the '780 patent)

62.     CURT incorporates by reference each and every allegation contained in Paragraphs 1-61 of its Counterclaims as though fully set forth herein.

63.     CURT does not, and has not, infringed any valid claim of the '780 patent literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents.  By way of example, the products Horizon has accused of infringing the '780 patent do not infringe at least because they lack the following limitations of claim 1, the only claim for which Horizon purports to state a claim for infringement: sensing inclination separately and distinctly from sensing

71

deceleration, and generating a variable inclination signal as a function of sensed inclination.

64.    Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that it does not, and has not, infringed the '780 patent.

## SIXTEENTH COUNTERCLAIM
### (Declaration of Invalidity of the '780 patent)

65.    CURT incorporates by reference each and every allegation contained in Paragraphs 1-64 of its Counterclaims as though fully set forth herein.

66.    One or more claims of the '780 patent that are allegedly infringed by CURT are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, for example, Sections 101, 102, 103, and 112.

67.    Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 *et seq.*, CURT is entitled to a declaratory judgment that one or more claims of the '780 patent are invalid.

## SEVENTEENTH COUNTERCLAIM
### (Infringement of U.S. Patent No. 7,195,269)

68.    CURT incorporates by reference each and every allegation contained in Paragraphs 1-67 of its Counterclaims as though fully set forth herein.

69.    CURT is the owner of the entire right, title and interest in and to U.S. Patent No. 7,195,269 B2 ("the '269 patent"), entitled "Hitch," which was duly issued on March 27, 2007.  A copy of the '269 Patent is attached as **Exhibit E** hereto.

70.    Horizon has infringed and is currently infringing the '269 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '269 patent including at least independent claims 7, 8, and 10.  Such products include at least, for example, Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311.

71.    As an illustrative example, Horizon ball mount product number 7060700 infringes at least claim 10 of the '269 patent as depicted below:

| Claim Limitation | Element of Infringing Product |
|---|---|
| 10. A hitch for use with a hitch receiver of a towing vehicle comprising: | Horizon's Reese Brands website (http://www.reesebrands.com/reese-towpower/ball-mounts-and-hitch-balls/ball-mounts/carbon-forged/reese-towpower-carbon-forged-black-nickel-interlock-ball-mount-bar-2-in-dr-7060700) confirms that the hitch is intended for use with a |

| Claim Limitation | Element of Infringing Product |
|---|---|
|  | hitch receiver and a towing vehicle. |
| a hitch tongue for supporting a ball of a ball hitch, the hitch tongue extending generally horizontally and having a top surface defining a hitch plane; | This image of Horizon part number 7060700 depicts a hitch tongue which is used to support a ball of a ball hitch, with a horizontal orientation and a top surface defining a hitch plane:<br><br><br><br><br><br>(*See, e.g.*, https://www.amazon.com/Reese-Towpower-7060700-Nickel-Interlock/dp/B009F5ACEA) |

| Claim Limitation | Element of Infringing Product |
|---|---|
| a hitch engagement sized to be received in the hitch receiver of the towing vehicle, wherein the hitch engagement has a generally uniform height and width, the hitch engagement having a bottom defining a generally horizontal base plane; | This image of Horizon part number 7060700 depicts a hitch engagement sized to be received in the hitch receiver of the towing vehicle, with a generally uniform height and width, with a bottom defining a generally horizontal base plane:   (*See, e.g.,* https://www.amazon.com/Reese-Towpower-7060700-Nickel- |

| Claim Limitation | Element of Infringing Product |
|---|---|
| | Interlock/dp/B009F5ACEA) |
| and a stress reduction connection between the hitch tongue and the hitch engagement, the stress reduction connection defining an open space therewithin, the stress reduction connection comprising a strength bridge disposed above the hitch plane and above the base plane, the strength bridge being wider than the width of the hitch engagement. | This image of Horizon part number 7060700 depicts a stress reduction connection located between the hitch tongue and the hitch engagement, which defines an open space therewithin, that stress reduction comprising a strength bridge that is located above the hitch and base planes. The website also depicts the strength bridge as being wider than the width of the hitch engagement.<br><br> |

| Claim Limitation | Element of Infringing Product |
|---|---|
| |  |
| | (*See, e.g.*, https://www.amazon.com/Reese-Towpower-7060700-Nickel-Interlock/dp/B009F5ACEA) |

72.     On information and belief, Horizon has had actual knowledge of the '269 patent and actual knowledge that its ball mount products infringe that patent when they are manufactured, used, imported, sold, or offered for sale.  Yet Horizon has continued to sell the infringing ball mount products.  Upon information and belief, Horizon knew about the '269 patent prior to this lawsuit at least because Horizon and CURT are head-to-head competitors in the hitch product market and towing industry and because Horizon cited CURT's '269 patent on July 24, 2013 to the United States Patent and Trademark Office as part of Horizon's prosecution of the patent application that eventually issued as U.S. Patent No. 9,308,789.  At a minimum, Horizon knew about its infringement of the '269 patent since at least receipt of a July 25, 2017 letter from CURT's counsel, which specifically identified Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311, and their infringement of at least independent claims 7, 8, 10, and 14 of CURT's U.S. Patent 7,195,269.

73.     Each of the infringing ball mount products' only commercial use is as a hitch receiver of a towing vehicle.

74.     Any use of the infringing ball mount products as a hitch receiver of a towing vehicle is an act of direct infringement of the '269 patent.

75.    Because the sole intended use of the infringing ball mount products is an infringing use, the infringing ball mount products have no substantial non-infringing uses.

76.    Horizon induced and is actively inducing the infringement of the '269 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '269 patent.  Such products include at least, for example, Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311.

77.    Horizon has contributorily infringed and is currently infringing the '269 patent, in violation of 35 U.S.C. § 271(c), by among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products that constitute a material part of the '269 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement

of the '269 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

78.    Horizon has infringed and is currently infringing the '269 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '269 patent.  Such products include at least, for example, Horizon ball mount product numbers 7060500, 7060511, 7060600, 7060611, 7060700, 7060711, 7060800, 7060811, 7062800, 7062811, 7062833, 7062900, 7062911, 7065700, 7065711, 7067900, 7067911, 7068000, 7068011, 7068100, 7068111, 7068300 and 7068311.

79.    Horizon's infringement of the '269 patent has been and continues to be willful and deliberate.

### EIGHTHTEENTH COUNTERCLAIM
### (Infringement of U.S. Patent No. 7,475,899)

80.    CURT incorporates by reference each and every allegation contained in Paragraphs 1-79 of its Counterclaims as though fully set forth herein.

81.    CURT is the owner of the entire right, title and interest in and to U.S. Patent No. 7,475,899 B2 ("the '899 patent"), entitled "Trailer Hitch," which was duly issued on January 13, 2009.  A copy of the '899 Patent is attached as **Exhibit F** hereto.

82.     Horizon has infringed and is currently infringing the '899 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '899 patent including at least independent claims 9 and 13.  Such products include at least, for example, Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870.

83.     As an illustrative example, Horizon fifth wheel product number 30867 infringes at least claim 13 of the '899 patent as depicted below:

| Claim Limitation | Element of Infringing Product |
| --- | --- |
| 13.  A trailer hitch for engaging a kingpin of a trailer, the trailer hitch comprising: | Horizon's Reese Products website (http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH) confirms that the trailer hitch is intended for use with a kingpin of a trailer. |

| Claim Limitation | Element of Infringing Product |
|---|---|
| a support frame attachable in the bed of a truck; | This image of Horizon fifth wheel product number 30867 depicts a support frame that is attachable in the bed of a truck:<br><br><br><br>(*See, e.g.*, http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH). |

| Claim Limitation | Element of Infringing Product |
|---|---|
| a kingpin retention structure being securable about the kingpin; | This image of Horizon fifth wheel product number 30867 depicts a kingpin retention structure securable about the kingpin:<br><br><br><br>(*See, e.g.*, http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH). |

| Claim Limitation | Element of Infringing Product |
|---|---|
| and a bearing structure supporting the kingpin retention structure from the support frame, the bearing structure permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame and limited side to side movement of the kingpin retention structure relative to the support frame, wherein the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement. | This image of Horizon fifth wheel product number 30867 depicts a bearing structure supporting the kingpin retention structure from the support frame, the bearing structure permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame and limited side to side movement of the kingpin retention structure relative to the support frame, wherein the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement:<br><br><br><br>(*See, e.g.*, http://www.reeseprod.com/products/fifth-wheels/20k-22k-25k-fifth-wheel/fifth-wheel-trailer-hitch-20k/lHed9XozUzEDL1H8zI9wzfeDFkvBFoUH). |

84.     On information and belief, Horizon has had actual knowledge of the '899 patent and actual knowledge that its fifth wheel products infringe that patent when they are manufactured, used, imported, sold, or offered for sale.  Yet Horizon has continued to sell the infringing fifth wheel products.  Upon information and belief, Horizon knew about the '899 patent prior to this lawsuit at least because Horizon and CURT are head-to-head competitors in the hitch product market and towing industry and because Horizon cited CURT's '899 patent on July 18, 2013 to the United States Patent and Trademark Office as part of Horizon's prosecution of the patent application that eventually issued as U.S. Patent No. 9,511,804.  At a minimum, Horizon knew about its infringement of the '899 patent since at least receipt of a July 25, 2017 letter from CURT's counsel, which specifically identified Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870, and their infringement of at least independent claims 9 and 13 of CURT's U.S. Patent 7,475,899.

85.     Each of the infringing fifth wheel products' only commercial use is as a trailer hitch for engaging a kingpin of a trailer.

86.     Any use of the infringing fifth wheel products as a trailer hitch for engaging a kingpin of a trailer is an act of direct infringement of the '899 patent.

87.    Because the sole intended use of the infringing fifth wheel products is an infringing use, the infringing fifth wheel products have no substantial non-infringing uses.

88.    Horizon induced and is actively inducing the infringement of the '899 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '899 patent.  Such products include at least, for example, Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870.

89.    Horizon has contributorily infringed and is currently infringing the '899 patent, in violation of 35 U.S.C. § 271(c), by among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products that constitute a material part of the '899 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '899 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

90.    Horizon has infringed and is currently infringing the '899 patent, in violation of 35 U.S.C. § 271(f), by, among other things, supplying or causing to be

supplied in or from the United States, without license or authority, components or products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '899 patent.  Such products include at least, for example, Horizon fifth wheel product numbers 30866, 30867, 30869, and 30870.

91.    Horizon's infringement of the '899 patent has been and continues to be willful and deliberate.

## DEMAND FOR JURY TRIAL

92.    CURT demands a jury trial on all claims and issues so triable.

## PRAYER FOR RELIEF

93.    CURT prays for relief as follows:

a)    Dismiss with prejudice the Seconded Amended Complaint against CURT;

b)    The Court enter Judgment in favor of CURT, and against Horizon, on Horizon's claims against CURT for patent infringement;

c)    That CURT be found not to infringe the '583, '458, '658, '713, '863, '142, '352, and '780 patents;

d)    That the '583, '458, '658, '713, '863, '142, '352, and '780 patents be found invalid;

e)      That Judgment be entered that Horizon has directly infringed the '269 and '899 patents;

f)      That Judgment be entered that Horizon has induced the infringement of the '269 and '899 patents;

g)      That Judgment be entered that Horizon has contributorily infringed the '269 and '899 patents;

h)      That Judgment be entered against Horizon and in favor of CURT in all respects;

i)      The Court award CURT its costs and disbursements associated with this action;

j)      That Horizon be ordered to provide an accounting;

k)      That the infringement by Horizon be adjudged willful and that the damages be increased under 35 U.S.C. § 284 to three times the amount found or measured;

l)      The Court find this case exceptional under 35 U.S.C. § 285 and order Horizon to pay CURT its costs and attorney's fees; and

m)      The Court grant such other relief as the Court deems just and proper.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
*Attorneys for Defendant and Counterclaimant
CURT Manufacturing, LLC*


By: /s/ J. Michael Huget
J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
315 East Eisenhower Parkway
Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
mhuget@honigman.com
Dated: March 30, 2018          swaidelich@honigman.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2018, my assistant electronically filed the foregoing paper with the Clerk of Court using the ECF system, which will send notification of such filing to all attorneys of record.

By:    <u>/s/ J. Michael Huget</u>
       J. Michael Huget (P39150)
       315 East Eisenhower Parkway
       Suite 100
       Ann Arbor, MI 48108-3330
       (734) 418-4200
       mhuget@honigman.com