# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Horizon Global Americas Inc.,

     Plaintiff and Counter-Defendant,

  v.

CURT Manufacturing, LLC,

     Defendant and Counter-Plaintiff.

Case No. 2:17-cv-11879-AC-SDD

Hon. Avern Cohn

## CURT's OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................1

II.     OVERVIEW OF THE '899 PATENT ............................1

III.    LEGAL STANDARD ...............................................3

IV.     CLAIM 9 OF THE '899 PATENT..............................5

    A.      1st Claim Term: "a bar which is linked to the kingpin retention structure" ....................................5

    B.      2nd Claim Term: "[the bar having] at least one latch recess defined therein" ...............................9

    C.      3rd Claim Term: "an opening on the support frame through which the bar translates" ..................12

    D.      4th Claim Term: "a latch which mates into the latch recess on the bar" ......................................15

    E.      5th Claim Term: "[the latch] attaches relative to the opening on the support frame to prevent the bar from translating"......................15

    F.      6th Claim Term: "wherein the support frame comprises a bearing which permits movement of the engaged kingpin relative to the bed of the truck into which the hitch is attached"........16

V.      CLAIM 13 OF THE '899 PATENT.............................19

    A.      7th Claim Term: "a bearing structure supporting the kingpin retention structure from the support frame".......................................19

    B.      8th Claim Term: "permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame".................................19

    C.      9th Claim Term: "[permitting] limited side to side movement of the kingpin retention structure relative to the support frame" ...........22

    D.      10th Claim Term: "the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement" .................................23

VI.     CONCLUSION...................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Innovative Props. Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013) ........................................................... 4

*Cordis Corp. v. Boston Sci. Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009) ........................................................... 5

*Deere & Co. v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012) ........................................................... 4

*Gita Green, Inc. v. WePe Industry, LLC*,
    No. 2:14-cv-00715, 2016 WL 4974954 (D. Nev. Sept. 16, 2016) .................... 16

*Johnson Worldwide Assocs. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999) ........................................................... 5

*Merck & Co., Inc. v. Teva Pharms USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ....................................................... 7, 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 ............................................................... 3, 4, 5, 8, 18

*Power-One, Inc. v. Artesyn Techs., Inc.*,
    599 F.3d 1343 (Fed. Cir. 2010) ......................................................... 14

*Recticel Automobilesysteme GmbH v. Automotive Components
    Holdings, LLC*,
    No. 2:10-cv-14097-SFC, 2012 WL 1276003 (E.D. Mich. Apr. 16,
    2012) ............................................................................. 14, 22

*T1 Grp. Auto Sys. (N. Am.), Inc. v. VDO N. Am., LLC*,
    375 F.3d 1126 (Fed. Cir. 2004) ......................................................... 4

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ......................................................... 4

*TK Holdings, Inc. v. CTS Corp.*,
    No. 08-14266, 2012 WL 2602481 (E.D. Mich. July 5, 2012) ........................... 4

iii

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) .......................................................................12

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .......................................................................4, 5

*W.E. Hall Co. v. Atlanta Corrugating, LLC*,
  370 F.3d 1343 (Fed. Cir. 2004) ........................................................................4

## I.      INTRODUCTION

As required by the Court's August 2, 2018 Order, CURT is presently limited to only a single patent—and two paradigm claims—against Horizon.  Out of these two paradigm claims, Horizon identified as ambiguous nearly every substantive claim limitation.  CURT believes the majority of the claim terms are clear on their face and do not require construction.   Nonetheless, CURT has proposed constructions that conform to both the intrinsic and extrinsic evidence and that will clarify any ambiguity for the jury.   The Court should adopt CURT's proposed constructions.

## II.      OVERVIEW OF THE '899 PATENT

CURT's U.S. Patent No. 7,475,899 (the "'899 Patent") discloses a trailer hitch, often referred to as a "fifth wheel" hitch.  (Ex. A, '899 Patent, 1:10-20.)  This type of hitch is generally placed in the bed of a pickup truck, over the rear axle, rather than over or adjacent the rear bumper.  (*Id.*)  Figure 1 of the '899 Patent illustrates an exemplary fifth wheel hitch, and the additional image below, of a CURT Q20 Fifth Wheel Hitch, shows its location when installed in the bed of a pickup truck:



FIG. 1

(Ex. A, Fig. 1; Ex. B, CURT Website Page for CURT Q20 5th Wheel Hitch, https://www.curtmfg.com/part/16130 (last visited Oct. 26, 2018).)

Once installed in a truck bed, the "jaws" of the fifth wheel hitch—which face the rear of the vehicle to connect with the trailer—must be capable of opening and closing to engage the trailer kingpin.  Exemplary "jaws" are identified as items 28 and 30 in Figure 1 of the '899 Patent.  But the mere ability to open and close the jaws is insufficient in an ideal hitch; the controls for doing so should also be easy to access and operate and should not require the application of excessive force.  (*See, e.g.*, Ex. A, 1:41-58.)  The '899 Patent accomplishes this by disclosing an invention that is both easy to operate (even permitting single-handed operation) over a long life in harsh conditions, as well as safe—when the handle and jaws are in the closed position, there is no possibility of inadvertent release.  (*See, e.g.*, Ex. A, 9:57-10:6.)  An advantage of this design is that a user operates the handle with translation movement (pulling and/or pushing), rather than pivoting or torqueing.  (*Id.* at 10:7-15.)

2

The '899 Patent discloses an additional design advantage—a bearing structure with various "biasing members" (such as elastomeric pads or springs) that can be used to properly align the hitch in response to various types of forces and various types of relative movement of the kingpin. (*See, e.g.*, *id.* at 4:26-49, 4:64-66.) For example, the '899 Patent discloses using elastomeric pads to cause the hitch to be stiffer against roll than against pitch. (*Id.* at 4:26-49.) The disclosed bearing structure with stiffnessess varying in different directions offers an advantage over the prior art by keeping the hitch (including the jaws and kingpin retention structure) in proper alignment, while also minimizing noise. (*E.g.*, *id.* at 4:64-5:2.)

## III.   LEGAL STANDARD

The basic tenets of claim construction are well established. "The words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (internal quotation marks omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. Claim construction may deviate from the plain and ordinary meaning of a disputed term ***only if*** (1) a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *see also TK Holdings, Inc. v. CTS*

*Corp.*, No. 08-14266, 2012 WL 2602481, at *2 (E.D. Mich. July 5, 2012).

When considering the plain and ordinary meaning of a claim term, the Federal Circuit explained the importance of the intrinsic evidence: "[w]e cannot look at the ordinary meaning of the term . . . in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Phillips*, 415 F.3d at 1313 (citation and quotation omitted).  The specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  But "[w]hile claim terms are *understood* in light of the specification, a claim construction *must not import limitations* from the specification into the claims."  *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (emphasis added).  Absent limiting circumstances, a patentee is entitled to the full breadth of claim scope supported by the claims and specification.  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013) (citing *T1 Grp. Auto Sys. (N. Am.), Inc. v. VDO N. Am., LLC*, 375 F.3d 1126, 1138 (Fed. Cir. 2004)).  There exists a "'heavy presumption' that claim terms mean what they say and carry their ordinary meaning as viewed by one of ordinary skill in the art."  *W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004) (citing *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)).

Although the prosecution history of the patent can provide context to the disputed claim terms, it is an ongoing negotiation with the U.S. Patent and Trademark Office.  As such, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  *Phillips*, 415 F.3d at 1317. Statements made during prosecution cannot limit the scope of the claims unless there is a "clear and unmistakable" disavowal of scope—"unclear prosecution history cannot be used to limit claims."  *E.g.*, *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) (internal quotations omitted).

Finally, extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language.*" Phillips*, 415 F.3d at 1317 (citations and internal quotes omitted).  Indeed, because the public is entitled to rely on the public record of the patentee's claim (constituting the claim, specification, and file history), extrinsic evidence may not be used to "alter[] or change[]" the public record.  *Vitronics*, 90 F.3d at 1583.

## IV.   CLAIM 9 OF THE '899 PATENT

### A.   "a bar which is linked to the kingpin retention structure"

| 1st Claim Term (4a)[1] | CURT's Proposed Construction |
|---|---|
| a bar which is linked to the kingpin retention structure | a bar which is movably connected to the one or more parts which retain the kingpin |

---

[1] The parenthetical references are to the numbered segments of the paradigm claims in the contemporaneously filed CURT's Presentation of Paradigm Claims of U.S. Patent No. 7,475,899 in Alpha-Numeric Format.

This term should be construed to clarify the meaning of the term "linked" in relation to the bar and kingpin retention structure. CURT proposes that "linked" be construed as "movably connected" to clarify that the bar and kingpin retention structure are connected such that movement of the bar moves the retention structure. This term should also be construed to clarify that "kingpin retention structure" means "one or more parts which retain the kingpin." The term "bar" is a simple, clear term for which no additional construction is needed.

First, CURT's proposed construction for "linked" is supported by the structure of the claim language itself. The limitation of Claim 9 in which "linked" appears describes the relationship between the bar and kingpin retention structure by stating that the bar and retention structure are linked "such that longitudinal translation of the bar moves the kingpin retention structure relative to the kingpin." (Ex. A, 12:50-52.) Thus, the claim language describes a relationship between the bar and kingpin retention structure in which changing the bar's position controls movement of the kingpin retention structure. CURT's proposed construction should be adopted because it gives meaning to these other claim terms. *See Merck & Co., Inc. v. Teva Pharms USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

The specification later explains that "a linkage 36 controls operation of the jaws 28, 30, with the linkage 36 being operated via a handle 38." (*Id.* at 3:4-6.)  This additional intrinsic evidence confirms that the bar (e.g., handle) and kingpin retention structure (which includes, for example, the jaws) are "linked" such that moving the bar controls (moves) operation of the retention structure jaws.  *See also id.*, 5:3-4 ("As better shown in FIGS. 2b and 6-12, the jaws 28, 30 are operated by a control rod 78 through the linkage 36.")  And elsewhere in the specification, the '899 Patent explains that the hitch is operated by pulling or pushing the handle to open the jaws of the kingpin retention structure.  (Ex. A, 7:9-12, 7:40-46.)

CURT's proposed construction is further supported by the fact that an important feature of the claimed hitch is its ease of operation.  As the specification explains, "[t]he controls of the hitch should be readily accessible by the operator, without requiring too much climbing or bending to access." (*Id.* at 1:41-43.)  Being able to control the movement of the kingpin retention structure by manipulating an easily accessible external handle comports with this feature.

Modified[2] Figure 7 below depicts the fundamental relationship between movement of the bar and movement of the kingpin retention structure.  For example, the '899 Patent specification explains that when an operator pulls on the handle (38),

---

[2] CURT simplified Figure 7 by removing extraneous elements and annotations to aid the Court's review.  The original Figure 7 is available at Exhibit A.

the control linkage (36) will raise the controlled jaw (28).  (*E.g.*, Ex. A, 7:40-46; *see also* Ex. A, Figure 2, Figure 6, Figures 8-12.)



All of this intrinsic evidence—Claim 9 itself, as well as the '899 specification and Figures—supports CURT's argument that the term "linked" means simply "movably connected."  While certain embodiments in the '899 Patent describe more specific "linked" configurations, it is black letter law that the claims should not be limited to preferred embodiments.  *Phillips*, 415 F.3d 1303, 1323 (citation omitted) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.")  There is no basis for diverging from the plain and ordinary meaning of the term "linked," and CURT's proposed construction should be adopted.

Turning next to the meaning of the term "kingpin retention structure," the text of Claim 9 again provides guidance.  The claim describes the kingpin retention

8

structure as "being securable about the kingpin." (Ex. A, 12:46-47.) CURT's proposed construction is consistent with this additional claim language, as it makes clear that the "structure" includes the parts that retain the kingpin. *See Merck & Co., Inc.*, 395 F.3d at 1372.

CURT's proposed construction for "kingpin retention structure" is supported by other intrinsic evidence, including the '899 Patent specification. Describing the kingpin retention structure, the specification explains that "[t]wo jaws 28, 30 . . . are used as a kingpin retention structure to engage the kingpin 32 (as shown in FIGS. 13 and 14) of a towed vehicle (not shown)." (Ex. A, 2:65-3:1.) In addition to the jaws, the specification describes other parts that serve to retain the kingpin; for example, the specification explains that: "each of the jaws 28, 30 have a collar 130, 132 around its hub 34 (and inside the respective springs 94, 120)." (Ex. A, 9:8-10.) This language, along with the clear language of Claim 9, supports CURT's argument that the term "kingpin retention structure" means simply one or more parts which retain the kingpin.

**B.     "[the bar having] at least one latch recess defined therein"**

| 2nd Claim Term (4b) | CURT's Proposed Construction |
|---|---|
| [the bar having] at least one latch recess defined therein | [the bar having] at least one latch indentation or latch opening |

The only possible ambiguity in this claim term relates to the word "recess." While CURT maintains that no construction is necessary for this term, to the extent

the Court is inclined to provide any additional clarity, "recess" should be construed as "latch indentation or latch opening." CURT's proposed construction clarifies that the latch recess of the claimed invention is an indentation or opening into which a corresponding part can "mate" or fit.

CURT's proposed construction is consistent with the use of the word "recess" in the intrinsic evidence. For example, the '899 Patent specification explains:

> A latch 108 permits the control bar 78 to be secured at either the closed position or the release position. The preferred latch 108 is hinged relative to a slotted sleeve 80 with a hinge pin 110, and includes an interference flat 112 which mates with either a closed latch recess 114 or a release latch recess 116 on the control bar 78. The latch 108 can then be held downward into an interference position, mating with either the closed latch recess 114 or the release latch recess 116, with a safety pin 118.

(Ex. A, 5:64-6:5.) This passage explains that the latch recess is an indentation or opening (114, 116) with which the latch (108) of the claimed invention can mate through the use of an inserted safety pin (118). This is depicted in modified Figure 7 below. In the embodiment depicted in this Figure, elements 114 and 116 are indentations or openings in the control bar which allow for insertion of the safety pin:



FIG. 7

*See also* Ex. A, Figure 6, Figures 8-12.

CURT's proposed construction is also entirely consistent with other uses of the term "recess" in the '899 Patent specification.  In addition to latch recesses, the specification also describes "kingpin receiving recesses," which are identified as elements 138 and 140 in Figure 13.  (Ex. A, 9:33-35.)  In the embodiment depicted in Figure 13, these kingpin receiving recesses are described as having an indentation or vertical depth to them.  (*Id.* at 9:39-44 (describing exemplary kingpin receiving recesses that are between 2 and 5 mm deep).)  These recesses are further "shaped to mate with the kingpin 32 upon entry and removal of the kingpin 32 from the hitch 20."  (*Id.* at 9:34-39.)  CURT's proposed construction for "recess" is thus entirely consistent with the intrinsic evidence.

Extrinsic evidence also confirms that the plain and ordinary meaning of the term "recess" is an "indentation or opening."   For example, a general purpose

dictionary defines "recess" as "[a]n indentation or small hollow." (Ex. C, The American Heritage Dictionary 1508 (3d Ed. 1996); *see also* Ex. D, The American Heritage Dictionary 1459 (4th Ed. 2009).) And a mechanical engineering dictionary further confirms this definition. (*E.g.*, Ex. E, Dictionary of Mechanical Engineering 312 (4th Ed. 1996) (defining "recess" as "a depression or hollow on a surface into which another part can be fitted").)

CURT's proposed construction is consistent with the claims, specification, and figures of the '899 Patent as well as applicable extrinsic evidence and should be adopted.

### C. "an opening on the support frame through which the bar translates"

| 3rd Claim Term (4c) | CURT's Proposed Construction |
|---|---|
| an opening on the support frame through which the bar translates | an opening on the support frame through which the bar changes position |

CURT does not believe there is any ambiguity in this claim term. But because Horizon identified it for construction, CURT proposes that this term be construed to clarify the type of movement described by the term "translates." The remaining terms (such as "opening," "support frame," and "bar") are simple, clear terms for which no additional construction is needed. *See, e.g.*, *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and ***when necessary***

to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy.") (emphasis added).

The term "translates" should be construed to clarify that the bar "changes position."  In this way, translational movement is distinct from rotational movement, where, for example, a bar would not change position, but would instead rotate about its center axis.

CURT's proposed construction is consistent with the use of the term "translates" in both the specification of the '899 Patent and in extrinsic evidence. For example, the '899 Patent describes the specific type of movement when an object "translates."  In describing Figure 6 (shown below), the specification explains that with handle 38, an operator can "easily apply a translational motion pulling or pushing the control rod 78 along its longitudinal axis."  (Ex. A, 5:7-9.)  The '899 Patent even illustrates this type of motion with an arrow (item A, highlighted below).



This Figure, and the accompanying description in the specification, confirms that translational movement results in the object changing position (including, for

example, as the result of a "push" or "pull"). This is distinct from a twisting, rotational movement. Because the jury may not appreciate the distinction between translational and rotational movement, the Court should adopt CURT's proposed construction for clarity. *Recticel Automobilesysteme GmbH v. Automotive Components Holdings, LLC*, No. 2:10-cv-14097-SFC, 2012 WL 1276003, *2 (E.D. Mich. Apr. 16, 2012) (citing *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010)) (stating that a goal of claim construction is to "provide a construction that will be understood by the jury who might otherwise misunderstand a claim term in the context of the patent specification and prosecution history of the patent").

Extrinsic evidence confirms that translational movement describes an object that changes position beyond merely rotating. For example, the American Heritage Dictionary of the English Language defines "translation" as "motion of a body in which every point of the body moves parallel to and the same distance as every other point of the body." (Ex. D, The American Heritage Dictionary of the English Language 1834 (4th Ed. 2009).) And this distinction between translational and rotational movement is further confirmed by sources specific to mechanical engineering. (*See, e.g.*, Ex. F, Oxford Dictionary of Mechanical Engineering 392 (1st Ed. 2013) (defining "translation" or "translational motion" as "[a]ny change in the position of an object or particle excluding rotation").)

CURT's proposed construction is consistent with the intrinsic and extrinsic evidence and will clarify the meaning of "translational" movement for the jury. CURT's construction should be adopted.

**D.     "a latch which mates into the latch recess on the bar"**

| 4th Claim Term (4d) | CURT's Proposed Construction |
|---|---|
| a latch which mates into the latch recess on the bar | a latch which mates into the latch indentation or latch opening on the bar |

As with the 2nd Claim Term above, the only potential ambiguity with this term involves the word "recess."   As such, CURT proposes that this term be construed to clarify the meaning of recess—that is, that recess denotes a latch indentation or latch opening.  As explained in more detail above, this construction is consistent with the plain and ordinary meaning of the term in both the intrinsic and extrinsic evidence.

**E.     "[the latch] attaches relative to the opening on the support frame to prevent the bar from translating"**

| 5th Claim Term (4e) | CURT's Proposed Construction |
|---|---|
| [the latch] attaches relative to the opening on the support frame to prevent the bar from translating | [the latch] attaches relative to the opening on the support frame to prevent the bar from changing position |

As with the 3rd Claim Term above, the only potential ambiguity with this term involves the word "translating."   As such, CURT proposes that this term be construed to clarify the meaning of translational movement—that is, that translational movement denotes "changing position" and is distinct in this way from

15

rotational movement.   As explained in more detail above, this construction is consistent with the plain and ordinary meaning of the term in both the intrinsic and extrinsic evidence.

     **F.**    **"wherein the support frame comprises a bearing which permits movement of the engaged kingpin relative to the bed of the truck into which the hitch is attached"**

| 6th Claim Term (5) | CURT's Proposed Construction |
|---|---|
| wherein the support frame comprises a bearing which permits movement of the engaged kingpin relative to the bed of the truck into which the hitch is attached | wherein the support frame includes a portion that carries a supporting force and permits movement of the engaged kingpin relative to the bed of the truck into which the hitch is attached |

CURT proposes that this claim term be construed to clarify the meaning of "a bearing" as "a portion that carries a supporting force and permits movement." The remainder of this claim term is simple and easy to understand; as such, additional construction of the other terms would only lead to unnecessary jury confusion. *See, e.g.*, *Gita Green, Inc. v. WePe Industry, LLC*, No. 2:14-cv-00715, 2016 WL 4974954, at *5-6 (D. Nev. Sept. 16, 2016) (finding no construction necessary where patent's language was "readily apparent" and "added constructions [would] do more harm than good").

    CURT proposes that the term "bearing" be given its plain and ordinary meaning: "a portion that carries a supporting force and permits movement." Bearings are standard objects in mechanical devices, and can take a wide variety of

forms.  CURT's proposed construction should be adopted because it is the plain and ordinary meaning of this term and is consistent with both the intrinsic and extrinsic evidence.

With respect to intrinsic evidence, the '899 Patent's figures illustrate an exemplary "bearing" as claimed.  For example, item 46 in Figure 2a (highlighted below) is a "shaft-supported spherical bearing to permit angular movement in all directions (other than elevation):"



FIG. 2a

(Ex. A, 3:30-32, Fig. 2a.)  But the '899 Patent specification makes clear that this is simply one embodiment of the disclosed bearing structure.  (*E.g.*, *id.* (discussing shaft-supported spherical bearing as only a "preferred" bearing structure); 4:64-66 (discussing other alternatives to the elastomeric pad alignment

17

forces for the bearing structure).)  And the law is clear that the plain and ordinary meaning of a term should not be limited to preferred embodiments.  *See, e.g.*, *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").  Thus, while the '899 Patent specification confirms that a preferred bearing both supports a force and permits movement, the law is equally clear that this claim term should not be limited to the specific spherical bearing disclosed in this Figure.

Not only is CURT's proposed construction for the term "bearing" consistent with its use in the intrinsic evidence, it is also consistent with extrinsic evidence. For example, the Oxford Dictionary of Mechanical Engineering defines a "bearing" as "[a] device that supports a component which rotates (a shaft), slides, or oscillates in or on it."  (Ex. F, Oxford Dictionary of Mechanical Engineering 24 (1st Ed. 2013).)  And The Merriam-Webster Dictionary defines "bearing" as "a supporting object, purpose, or point."  (Ex. G, The Merriam-Webster Dictionary 61 (6th ed. 2004).)  These definitions confirm that the plain and ordinary meaning of the term "bearing" is "a portion that carries a supporting force and permits movement." Because nothing in the specification or prosecution history limits this plain meaning of the term "bearing," CURT's proposed construction should be adopted.

## V.    CLAIM 13 OF THE '899 PATENT

### A.    "a bearing structure supporting the kingpin retention structure from the support frame"

| 7th Claim Term (4a) | CURT's Proposed Construction |
|---|---|
| a bearing structure supporting the kingpin retention structure from the support frame | a structure with one or more parts that permits movement and carries the supporting force for the structure which retains the kingpin, supporting it from the support frame |

This claim term is similar to the 6th Claim Term (which includes the term "bearing") above. As with that term, the Court should clarify that the term "bearing structure" means "structure that carries the supporting force and permits movement." This is consistent with the '899 specification, which describes the bearing structure as "enabling the hitch to permit angled pitch and roll movement of the kingpin 32 as the vehicle traverses over hills, across side slopes, around corners, etc., when the trailer rides on an undulating roadplane behind the towing vehicle." (Ex. A, 3:33-36.) Thus, this construction is entirely consistent with both the intrinsic and extrinsic evidence and serves to clarify any ambiguity for the jury.

### B.    "permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame"

| 8th Claim Term (4b) | CURT's Proposed Construction |
|---|---|
| permitting both limited fore and aft movement of the kingpin retention structure relative to the support frame | permitting both limited forward and backward movement of the kingpin retention structure relative to the direction the vehicle travels |

19

This claim term should be construed to clarify the relative direction of the "fore and aft movement." CURT proposes that this be done in two ways. First, "fore and aft movement" should be clarified to mean "forward and backward movement." Second, the direction of this forward and backward movement should be clarified as being "relative to the direction the vehicle travels." Both clarifications are completely consistent with the intrinsic and extrinsic evidence and resolve any ambiguity for the jury.

With respect to the directional terms "fore" and "aft," the '899 Patent specification makes clear that these refer to "forward" and "backward." For example, the Patent describes "fore" and "aft" elastomeric pads and extension bars. (Ex. A., 4:5-14.) These pads and bars are illustrated in various Figures as being in the "forward" and "backward" locations. (*E.g.*, *id.*; *see also* Figs. 2, 2a, 3.) And the patent explains that these pads can slide in the fore and aft directions. (*E.g.*, *id.*, 4:11-14.)

The terms "fore" and "aft" also have a plain meaning outside the '899 Patent itself. For example, the American Heritage Dictionary confirms that the term "fore and aft" means "in or at the front and back."[3] (Ex. C, The American Heritage

---

[3] Other dictionary definitions for this term relate specifically to nautical uses. (Ex. C, The American Heritage Dictionary 710 (3d Ed. 1996).) But even these definitions confirm that "fore and aft" refers to the front (bow) and back (stern) of a ship. (*Id.*)

Dictionary 710 (3d Ed. 1996).)  This definition is confirmed by other dictionaries as well.  (*E.g.*, Ex. G, The Merriam-Webster Dictionary 283, 14 (6th Ed. 2004) (defining "fore" as "in, toward, or adjacent to the front: forward" and "something that occupies a front position" and defining "aft" as "near, toward, or in the stern of a ship or the tail of an aircraft").)

The second part of CURT's proposed construction serves to clarify the *relative* direction of the hitch, such that the "forward and backward" directions are clear.  CURT proposes that this be done by clarifying that the hitch's forward and backward directions are "relative to the direction the vehicle travels."   Fifth wheel hitches, such as those claimed in the '899 Patent, are designed to be installed in the bed of a pickup truck, as illustrated below:



Jaws for holding kingpin, facing rear of vehicle

---

These other definitions are therefore wholly consistent with CURT's proposed constructions, just more specific to the nautical field.

(*See* Ex. B.)  The hitch's jaws necessarily face towards the rear of the pickup truck, as the trailer kingpin is inserted into those jaws.  (*See, e.g.*, Ex. A, 2:65-3:9 (explaining that the jaws of the kingpin retention structure engage the kingpin of a towed vehicle).)  Thus, by clarifying that the forward and backward movement is relative to the direction the vehicle travels, the jury will more easily understand the type of movement claimed.  *Recticel Automobilesysteme GmbH*, 2012 WL 1276003, at *2 (explaining that goal of claim construction is to provide the jury with a claim construction it will understand).

### C.   "[permitting] limited side to side movement of the kingpin retention structure relative to the support frame"

| 9th Claim Term (4c) | CURT's Proposed Construction |
|---|---|
| [permitting] limited side to side movement of the kingpin retention structure relative to the support frame | [permitting] limited side to side movement of the kingpin retention structure relative to the direction the vehicle travels |

For the same reasons as explained above, this term should be construed to clarify that the limited "side to side movement" of the kingpin retention structure is relative to the direction the vehicle travels.  This construction will clarify for the jury that the "side to side movement" should be viewed in relation to the hitch's proper location in a bed of a pickup truck, with the kingpin retention structure jaws facing towards the rear of the vehicle to retain the kingpin.

### D. "the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement"

| 10th Claim Term (4d) | CURT's Proposed Construction |
|---|---|
| the stiffness of the bearing structure for fore and aft movement is different than the stiffness of the bearing structure for side to side movement | in the structure that carries the supporting force and permits movement, the stiffness in the forward and backward direction is different from the stiffness in the side to side direction |

The only constructions necessary for this term are those proposed elsewhere by CURT. For example, "the bearing structure" should be construed as "the structure that carries the supporting force and permits movement." Likewise, the term "fore and aft movement" should be clarified as meaning "forward and backward movement," as this clarifies a phrase that might otherwise be unfamiliar to the jury and is consistent with all of the intrinsic and extrinsic evidence.

The differing stiffnesses of the bearing structure as described in this claim limitation are a key part of the patented invention. The specification of the '899 Patent describes an embodiment of these differing stiffnesses consistent with CURT's proposed construction. For example, in one embodiment of the patented invention, the bearing structure has multiple compressible pads (items 60, 64, 66). (Ex. A, 4:5-14.)   These compressible pads—elements 60, 64, and 66—are highlighted in Figure 2 below:



FIG. 2

Ex. A, Figure 2.  But as shown above, these pads are not arranged equally in all directions about the kingpin axis.  While one pad is at the bottom of the bearing structure (item 60), two pads (items 64 and 66) are positioned in the fore and aft (i.e., the front and back) directions, and zero pads are positioned equally to the sides of the kingpin axis.  This strategic arrangement of compressible pads causes the stiffness in the forward and backward direction to be different from the stiffness in the side to side direction and was an important step forward in the art.

CURT's proposed construction for this term is wholly consistent with this intrinsic evidence, but also adheres to the Federal Circuit's well-known admonition

that claims should not be limited to preferred embodiments.  CURT's construction should be adopted.

## VI.    CONCLUSION

CURT's proposed constructions are consistent with both the intrinsic and extrinsic evidence and clarify any potential ambiguity in these simple claim terms. The Court should adopt CURT's proposed constructions.


Dated: October 26, 2018                              Respectfully submitted,

/s/ J. Michael Huget
J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
Anthony P. Acciaioli (P82028)
HONIGMAN MILLER SCHWARTZ AND
COHN LLP
315 E. Eisenhower, Suite 100
Ann Arbor, MI 48108
(734) 418-4200
mhuget@honigman.com
swaidelich@honigman.com
aacciaioli@honigman.com
*Attorneys for CURT*

## CERTIFICATE OF SERVICE

This is to certify that on October 26, 2018, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

Respectfully submitted,

/s/ J. Michael Huget
J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
Anthony P. Acciaioli (P82028)
HONIGMAN MILLER SCHWARTZ AND
COHN LLP
315 E. Eisenhower, Suite 100
Ann Arbor, MI 48108
(734) 418-4200
mhuget@honigman.com
swaidelich@honigman.com
aacciaioli@honigman.com
*Attorneys for CURT*

26