# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

Horizon Global Americas Inc.,

        Plaintiff,

v.

Curt Manufacturing, LLC,

        Defendant.

Case No. 2:17-cv-11879

Honorable Denise Page Hood

Magistrate Judge
Stephanie Dawkins Davis

---

### Horizon's Response to Curt's Objections to Special Master's
### Report and Recommendation Construing Disputed Claim Terms

(In response to ECF #76)

David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Timothy J. Lowe (P68669)
MCDONALD HOPKINS LLC
39533 Woodward Ave., Suite 318
Bloomfield Hills, Michigan 48304
t 248.646.5070 │ f 248.646.5075
tlowe@mcdonaldhopkins.com

*Attorneys for*
*Horizon Global Americas Inc.*

{8569680: }

## I.      Introduction

Plaintiff  Horizon  Global  Americas  Inc.  sued  Curt  Manufacturing,  LLC—a Horizon competitor—for infringing several Horizon patents to engineered automotive products, such as trailer brake controllers, trailer safety-chain anchors, and hitches.

Curt responded by countersuing Horizon on the '899 patent. Suing Horizon on the '899 patent, however, is forcing a square peg in a round hole: the patent covers fifth  wheel  hitches  that  are  materially  different  from  the  fifth  wheel  hitches  that Horizon  sells,  both  in  terms  of  configuration  and  function.  In  short,  the  accused Horizon hitches do not infringe the '899 patent, and Curt is trying to win (where it should  lose)  by  performing  legal  acrobatics  in  the  claim  construction  process.  Curt tries to rewrite its patent claims in broader form to stretch them beyond their ordinary meaning to cover Horizon's products. The Special Master correctly rejected Curt's attempts  as  contrary  to  the  intrinsic  evidence,  extrinsic  evidence,  well-established claim construction law, and the terms' ordinary meanings.

The  Court  should  affirm  the  Special  Master's  well-reasoned  Report  and Recommendation, ECF #75, (the "R&R") and overrule Curt's objections.

## II.     The Special Master is correct: the claimed "recess" on the hitch bar is an "indentation" – it is not an "indentation" <u>or</u> any other "opening."

Curt's objections explain generally how fifth-wheel hitches operate, so that Horizon will not repeat that background here. (Curt's Obj. to R&R ("Obj.") 2-3, ECF

#76.) The two paradigm claims of Curt's '899 patent (claims 9 and 13)[1] cover two very specific fifth wheel hitch configurations.

Claim 9 contains the "recess" term on which Curt objects. That term is not in Claim 13. Claim 9 claims a fifth-wheel hitch with a very specific "actuation structure," whereby an operator actuates the device by pushing and pulling the control "bar" to open and close the jaws of the hitch. ('899 patent, col. 12, ll. 48-53; *see also* R&R at 52-53 (explaining how the hitch's jaws are actuated by the control bar); Obj. at 3-4.) The jaws are what receive and embrace the "kingpin" from the trailer and secure it to the towing vehicle. (*See id.*; *see also* Horizon's Response Claim Construction Brief ("Horizon Resp.") at 1-2, ECF #52.) Fig. 2b from the '899 patent shows an exploded view of this actuation structure:

---

[1] Judge Avern Cohn ordered the parties to select "paradigm" claims from their patents to be litigated first. (ECF #30.)



**latch recesses (114, 116)**

**latch (108), which pivots on pin (110) to mate into recesses**

FIG. 2b

Claim 9 recites that the control bar **38** (shown in Figs. 2b and 12) has at least

one "latch recess." ('899 pat. col. 12, ll. 52-53.) Fig. 2b (above) in the '899 patent

shows those latch recesses as parts **114** and **116**. Fig. 12 (below) in the '899 patent

shows a side view of the latch recesses **114** and **116**.



FIG. 12

Claim 9 requires that the "latch" mate with the "latch recess" to secure the bar in place, which in turn secures the jaws in either an open or closed position. ('899 patent, col. 12, ll. 39-41 ("latch … mates into the latch recess on the bar … to prevent the bar from translating").)

The parties, the patent, dictionaries, and the Special Master all agree that a recess is an "indentation." (*See* R&R at 57, 59.) Curt, however, is not happy with just the ordinary meaning because the bars on the accused Horizon hitches do not have recesses or indentations. Instead, Horizon's hitch bars are held in place by bail-pins that clip into circular through-holes on the bars. This is why—and it's the only reason why—Curt wants to expand "latch recess" beyond its ordinary meaning to also cover *any* type of "opening" on a control bar. Curt's self-serving construction is contrary to the intrinsic and extrinsic evidence and claim construction law.

Curt does not object to the Special Master's finding that "indentation" is the commonly understood meaning of "recess" based on the '899 patent itself and both parties' dictionary definitions. (R&R at 59 (noting that parties' dictionary definitions are "similar" and Curt's construction "goes beyond" those dictionary definitions).) Curt, however, wants to tack on "or latch opening" to the term's ordinary meaning to also cover ***any latch "opening."*** As a definition, Horizon explained—and the Special Master agreed—that Curt adding "or latch opening" is incorrect because while a "recess" could be an opening, "not all openings are recesses." (R&R at 59.)

Curt bases its objection *entirely* on a single sentence by the Examiner in a non-final[2] Office Action during patent prosecution, where the Examiner "note[d]" that the hole element in a prior art patent called Larkin "is the equivalent to the 'latch recess' as claimed." (Obj. at 7-10.) Curt's objection is that the Special Master did not treat the Examiner's statement as "decisive." (Obj. 8-9.) Below is a screenshot of the full statement on which Curt relies:

> In re claim 1, Larkin discloses a trailer hitch (10) for engaging a kingpin (12a) of a trailer (12), the trailer hitch comprising a support frame (20) attachable in the bed of a truck (14); a kingpin retention structure (30) being securable about the kingpin; and an actuation structure (34) for the kingpin retention structure, comprising a bar (36) which is linked to the kingpin retention structure, such that longitudinal translation of the bar moves the kingpin retention structure relative to the kingpin, the bar having at least one latch recess defined therein; an opening on the support frame through which the bar translates; and a latch which mates into the latch recess on the bar and which attaches relative to the opening on the support frame to prevent the bar from translating as shown in Figures 1 and 2. The Examiner notes that the hole that element 36d passes through is the equivalent to the "latch recess" as claimed.

According to Curt, the Examiner's last sentence about the Larkin hole being an "equivalent" to "latch recess": (i) should be interpreted as defining a "recess" as any opening, and (ii) requires district courts to always and forever interpret what the Examiner "notes" as a binding interpretation of "recess" because ruling otherwise "would *exclude* the Larkin reference as art showing the 'latch recess.'" (Obj. at 8.)

---

[2] The United States Patent and Trademark Office's cover page to the Office Action on which Curt relies designates the Office Action as "non-final." (ECF #53-2 at 46.)

Curt's theory is wrong on both levels. First, as the Special Master correctly found, Curt's interpretation of what the Examiner "notes" about Larkin's hole is mistaken. Rather than demonstrating that the Examiner believed Larkin's hole was actually a "recess," the Examiner's statement acknowledges that Larkin's hole was *not* a recess, but merely an equivalent to one. (R&R at 59 ("the Examiner's note appears to acknowledge that the rejection is imperfect to the extent that Larkin's through hole is not, strictly speaking, a recess").)

As the Special Master correctly observes, if the Examiner believed that the hole in Larkin was in fact a recess, he would not have qualified it as an "equivalent." (R&R at 59.) Instead, he would have included it in the prior sentence in which the Examiner itemized, in a series separated by commas, every proposed claim limitation that he believed was actually "disclosed" by Larkin. (*Id.* at 58-59.) By "not[ing]" in a new, separate sentence that the hole in Larkin is "equivalent" to the "recess," the Examiner was signaling to the applicant that, while Larkin did not, in fact, "disclose" a recess, the hole in Larkin was close enough to the recess such that the Examiner was hesitant to issue a patent on that distinction alone. (*Id.* at 60-61.) The Special Master explains it this way:

> In particular, it appears that the Examiner recognized that the disclosure statement was arguable, but was unwilling to hinge patentability on the difference between Larkin's through hole and the latch recess recited in the claims. Accordingly, to preempt patentability arguments targeting the disclosure statement, the Examiner added the equivalency statement.

(*Id*)

The Special Master's interpretation explains why the Examiner treated the "recess" limitation differently from the limitations that he declared as "disclosed" by Larkin. Curt's interpretation, however, ignores that the Examiner treated "recess" differently and never explains why the Examiner would have done so. Thus, Curt's interpretation of the Examiner's statement is incorrect, the Special Master's interpretation is correct because it makes sense of the Examiner's statements, and Curt's objection should be overruled on that basis alone.

Second, Curt's theory that the Court must construe "recess" as also including through-holes to avoid "excluding" the Larkin reference is legally mistaken for several reasons. Neither *Deere & Co.*[3] nor *Cordis*[4] (the cases that Curt cites) require a district court to dispositively adopt an Examiner's _preliminary_[5] view of a claim term in relation to a prior art reference to avoid "excluding" that prior art reference. In fact, there is no such law. Neither case held that a Court must construe claim terms to uphold preliminary rejections by an Examiner.

---

[3] 703 F.3d 1349, 1358-59 (Fed. Cir. 2012).

[4] 339 F.3d 1352, 1359-60 (Fed. Cir. 2003).

[5] The Examiner's note was preliminary because the Office Action was non-final (*see supra* at p. 5 n. 2), and the Examiner's comments were mooted when Curt amended its claims later in prosecution (*see infra* at p. 9).

The Special Master correctly distinguishes Curt's two cases because, in both cases, the Federal Circuit rejected a party's argument that there was a prosecution disclaimer by looking at the Examiner's treatment of a claim term, as well as other evidence. (R&R at 61-62.) Because no one is arguing for prosecution disclaimer, the cases are inapplicable. (*Id.*) Another key distinction is that, in both cases cited by Curt, the Federal Circuit cited an Examiner's interpretation of claim terms to <u>*not*</u> change the ordinary meaning of the terms, whereas Curt is citing the Examiner's statement to change the ordinary meaning of "recess" to cover any and all types of "openings" on a bar. The law does not permit the latter.

Furthermore, as the Special Master correctly notes, the Examiner applied the "broadest reasonable interpretation" standard when interpreting the "recess" term, whereas this Court must apply the *Phillips* standard for interpreting claim terms. (R&R at 61-62.) Those standards are different,[6] so that Curt's demand that this Court adopt the Examiner's vague and preliminary single-sentence note about an "equivalent" to Larkin's hole would violate *Phillips*. (R&R at 61+62 (citing Federal Circuit law that Examiner's findings "cannot be dispositive"); *see also Karl Storz Imaging, Inc. v. Pointe Conception Medical, Inc.*, No. CV 09-8070 GAF (Ex), 2011 WL 13195980, at * (C.D. Cal. Aug. 1, 2011) ("A statement by the examiner giving a

---

[6] *See Cuozzo Speed Technologies, LLC v. Lee*, 136 S.Ct. 2131, 2139 (2016) (comparing USPTO's "broadest reasonable construction" to *Phillips* standard that requires "ordinary meaning … as understood by a person of skill in the art" as different standards).

claim the broadest reasonable construction therefore does not establish the meaning of the claim" in a patent infringement case).)

Additionally, the Examiner's statement about "recess" was mooted by Curt amending claim 1 to add limitations that the Examiner agreed were not in the prior art. (*See* ECF #53-2 at 37.) So the Examiner's ambivalent comment about Larkin's hole being an "equivalent" became immaterial and was never expounded, clarified, tested, or challenged. It remains vague and preliminary, as it prompted Curt to make a different amendment to avoid the "recess" issue altogether. This vague and undeveloped nature of prosecution statements is exactly why one must show "clear and unmistakable" evidence to prove disclaimer based on prosecution history. *See Phillips* v. AWH Corp. 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) ("because the prosecution history represents an ongoing negotiation between the PTO and the applicant . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes"); *N. Telecom Ltd. v. Samsung Electronics Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("Vagueness and inference [in the prosecution history] cannot overcome an ordinary meaning of a claim term …"). The Examiner's statement here is far from clear and unmistakable, such that it would be improper to rely on it to expand the ordinary meaning of recess.

Curt's argument that the Examiner could not have issued the rejection if he believed the Larkin hole was not, in fact, a recess exposes an error in Curt's logic.

(Obj. at 7.) If, as Curt says, equivalence (without identicalness) is not enough for the § 102 rejection issued by the Examiner, then this is an additional reason to _not_ rely on the Examiner's statements on that issue: either the Examiner did not understand the law or was vague in applying it. In any event, his "equivalence" statement was never challenged or further developed because Curt mooted the issue by amending claim 1 (see _supra_ at p. 9). If Curt thought mere equivalence was not enough to sustain the Examiner's § 102 rejection, then it should have argued that in response to the Office Action. Instead, it mooted the issue altogether by amending the claims to add limitations that the Examiner believed were patentable and not in the prior art.

For these reasons, the Court should adopt the Special Master's construction for "recess" and overrule Curt's objections.

## III.   The Special Master correctly construed claim 13's "bearing structure."

As to claim 13's "bearing structure" term, Curt's objection beats up a strawman and should be ignored. Curt says the R&R "limit[s] the term 'bearing structure' to a preferred embodiment disclosed in the specification," namely a spherical bearing. (Obj. at 11.) The R&R does not limit "bearing structure" to that style of bearing. Rather, the R&R construes "bearing structure" as "a device that permits movement and carries the supporting force for the structure which retains the support frame." (R&R at 76.) Rather than confine "bearing structure" to a spherical bearing, the

Special Master notes that his recommended construction is that the term denotes "a bearing that may, but need not, be a spherical bearing." (R&R at 80.)

Next, Curt argues that "bearing" in independent claim 9 and "bearing structure" in independent claim 13 must have different definitions because they are different terms. (Obj. at 12.) Curt invokes the claim differentiation doctrine, but Curt misunderstands it. First, it is merely a guide, and not a rigid rule. (R&R at 83.) Any presumption under claim differentiation is rebuttable, and the presumption is at its weakest when (as here) comparing terms in two ***independent*** claims: the "presumption has even less force where, as here, the claims being compared are all independent claims." *Norgren Automation Solutions, LLC v. PHY, Inc.*, No. 14-CV-13400, 2015 WL 10735173, at *12 (E.D. Mich. June 22, 2015), report and recommendation adopted, No. 14-CV-13400, 2015 WL 5693038 (E.D. Mich. Sept. 28, 2015), on reconsideration in part, No. 14-CV-13400, 2015 WL 6437190 (E.D. Mich. Oct. 21, 2015).

Here, any presumption that the "bearing" terms (which are identical, but for the word "structure") have different meanings is rebutted by reading the '899 patent's specification that uses the terms interchangeably. (R&R 79-81; *see also* Horizon Resp. at 16-17.) This makes sense because "structure" is a nonce term that adds no real meaning to the bearing term. *Cf. Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("detent mechanism" means "detent"). While the

"bearing structure" in claim 13 functions differently that the "bearing" in claim 9, it is the other limitations in those separate claims that define those different functionalities (*see infra* at p. 13); it is not the addition of the generic word "structure." And in prosecution history, the applicant never distinguished "bearing" from "bearing structure."

Additionally, claim differentiation does not apply between similar terms in two *independent* claims when those claims are "not otherwise identical in scope." *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1238 (Fed. Cir. 2016) ("This court has declined to apply the doctrine of claim differentiation where 'the claims are not otherwise identical in scope.'"). In *Apple*, the Federal Circuit rejected an appellant's argument that the PTAB should have construed "microprocessor" in independent claim 5 different from "central processing unit" in independent claim 12. There were other claim limitation differences between claims 5 and 12, so that the claims were "not otherwise identical in scope," claim differentiation did not apply, and the different words should be construed the same. *Id.*; *see also Continental Automotive Systems US, Inc. v. Schrader*, No. 11-cv-14525, 2013 WL 12182145, at *2 (E.D. Mich. Oct. 15, 2013) (construing "alarm" in claims 1 and 11 same as "human detectable alarm" in other claims, where scope of claims had other differences); *Tandon Corp. v. ITC*, 831 F.3d 1017, 1023 (Fed. Cir. 1987) ("relatively fixed" in independent claim 5 had the same meaning as the terms "fixed" and "fixedly

coupled" in independent claims 1 and 12, respectively); *Norgren*, 2015 WL 10735173 at *12 ("fluid linear reciprocal actuator" same as "actuator").

The same holds true here. Claims 9 and 13 still have different scope when the bearing terms are given the same meaning, so that claim differentiation does not apply. *See Apple*, 842 F.3d at 1238. The difference in scope is due to other claim limitations found in claim 13 that are not found in claim 9, and vice versa. For example, claim 9 requires a very specific "latch" in "recess" that holds the control bar in place, which is not in claim 13. (*See* '899 patent, col. 12, ll. 50-58 (Claim 9).) Claim 13 requires that the bearing structure permit two different directions of movement (and that the stiffness in those directions be different) ('899 patent, col. 14, ll. 3-11) (Claim 13)), while claim 9 does not contain those limitations. Curt's argument might be different if claim 13 depended from claim 9 and only added the "structure" term, although that would raise indefiniteness problems as to the term "structure." As the claims were written, "bearing" and "bearing structure" have the same meaning.

The R&R explains in depth how and why "bearing structure" in claim 13 has the same meaning as "bearing" in claim 9. (R&R at 78-81.) And Curt offers no valid ground for finding an error in that recommendation.

By seeking to substitute "one or more parts" for the word "device" in the Special Master's construction, Curt's true intent is to try and have "a bearing

structure" interpreted to cover multiple bearing structures at different locations on the hitch. (*See* R&R (noting that Curt "does not dispute" that its construction would cover "plural bearings, in different locations, at different joints")).) This would change the meaning of claim 13, which recites "**a** bearing structure" that performs multiple functions, namely allowing movement in two different directions. (*See* '899 patent, col. 14, ll. 3-11) (Claim 13).) To allow Curt to combine multiple bearing structures in different locations on the hitch to meet the multi-function requirements that Claim 13 assigns to "a bearing structure" would fundamentally change and rewrite claim 13.

The Special Master correctly saw Curt's true intent, and refused to construe the term so broadly because it is contrary to the intrinsic evidence. The Special Master correctly noted that adopting Curt's construction would go beyond what is claimed and "broaden the scope of the term to cover any structure with any amount of parts that happens to support something else that moves." (R&R at 83.) The Special Master correctly rejected Curt's invitation for legal error.

The Court should overrule Curt's objection to the Special Master's recommended "bearing structure" construction.

## IV.   Conclusion

For these reasons, and for those offered in the claim construction briefing, at the Claim Construction Hearing, and in the R&R, the Court should overrule Curt's

objections and adopt the Special Master's Report and Recommendation entirely as legally and factually correct.

Respectfully submitted,

Dated:   January 16, 2020

_  s/ Matthew J. Cavanagh_____
*Counsel for*
*Horizon Global Americas Inc.*