UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORIZON GLOBAL
AMERICAS, INC.,
      Plaintiff/Counter-Defendant,
v.

CURT MANUFACTURING,
LLC,
      Defendant/Counter-Plaintiff.
_____/

Case No. 17-11879

Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## OMNIBUS ORDER ON ECF Nos. 170, 171, 190, 191, 198, 199, 207, 214-219

### A.    Background

This case was referred to the undersigned to handle all non-dispositive matters. (ECF No. 134). Earlier, the parties brought discovery motions that the undersigned addressed in a September 26, 2024, Order. (ECF No. 185). Before and after that Order was filed, several other motions were filed, including Defendant CURT's motion to amend its counterclaims (ECF Nos. 170, 171, 199), and CURT's motion to compel (ECF No. 180). Plaintiff Horizon moved for reconsideration of the Court's September 26th Order and filed an objection to that Order. (ECF Nos. 190, 197). The Court stayed case deadlines pending a resolution of these motions. (ECF No. 193). Apart from these motions are motions to withdraw as counsel from six attorneys (ECF Nos. 214-219) and several motions to seal documents (ECF Nos. 191, 198, 207, 224).

The Court will address the motion for reconsideration first because the decision on that motion impacts other pending motions.

**B.    Motion for Reconsideration (ECF No. 190)**

    1.    <u>Background and Arguments Before the Order was Filed</u>

Horizon seeks reconsideration of a portion of the Court's Order (ECF No. 185) that extended discovery allowing CURT to supplement contention interrogatory responses to include new theories and contentions "based on information learned on or after the [July 26, 2024] close of discovery[;]" i.e., "information learned because of the depositions" that would occur after the July 26th discovery deadline.  (ECF No. 185, PageID.8149-50).

CURT served its supplemental theories and contentions on August 30, 2024. But at the time of the ruling, the Court had not seen the supplemental theories and contentions.  The parties made their arguments about the supplemental responses on the record.  It is now clear that much was left out of oral argument.  So to have a full view of the Court's Order and what Horizon is now asking the Court to do with respect to that Order, brief background on the evolution of the arguments is needed.

Horizon moved to compel production of documents and for an order directing CURT to confirm it had served final contentions as to infringement, non-infringement, invalidity, and non-infringing alternatives.  (ECF No. 146,

2

PageID.5321-22).  Horizon explained that, at the time of that motion, CURT would not confirm that its interrogatory responses were the final contentions it would rely on during expert discovery, summary judgment, and trial.  (*Id.* at PageID.5326). Since the official discovery deadline closed the day this motion was filed, July 26, 2024, Horizon wanted CURT to be locked in to its earlier contentions.  Horizon insisted that allowing CURT to disclose new contentions would prejudice the company because it would have no time to pursue discovery on any new or changed contentions.  (*Id.* at PageID.5327).  So Horizon asked that CURT be precluded from serving new, undisclosed theories after the close of discovery. Horizon was careful to contrast this request with supplementing prior disclosed theories with additional evidence or expert opinion; those kinds of supplemental responses would be fine.  (*Id.* at PageID.5328).

CURT did not oppose being locked into final contentions at the close of discovery, but argued that July 26, 2024, was not the true end of discovery. Several depositions were scheduled to occur through the end of July and into August.  (ECF No. 161, PageID.6029-30, Unredacted Sealed Version of response brief).  CURT argued that granting Horizon's motion would preclude it from using "information learned at the myriad depositions occurring post-July 26" during expert discovery and at trial.  The company asserted that this would be unfair.  (*Id.* at PageID.6031).  For instance, on July 30th, Horizon produced more documents

that purportedly show that Horizon was studying CURT products when developing one of its fifth wheel hitches. CURT argued that it should be able to use the information emerging after July 26th for any new legal theories in its contentions. (*Id.*).

As another example, CURT pointed to Eric Stanifer's post-discovery deadline deposition. Mr. Stanifer is currently a CURT employee but worked for Horizon as an engineer when some of the contested products were created. He is a named inventor on Horizon's '863 Patent. He testified that he and others at Horizon studied CURT's '899 Patent and other prior art when designing Horizon products. (*Id.* at PageID.6032). No one disclosed that prior art, which raises the question whether CURT can assert an inequitable conduct claim in its counterclaims. (*Id.* at PageID.6032-33). Another issue relates to Horizon's '583 Patent. Mr. Stanifer is named as an inventor on that patent's two predecessor patents. Despite being a named inventor on those patents, Horizon removed him as a named inventor on '583. During his deposition, Mr. Stanifer did not know why he was not listed as an inventor; he stated that he was among the designers on that patent. (*Id.* at PageID.6033). A patent is invalid if it does not properly name the inventors. So CURT wants to add an invalidity claim related to the '583 Patent. (*Id.*).

CURT also intended to amend invalidity contentions after two other inventors were deposed in August "based on [their] testimony" and "may learn of additional bases for invalidity and/or unenforceability during" one of the depositions.  Thus, CURT insisted it could not finalize contentions "before completing these depositions."  (*Id.* at PageID.6034).

Also on July 26, 2024, CURT moved to extend the fact discovery deadline to August 30, 2024.  (ECF No. 148, 150 (Unredacted Sealed Version)).  Horizon agreed to extend discovery to that date to allow for depositions only, but CURT wanted a wholesale extension.  CURT said there was good cause to extend discovery for two reasons.  First, several fact and corporate representative depositions were scheduled to occur after July 26th and it "should have the ability to seek additional discovery flowing from these depositions."  (ECF No. 150, PageID.5642).  Second, CURT needed follow-up discovery on Horizon's witness depositions because many witnesses were unprepared to testify on certain topics; they pointed to the existence of additional, unproduced documents and each of those depositions came after a document dump just days earlier.  (*Id.*).

The Court scheduled a hearing to occur on September 16, 2024.  Before the hearing, the parties submitted a joint statement of resolved and unresolved issues, filed on September 9, 2024.  (ECF No. 175, 176).  There, the Court learned of key updates on the status of the disputes.

By the time the parties filed the joint statement, CURT had provided supplemental interrogatory responses on August 30, 2024. In Horizon's view, those responses add new theories and contentions. Horizon asked the Court to limit CURT to its theories disclosed as of July 26, 2024, when fact discovery closed. CURT maintained that its supplemental responses were proper. (*Id.* at PageID.7499).

The Court heard argument one week later. Neither party had provided CURT's supplemental contention interrogatory responses before the hearing; the Court relied on the arguments and descriptions of the supplemental responses.

Counsel for CURT explained that the company served supplemental responses "that incorporated theories and new evidence that we learned after July 26th." (ECF No. 184, PageID.8122, Hearing Transcript). Counsel noted, again, that many depositions were scheduled after July 26th. To rule in Horizon's favor, CURT argued, would preclude CURT from supplementing discovery responses "based on information that we learned on July 30th or August 2nd or August 1st or August 8th." (*Id.* at PageID.8123). It insisted that there is no rule precluding a party from using anything learned in post-discovery-deadline depositions because of the date on which the depositions took place. (*Id.* at PageID.8124). Counsel reiterated that "the dispute is whether we can use the information and testimony we learned in the depositions that occurred after July 26th." (*Id.* at PageID.8124-25).

Horizon counsel made clear that they were not contesting the use of information learned after July 26th to supplement previously disclosed theories. It is CURT's new theories that Horizon contested. (*Id.* at PageID.8127-28). CURT insisted that the late depositions provided information that support its new theories. (*Id.* at PageID.8133).

2.    The Order

The Court took the briefing and oral argument under advisement, issuing an order on September 26, 2024. (ECF No. 185). The Court said this:

> The parties agreed to conduct half of the fact depositions after the close of discovery. The Court respects that agreement. But because Horizon did not agree to unlimited discovery until August 30, 2024, absent a Court order CURT could not unilaterally decide that any discovery could be conducted until the 30th. The Court finds a middle ground reasonable—the parties would conduct the depositions and would be allowed follow-up discovery on information coming to light during the depositions taken close to and after the close of discovery. Against this backdrop, it would be unreasonable to conclude that fact depositions could occur but the parties could not act based on information learned in those depositions. CURT gave an example of new information. CURT deposed an inventor named on some of Horizon's patents on July 30, 2024, after the close of discovery. CURT intends to add a claim of invalidity as to one of the contested patents resulting from some of the testimony. (ECF No. 160, PageID.6005). CURT reasonably does not want to be locked into final contentions without all the facts fully developed.
>
> The Court will not order that CURT is locked into final contentions as of July 26, 2024—*it could*

7

> *supplement final contentions with new theories or*
> *contentions learned because of the depositions.*

(*Id.* at PageID.8148-49) (emphasis added).

The Court understood CURT to seek permission to supplement theories and

add new theories based only on new information learned in the post-discovery

depositions.  That was reasonable, so the Court allowed it.

    3.   <u>Motion for Reconsideration</u>

Now we come to Horizon's motion for reconsideration.  (ECF No. 190).

CURT rightly did not file a response brief because Local Rule 7.1(h)(3) does not

permit a response to motions for reconsideration.  But CURT did respond to

Horizon's objection to the Order.  The objection raised the same arguments as the

motion for reconsideration.  (ECF No. 197).  CURT used its response to the

objection to address the motion for reconsideration.  (ECF No. 208, PageID.9780,

n. 1).  The Court relies on that response in better understanding the facts to address

the motion for reconsideration.

Horizon brings two umbrella arguments: (1) new facts warrant

reconsideration and (2) that the Court made a mistake based on the record before it.

To obtain reconsideration, the moving party must successfully make one of

the showings below:

> (A) the court made a mistake, correcting the mistake
> changes the outcome of the prior decision, and the
> mistake was based on the record and law before the court

> at the time of its prior decision; (B) an intervening
> change in controlling law warrants a different outcome;
> or (C) new facts warrant a different outcome and the new
> facts could not have been discovered with reasonable
> diligence before the prior decision.

E.D. Mich. L.R. 7.1(h)(2).  As Horizon recognized, "[a] motion for reconsideration

is not intended as a means to allow a losing party simply to rehash rejected

arguments or to introduce new arguments."  *Southfield Educ. Ass'n v. Bd. of Educ.*

*of Southfield Pub. Sch.*, 319 F. Supp. 3d 898, 901 (E.D. Mich. 2018).

      a.    Arguments on "New Facts"

Horizon argues that new facts warrant reconsideration.  Those new facts

concern Horizon's prejudice if the new contentions are allowed to stand.  In the

Order, the Court contemplated that Horizon could use expert discovery to probe

final contentions, but also that the parties should confer if more time was needed

for additional, non-expert discovery.  (ECF No. 185, PageID.8149).

Horizon lists two areas of prejudice.  First, before the Order was filed,

Horizon understood that it could investigate defenses to the new contentions with

Mr. Stanifer "with an appropriate protocol in place."  (ECF No. 190,

PageID.8449).  It insists that Stanifer is contractually bound to assist Horizon to

secure its title in the '863 Patent because he was an inventor of that patent.

Following the Order, when Horizon sought to meet with Stanifer, CURT objected

to any such discussion without Stanifer's counsel, Mr. King, present.  (*Id.*; ECF
No. 208, PageID.9799-9801).

CURT responds that Horizon was never entitled to *ex parte* conversations
with Mr. Stanifer.  (ECF No. 208, PageID.9799-9800).  And it argues that Mr.
Stanifer is not contractually obligated to assist Horizon.  The agreement Horizon
cites merely states that Mr. Stanifer assigned the '893 Patent to Horizon.  (*Id.* at
PageID.9801) (citing ECF No. 187-21, PageID.8394).  Thus, Horizon's inability to
meet with Mr. Stanifer without his counsel present is not prejudice to the company.

Horizon clarifies that it asked to speak with Mr. Stanifer through his new
counsel, but CURT refused the request.  (ECF No. 212, PageID.9952).

For its second assignment of prejudice, Horizon says that in a new
contention, CURT stated that it would rely on a B&W hitch as invalidating prior
art.  But it recently learned that CURT does not have the physical version of that
hitch.  This means that Horizon would have to refute the allegations without the
benefit of inspecting the product in discovery.  (ECF No. 190, PageID.8449-50).

CURT argues that the inability to inspect the hitch is not prejudicial.
Stanifer and another inventor studied that hitch in detail.  CURT did not need to
inspect a physical version of the hitch to assert the claim.  Instead, it relied on
Stanifer's testimony about that hitch and other documents concerning the hitch to
determine that the hitch is invalidating prior art.  (ECF No. 208, PageID.9801-02).

10

Horizon has possession of Stanifer's inventor notebook which likely contains details about the hitch.

Horizon maintains its prejudice regarding the B&W hitch because it will need a factual record to defend against the contention.  (ECF No. 212, PageID.9952).

b.    Arguments on "Mistake"

Horizon next argues that the Court made a mistake based on the record and correcting that mistake would result in a different outcome.  For this argument, Horizon attempts to show why the 13 new theories and contentions are not based on new information learned in the post-discovery depositions.[1]  (ECF No. 190, PageID.8450-57).  The Court did not have argument on each new theory or contention to support good cause to extend discovery and allow the new theories. (*Id.* at PageID.8457-58).  If these arguments were available to the Court before the ruling, Horizon insists that the ruling would have been different, i.e., that CURT would not have been permitted to serve the 13 new theories and contentions.

The arguments on each of the theories and contentions will be addressed in the analysis below.

4.    Analysis

---

[1] CURT withdrew supplemental contention No. 12, so there are 13 new theories and contentions at issue.

The Court's decision to allow new theories and contentions based on information learned during the depositions was issued with the understanding that new theories or contentions would be born out of new information learned after the official close of discovery. Stated from another perspective, the Court understood CURT's argument to be that there would be no new theories or contentions without the post-discovery depositions. Thus, the decision turned on the fact that CURT might learn new information in a deposition and should be permitted to use any new information to supplement or add interrogatory responses.

It turns out that some of the new theories and contentions were based on information CURT had before the depositions but were further supported by the depositions. This is not the kind of new theory or contention the Court anticipated.

Contentions 1-4 are:

> 1. The '863 Patent is invalid under Section 103 as obvious in view of the '899 patent in combination with Works.
>
> 2. The '863 Patent is invalid under Section 103 as obvious in view of the '899 patent in combination with Works and Stephen.
>
> 3. The '863 patent is invalid under Section 102 as anticipated by the B&W Companion Hitch.
>
> 4. The '863 patent is invalid under Section 103 as obvious in view of Curt's Q-5 product in view of the B&W Companion Hitch.

(ECF No. 190, PageID.8446).

CURT references it's '899 Patent in contentions 1 and 2 to show why the '863 Patent is invalid as obvious.  It references the B&W companion hitch and its Q5 product in contentions 3 and 4 as anticipating or rendering obvious Horizon's '863 Patent.  (ECF No. 208, PageID.9790-91).

CURT knew that its '899 Patent might invalidate the '863 Patent as early as July 2017.  In a letter to Horizon counsel, CURT counsel was "surprised" that its '899 Patent was not cited during the prosecution of the '863 Patent because they had "reason to believe that one or both inventors on [the '863 Patent] were fully knowledgeable about CURT's earlier patent and product."  (ECF No. 179-5, PageID.7723).  That letter includes discussion of other CURT products related to Horizon's patents.  (*Id.*).  As for the B&W companion hitch, CURT's fact witness, Joel Diller, testified that in 2012 CURT engineers had a physical version of that hitch and reviewed it in creating a new product for CURT.  (ECF No. 192, PageID.8516, 8518).  Thus, CURT knew about the B&W hitch and Horizon's patent well before post-discovery depositions, and seemingly could have formed an invalidity contention based on CURT's analysis of the hitch and comparison to Horizon's product.  It also appears that no deposition testimony was needed for CURT to form the belief that its own Q5 product is prior art to Horizon's patent after reading Horizon's patent specification.

Given the letter and testimony, CURT was aware of facts from which it could assert invalidity as to its own patent, its own product, and the B&W companion hitch.

CURT insists these four contentions comply with the Order because they did not know the extent to which the inventors of the '863 Patent relied on those references until Mr. Stanifer testified that he and his co-inventor looked at those products.  (ECF No. 208, PageID.9790-91).

This argument is not well taken.  The contentions do not depend on the extent to which engineers relied on prior art.  Providing these contentions so late in the litigation, without time for Horizon to investigate the claims through discovery, it not what the Court contemplated in the Order.  These contentions go beyond the scope of the Order.

Contentions 5 through 7 state:

> 5. The '863 patent is invalid under Section 112 for lack of enablement.

> 6. The '863 patent is invalid under Section 112 for lack of written description support.

> 7. The '863 patent is invalid under Section 112 because the term "cross-member isolator dampens" is indefinite.

(ECF No. 190, PageID.8446-47).

14

A party can assert enablement, written description, and indefiniteness defenses under 35 U.S.C. § 112.  Though the concepts seem simple, the arguments on the contentions are not.

CURT says that the testimony from its own engineers in August added clarity to one of Horizon's claims.  CURT now knows that Horizon is alleging that some of CURT's hitches infringe Horizon's '863 Patent based on a "tolerance stack-up analysis."  (ECF No. 208, PageID.9793).  According to CURT, Horizon's theory is that its product has torsion inserts that "handle longitudinal loads," although the product as described in the patent is not designed to handle longitudinal loads.  (*Id.*).

It is unclear why CURT could not know that Horizon's patent specification and prosecution history revealed no issues with enablement, written description, or definiteness until CURT's engineers testified in August 2024.  CURT's single citation to a page of deposition testimony provides no help.  (*See* ECF No. 210-3, PageID.9924-25).  Those few sentences do not reveal ambiguity in Horizon's patent language or prosecution history that alerts CURT to a problem.[2]

Next, CURT argues that the '863 Patent does not specify to what extent a cross-member isolator must "dampen" to satisfy the claim limitation "cross-

---

[2] If CURT kept its argument brief and vague to avoid exceeding the page limit for response briefs, nothing stopped CURT from moving for leave to exceed the page limit and fully flesh out its arguments.

member isolator dampens." (*Id.*).  And the patent specification does not provide a disclosure of the phrase "cross-member isolator dampens" to enable another engineer to practice the full scope of the invention and fails to "provide an adequate written description to reasonably convey to a person of ordinary skill in the art that the inventors had possession of the full scope of the claimed inventions." (*Id.* at PageID.9793-94).  CURT says that "[t]hese issues only came to light in view of information learned during deposition testimony after July 26." (*Id.* at PageID.9794).  CURT did not provide an example of the new information that showed a new infringement theory from Horizon.

Reading the full statement of contention at ECF No. 190-4, PageID.8479-80, there is no more clarity.  The full statement reads as one would expect after evaluating the claim language for the first time at the beginning of this lawsuit. There is no mention of learning about a new infringement theory that calls into the question any of the claim language.

Horizon did not do itself any favors in its argument.  Most notably, it did not address the assertion of a new infringement theory that came to light in depositions.  It did not contest that this is indeed a theory it is asserting, and that CURT did not know about it until recently.  Horizon points to other unavailing arguments instead.  For instance, it does not matter that it was CURT's witnesses'

testimony that raised the issues; it is CURT's witnesses who shed light on Horizon's theory.  (*See* ECF No. 212, PageID.9952).

And Horizon argues that it is too late for CURT to raise indefiniteness because that issue was resolved during claim construction with the Special Master in 2018.  (ECF No. 190, PageID.8444).  But "claim construction continues until a final judgment is rendered[, and] a party need not raise a specific indefiniteness defense at the claim construction phase in order to be able to raise that defense later."  *Daedalus Blue, LLC v. MicroStrategy Inc.*, 2023 WL 5941736, at *13 (E.D. Va. Sept. 12, 2023) (citations omitted).  Horizon cited no contrary authority.

Based on what is before the Court, CURT's engineers testified about certain products and that testimony established for CURT that there is a theory of infringement against it that was not previously disclosed.  So, in response to August 2024 testimony about this "new" theory, CURT put forth these contentions. Thus, contentions 5-7 comply with the Order.

Moving on to the non-infringing alternative contentions.  Contention No. 8 says, "A non-infringing alternative to the '863 patent is to shorten the torsional inserts by a few millimeters."  (ECF No. 190, PageID.8447).  Contention No. 14 says, "A non-infringing alternative [to the '713 Patent] is the B&W product GNRK1314 and Curt product 60626."  (*Id.*).

Horizon insists that contention No. 8 was based on CURT's witnesses' depositions, so the facts were within CURT's knowledge since the case began.  It says that contention No. 14 is based on a third-party product that CURT does not possess, which goes to its prejudice argument recited above, not whether the contention itself violates the Order.  (*Id.* at PageID.8461).

CURT argues that contention 8 is related to contentions 5-7 in that it became aware in August, through its engineer, that Horizon "was relying on its convoluted manufacturing tolerances argument to maintain its infringement claim."  (ECF No. 208, PageID.9794).  CURT says its engineer made it apparent that Horizon may be contending infringement based on manufacturing tolerances, and so it now has this non-infringing alternative.  (ECF No. 190-4, PageID.8474).  Thus, it supplemented the contention to include a non-infringing alternative.  (ECF No. 208, PageID.9794).  As to contention No. 14, CURT says it arose "in large part" because of the late deposition testimony, without elaboration.  (*Id.* at PageID.9799).

Contention No. 8 complies with the Order.  Here, CURT makes the reasonable argument that it learned in August of another way Horizon may be asserting infringement, and provides this non-infringement theory in response.

CURT simply did not sufficiently support contention No. 14.  If the contention arose "in large part" from post-discovery depositions, then the

18

information was available at least in small part before those depositions. So the Court concludes that contention No. 14 goes beyond what was allowed in the Order.

Contention No. 9 does not violate the Order. It alleges the invalidity of Horizon's '583 Patent because Stanifer was not listed as a named inventor. (ECF No. 190, PageID.8447). Horizon asserts that it should have been clear to CURT that there may be a problem with inventorship because Stanifer was named as an inventor on other patents but not this one. (*Id.* at PageID.8460-61). According to CURT, until Stanifer's deposition, it had no factual basis to assume that leaving him off the patent as an inventor invalidates the patent. There could have been any number of reasonable explanations for why he was omitted as an inventor. But then Stanifer testified that he was an inventor but did not know why he was not listed as an inventor. (ECF No. 208, PageID.9794-95).

This contention derives directly from testimony, from new information learned in a post-discovery deposition. This contention complies with the Order.

This leaves contentions 10, 11, and 13. These contentions concern Horizon's '142 Patent. They are the same as contentions 5-7—they assert that this patent is invalid for lack of enablement, for lack of written description, and because the term "decode" is indefinite, respectively. (ECF No. 190, PageID.8447). Horizon's arguments are the same for all six contentions. (*Id.* at

19

PageID.8455-56).  The difference in CURT's argument is that the basis for these

three contentions comes from August 2024 testimony from one of Horizon's

inventors.  (ECF No. 208, PageID.9795-98).  This testimony demonstrated to

CURT how Horizon viewed its patent and infringing products.  CURT argued that

the information learned in the deposition is the basis of the new contentions.

Horizon did not address whether other facts were available to CURT before the

deposition.

Like contentions 5-7, CURT has sufficiently established contentions 10, 11,

and 13 derive from new information learned in the post-discovery depositions.

5.    Conclusion

Did the Court make a mistake based on the record before it?  No.  Based on

the arguments and documents presented, which did not include the new

contentions and the arguments raised here, the Court made a sound ruling.

Horizon does not argue that it was a mistake to allow supplemental contentions

based on new information learned during the depositions.  So Horizon's motion is

less about the Court making a mistake and more about CURT going beyond the

scope of the Order.  Reconsideration on this basis is **DENIED**.

The motion for reconsideration based on the new facts, i.e., prejudice to

Horizon, is also **DENIED**.  Horizon will be given an opportunity to conduct

discovery.  The Court will extend the deadline to complete fact discovery **related**

**only to the new, allowed contentions** (below, five contentions are stricken) to

**March 14, 2025**.  This will give Horizon time to speak with Stanifer with his

counsel present or to re-depose Stanifer.  Nor is there any prejudice to Horizon

because it cannot inspect a B&W hitch mentioned in contention 3 because, next,

the Court strikes contentions 1-4 and 14.  So there is no incurable prejudice that is

new that requires a new ruling to change the Order.

> Case deadlines are as follows:
>
> - March 14, 2025 - Fact Discovery closes
> - April 4, 2025 - Opening Expert Reports for issues on which a party bears the burden of proof
> - May 2, 2025 – Rebuttal Expert Reports
> - June 2, 2025 – Close of Expert Discovery

Established above, contentions 1-4 and 14 go beyond the scope of the Order.

Federal Rule of Civil Procedure 16(f) allows the Court to issue "any just orders,"

on its own, if a party or its attorney "fails to obey a . . . pretrial order."  CURT

failed to obey the Order.  As a sanction for exceeding the scope of allowed theories

and contentions, the Court **STRIKES** contentions 1-4 and 14.

## C.    CURT's Motions to Amend Counterclaim (ECF Nos. 170/171, 199)

On August 30, 2024, CURT moved for leave to amend its counterclaims to

add a claim of inequitable conduct.  If allowed, the new claim would assert that

Horizon's '863 Patent is unenforceable because Eric Stanifer, Richard McCoy,

Horizon, and/or Horizon's patent prosecution counsel failed to disclose a B&W

companion hitch, CURT's '899 Patent, and CURT's Q5 Fifth-Wheel Hitch as prior art that the inventors reviewed and/or studied while creating Horizon's new product.  (ECF No. 172-1, PageID.7001-15).  Three of the stricken contentions relate directly to this proposed counterclaim.

After the motion for leave to amend was fully briefed, CURT filed an amended motion for leave to amend, adding allegations.  (ECF Nos. 198-199).  Again, it seeks to seal the proposed amendment and exhibits.

In light of the amended motion, the original motion (ECF Nos. 170-171) is **TERMINATED AS MOOT**.  The documents related to this motion will remain sealed.

Horizon did not respond to the amended motion, perhaps because the Court stayed all pending case deadline until resolution of motions filed before October 8, 2024.  (ECF No. 193).  In any event, the Court will **DENY WITHOUT PREJUDICE** the amended motion so that CURT may consider what, if any, impact striking certain of its contentions might have on its proposed amended counterclaim.  It may move again for leave to amend its counterclaim.  **A new motion to amend must be filed within two weeks of this Order**.  The accompanying motion to seal (ECF No. 198) is also **DENIED WITHOUT PREJUDICE**.

**D.    Motions to Withdraw as Counsel (ECF Nos. 214-219)**

On November 22, 2024, CURT's counsel from Honigman LLP moved to withdraw as counsel.  (ECF Nos. 214-219).  Alternate counsel has appeared for CURT.  Horizon opposes their withdrawal because it would risk delaying the litigation as new counsel gets up to speed.  Horizon is insistent that Honigman attorneys remain involved in the (formerly) pending motions.  It asks that the motion be denied without prejudice so that counsel can transition in an orderly fashion.  (ECF No. 220).  Horizon also noted its planned (now filed) motion for sanctions against CURT.  Horizon contends that counsel cannot "swap out" to avoid accountability for their conduct.  (*Id.* at PageID.10010).

CURT's new counsel says there will be no delays to get up to speed because the stay allowed them time to familiarize themselves with the case.

The motions to withdraw are **GRANTED**.  Based on new counsel's representations, the Court will not later hear an argument that additional time is needed to further familiarize themselves here.  Horizon also provides no authority suggesting that once counsel withdraws, they are effectively immune from sanctions for conduct while they represented the party.  The Court will hold a hearing on Horizon's motion for sanctions.  If the Court requires a response from Honigman counsel concerning their conduct before ruling on the motion, the Court will order a response.

**E.     Motions to Seal**

During the September 16, 2024, hearing, the Court informed Horizon that its motions to seal did not comply with Local Rule 5.3 and corresponding case law because the motions gave no detailed justification for the seal. Both parties withdrew their motions and filed new ones.

Eastern District of Michigan Local Rule 5.3 provides procedures for filing civil material under seal. Rule 5.3(b) governs here because no rule or statute is cited as authorizing sealing the documents. In this Circuit, Courts are not permitted to take motions to seal lightly. The Sixth Circuit has long recognized a "strong presumption in favor of openness" in court records. *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). The "heavy" burden of overcoming that presumption rests with the party seeking to seal the records. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). The moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed. *Id.* at 307. This burden must be met **even if no party objects to the seal**, and it requires a "document-by-document, line-by-line" demonstration that the information in the document meets the "demanding" requirements for the seal. *Id.* at 308.

In delineating the injury to be prevented, "specificity is essential." *Id.* Typically, "only trade secrets, information covered by a recognized privilege (such

as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)" are enough to overcome the presumption of access. *Id.* Should the Court order a document to be sealed, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Id.* at 306.

The Court recognizes that many documents the parties seek to seal are marked confidential by the opposing party, so the interest in mounting a vigorous defense of the documents is not at its highest. Still, a movant must explain the reason for the seal well enough that the Court can point to those reasons as sufficient and compelling reasons to allow a seal. Otherwise, the motion is denied.

CURT's motion to seal (ECF No. 207) is **GRANTED**. This motion explains the sensitive portions of documents and the need for the seal. For the reasons stated in the motion, the seal is appropriate. CURT must file a public redacted copy of its response to the motion for reconsideration **within 14 days** of this Order.

Horizon's motions are still not in compliance with Local Rule 5.3. It filed the motions to seal under seal, though the motions themselves contain no confidential or sensitive information. The motion to seal at ECF No. 191 is

**GRANTED** but will be made public.  With this motion Horizon seeks to seal one document that contains sensitive business information for CURT.

The motion to seal at ECF No. 224 is **HELD IN ABEYANCE**.  The Court will maintain the seal on those documents for now.  Horizon must file an unsealed copy of the motion to seal at ECF No. 224 on the public docket **within one week of this Order**.  Horizon asks to file under seal a meet and confer transcript and CURT sales data and deposition transcripts that CURT marked "highly confidential."  (ECF No. 224, PageID.10084-85).  Horizon asserts that it sought information from CURT to support sealing those documents, but CURT did not respond.  (*Id.* at PageID.10085).  **The Court will allow CURT two weeks to support the need to file the sales data and deposition transcripts under seal** in a brief that does not exceed 15 pages.  If CURT does not timely file the brief, the Court will only grant the seal as to the meet and confer transcript, opening the remaining documents to public view.  To account for shifting the burden to CURT, the non-moving party, Horizon must pay the attorney costs and fees CURT incurs in defending the seal of these documents, i.e., the costs incurred in drafting the brief in support of sealing the documents.  If no agreement on costs and fees is reached, CURT shall file a bill of costs with supporting argument, and Horizon must file a response.

**F.     Conclusion**

26

To summarize:

- CURT's original motion to amend and the accompanying motion to seal (ECF Nos. 170, 171) are **TERMINATED AS MOOT**.  Those documents will remain sealed;
- Horizon's motion for reconsideration (ECF No. 190) is **DENIED** but the accompanying motion to seal (ECF No. 191) is **GRANTED**;
- CURT's supplemental interrogatory responses are **STRICKEN** as to contentions 1-4 and 14;
- CURT's amended motion to amend and accompanying motion to seal (ECF Nos. 198, 199) are **DENIED WITHOUT PREJUDICE** (documents will remain sealed);
- CURT's motion to seal at ECF No. 207 is **GRANTED**;
- CURT's motions to withdraw (ECF Nos. 214-219) are **GRANTED**; and
- Horizon's motion to seal (ECF No. 224) is **HELD IN ABEYANCE** pending support for sealing CURT's documents.

The Court will schedule a hearing on CURT's motion to compel (ECF No. 180) and Horizon's motion for sanctions (ECF No. 225).  Counsel from Honigman need not attend the hearing.  If after the hearing the Court requires a response from Honigman counsel, a response will be ordered.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: January 14, 2025                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge