UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORIZON GLOBAL
AMERICAS, INC.,
  Plaintiff/Counter-Defendant,
v.

CURT MANUFACTURING,
LLC,
  Defendant/Counter-Plaintiff.
_____/

Case No. 17-11879

Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS (ECF No. 225)

Horizon seeks sanctions to remedy what it says is willful misconduct—hiding the existence of additional infringing products, failing to comply with the Court's discovery Order, and failing to produce a prepared corporate witness.  It seeks sanctions under Fed. R. Civ. P. 37(b)(2)(A) (for failure to obey a discovery order), (c) (for failure to supplement an earlier discovery response), (d) (failure to adequately prepare the corporate representative for deposition), and (e) (for failure to present electronically stored information); Rule 16(f) (for failure to obey a pretrial order); Rule 26(g) (for failure to accurately certify that discovery responses were complete); and the Court's inherent authority to impose sanctions.  (ECF No. 225).  CURT insists it was never obligated to provide the information Horizon

seeks and that its witness was adequately prepared given the overbroad language of the topics in Horizon's deposition notice.

Horizon cites a four-factor test for imposing sanctions that is used only when dismissal is a potential sanction. *See J&J Sports Prods., Inc. v. Brad's, Inc.*, 2018 WL 3803754, at *2 (E.D. Mich. Aug. 9, 2018) ("When deciding whether to impose the 'extreme sanction' of entering a default judgment under Rule 16(f), the district court must weigh four factors"). Part of Horizon's relief requested is to strike CURT's non-infringement defenses to Horizon's '142 Patent. Striking defenses is a dispositive action. Discussed more fully below, however, the Court will not strike defenses. Since dispositive relief is not granted, the Court will not address the four-factor test.

A.    Additional Infringing Products

1.    Background

The discovery disputes at issue here concern allegedly infringing electrical taillight signal converter aftermarket products related to Horizon's '142 Patent. Horizon insists it has been seeking and still needs a complete list of infringing signal converter aftermarket products from CURT. The dispute about additional infringing products stems from Horizon's Interrogatory No. 18, which reads:

> Identify the product name, part number, and SKU
> number for any past or present Curt product that fits the
> definition of "Accused Products" as set forth in the
> "Definitions" section above that is not already listed in

2

the "Accused Products" definition.  As a non-limiting
example, if Curt sells, or has sold, other puck-system
safety chain anchors under SKUs that are not listed in the
definition above, then Curt (which has greater knowledge
about its products and part numbers than Horizon) should
identify those SKUs in response to this interrogatory.

(ECF N. 146-7, PageID.5423-24).  Horizon defined "Accused Products" to

include, pertinent to this motion, CURT's "Taillight Converters" with listed

example part numbers and "[a]ny Curt product with a substantially similar[]

configuration and functionality as" the taillight converters.  (*Id.* at PageID.5416-

17).

In its October 2018 response, CURT objected: the definition of "Accused

Products" was overly broad and not proportional to the needs of the case.  CURT

specifically objected to the interrogatory "to the extent it seeks information relating

to CURT products not specifically accused by Horizon."  CURT further objected

"to the extent it purports to shift the burden of Horizon's pre-filing obligations

under Fed. R. Civ. P. 11 to CURT."  (ECF No. 232-2, PageID.10478-79).

Horizon contends that the objection is boilerplate and thus should be

disregarded, and that CURT's conduct since the October 2018 response exhibits a

waiver of the objection.  CURT disagrees.

The parties conferred about Interrogatory No. 18 during June and July 2024.

Horizon explained in an email to CURT that it was looking for "the identification

of other Curt products that share the same or similar accused functionality but

3

where those . . . SKUs are not publicly available or have not been identified to date." (ECF No. 133-3, PageID.4774).  Horizon said the interrogatory called for the identity of any product sold through various distribution channels, such as OEM or aftermarket channels.  (*Id.*).

In response to that email, CURT gave its understanding of the interrogatory. CURT believed that Horizon "clarified the scope of Interrogatory No. 18 [so that it] is only seeking identification of alternative SKU numbers for the CURT Accused Products, not additional SKU numbers for different CURT products that have not been accused of infringement." (ECF No. 133-15, PageID.4973).  This is in keeping with CURT's objection to the interrogatory, i.e., that it was not identifying new or additional products.

Horizon pushed back.  First, it confirmed with a deponent that OE products were designated with a different product number, which ostensibly means Horizon needed the OE part numbers for already-identified products.  The dispute related to OE products is addressed below.  Next, it said that any product with infringing functionality sold under a different part number or in a different distribution channel, "or for any other reason," comes within the interrogatory.  (*Id.*).  Soon thereafter, Horizon gave CURT a list of additional products for which to provide technical and sales information.  (ECF No. 225, PageID.10240).  CURT then supplemented with additional SKUs for Horizon's fifth wheel hitch patent and for

additional aftermarket products that Horizon identified. (*Id.*). CURT did not, however, state it was withholding information pursuant to an objection, so Horizon believed that CURT's answer was complete, i.e., that CURT identified all possible additional infringing products. (*Id.*).

Before the September 2024 hearing on Horizon's motion to compel, Horizon served additional discovery requests on CURT to identify the representativeness of accused products (these appear limited to microcontrollers or circuit boards for signal converters) and to state where the components did not differ in functionality between the signal converters they were used in. During the September 2024 hearing, Horizon agreed to drop its additional discovery requests and CURT agreed to chart representativeness. In the declaration accompanying CURT's chart, the declarant, Mr. Fisher, did not state that production was complete or that it included all accused products. (*Id.* at PageID.10244). Then, during his deposition, Horizon asked Mr. Fisher which signal converters contained a microcontroller. He needed to refer to the bill of material for each product to say whether the product met the definition of an accused product, i.e., whether it contained a microcontroller. (*Id.*). The company then asked him how Horizon could figure out which CURT products contained an M360 or M320 circuit board. Mr. Fisher explained that it would have to conduct a "where used" search of a CURT database to identify all the products that contain those circuit boards. (*Id.* at

PageID.10245).  CURT refused to conduct this search.  So Horizon says that Rule 26(g) sanctions are warranted for CURT's failure to conduct a reasonable investigation and disclose all aftermarket products with accused functionality. According to Horizon, it realized CURT was withholding additional infringing products when it learned about the "where used" search.

Sometime during all this, CURT supplemented responses identifying 14 aftermarket products that Horizon had not yet identified as accused products. (ECF No. 258, PageID.12365, Hearing Transcript).  It is unclear if these products were identified during the July 2024 supplementation or in connection with the agreement made during the September 2024 hearing.

CURT falls back on its objection to Interrogatory No. 18 for products with similar functionality as overly broad and vague, and an improper burden shift, a position it maintained in its July 2024 communication to Horizon's counsel. CURT acknowledges that there are instances in which the patent plaintiff is entitled to discovery of unaccused products but argues that this is not such a circumstance.  Chief among the reasons is that the aftermarket products are listed on CURT's public website.  (ECF No. 231, PageID.10457-59) (citing *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. De. 2012)).

To be clear, Horizon never moved to compel supplemental responses to Interrogatory 18 and the Court never ordered CURT to supplement responses to

identify signal converter products with functionality similar to already-accused products. This means sanctions for failure to obey a Court order are unavailable. What is left is Horizon's nod to Rule 26(g) and the Court's inherent authority to impose sanctions to prevent the abuse of the judicial process. Sanctions may be warranted if CURT's counsel did not undertake a reasonable investigation to identify additional products (Rule 26(g)), if it was required to, or if CURT needlessly increased the scope and cost of litigation by its conduct (inherent authority).

>    2.    Discussion

Rule 26(g) sanctions are uncalled for. From Horizon's perspective, Mr. Fisher's deposition testimony revealed the potential existence of additional infringing aftermarket products when he testified about the "where used" search. From CURT's perspective, it properly objected to Interrogatory 18 and Horizon did not challenge that objection. So CURT says it was not required to search for additional allegedly infringing products.

Rule 26 (g)(1) requires an attorney responding to discovery requests to certify that, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the response is "complete and correct as of the time it is made." Sanctions, including costs and attorney's fees, are available for violating the certification requirement. *See* Fed. R. Civ. P. 26(g)(3). "Sanctions under Rule

26(g)(3) are not discretionary if the district court finds that a discovery filing was signed in violation of the rule." *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 741 (6th Cir. 2002).

Unless Horizon's interrogatory was sufficiently articulated and CURT's objection is rejected, the Court cannot conclude that CURT's counsel failed to undertake a reasonable inquiry and violated Rule 26(g).

Horizon contends that the *Invensas* factors weigh in its favor so discovery into unaccused products should be allowed. *Invensas* determined that, in some circumstances, the patent plaintiff can seek discovery on unaccused products on a case-by-case basis focusing on

> (1) as to relevance, the specificity with which the plaintiff has articulated how the unaccused products are relevant to its existing claims of infringement (and how they are thus "reasonably similar" to the accused products at issue in those claims); (2) whether the plaintiff had the ability to identify such products via publicly available information prior to the request and (3) the nature of the burden on defendant(s) to produce the type of discovery sought.

*Invensas,* 287 F.R.D. at 282.

Horizon does not succeed on the first factor. Horizon argues that it was specific enough in identifying what it was looking for. This is evidenced by CURT's ability to identify products with similar configurations and functionality, presumably the 14 aftermarket products discussed above. And Horizon has

maintained through the litigation that infringing products have the same

components.  So at least as to circuit boards, Horizon says that because all products

with the M360 and M320 circuit boards operate according to the produced source

code, there are no functional differences between those circuit boards used across

different products.  (ECF No. 235, PageID.10986).  CURT contends that Horizon

did not sufficiently articulate how an unaccused product could be reasonably

similar to accused products to allow CURT to easily identify relevant unaccused

products.  (ECF No. 231, PageID.10458).  It also argues that discovery about

circuit boards was never part of any discovery request.

In seeking discovery of unaccused products, "a plaintiff must identify those

systems and the components, characteristics, or elements allegedly causing

infringement with requisite specificity."  *Cormack v. United States*, 117 Fed. Cl.

392, 405 (2014) (citation omitted).  Patent plaintiffs are not required "to name

specifically the products respecting which they seek discovery to establish their

relevance to the patent at issue," but they are required to "identify those systems

and the components, characteristics, or elements allegedly causing infringement

with requisite specificity."  *Id.* (citation omitted).  That is why some courts require

the plaintiff to narrow a request that defines the products it seeks to products

"sufficiently pertinent in function to the alleged infringement of the patents-in-

suit."  *Id.* (citation omitted); *see also High 5 Games, LLC v. Marks*, 2019 WL

9

1499769, at *6 (D.N.J. Apr. 5, 2019) ("the discovering party must provide a mechanism for the responding party to determine whether a particular device is reasonably similar.").

Interrogatory 18 does not meet this standard. Horizon left it to CURT to determine whether and how its unaccused products might infringe on Horizon's '142 Patent, a patent for which Horizon identified multiple possible avenues of infringement. (*See* ECF No. 24, Amended Complaint).

The parties also dispute whether the information Horizon seeks is publicly available as contemplated by the second element. There was much back and forth on this at the hearing. CURT maintained that its public website and other documents in Horizon's possession gave the information necessary for Horizon to identify more products. Horizon maintained that it could identify *all* additional products only with resort to internal documents, so CURT needs to do the work. (*See* ECF No. 258, PageID.12350-51, 12355-56, 12365). The Court is not going to attempt to wade into this pool of argument. It will hopefully suffice to say that, because CURT's corporate representative testified that at least some of the information Horizon wants is not public, the Court finds this factor in Horizon's favor. Lack of clarity on this from CURT will not be viewed favorably to CURT.

As to the third factor, had Horizon more explicitly defined what would comprise an unaccused product, the burden on CURT to identify unaccused products would be small.

That said, because the interrogatory was insufficiently defined, the Court cannot conclude that Horizon was entitled to the discovery from CURT absent a Court order for supplemental responses.

Moreover, CURT's initial objection to the interrogatory is not boilerplate. Boilerplate objections amount to no objection at all. *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 210 (E.D. Mich. 2018). But CURT's objections to vagueness and burden-shifting are not the kinds of "generalized, blanket objections" that courts disapprove of. *Mich. Auto. Ins. Placement Facility v. New Grace Rehab. Ctr.*, 2019 WL 355654, at *2 (E.D. Mich. Jan. 29, 2019) (citation omitted). The objection is clear about what CURT claims. CURT says that "Accused Products" is overbroad as it seeks information related to products Horizon had not yet identified as accused, and shifted the burden to CURT to identify its own products that have allegedly infringing functionality. (ECF No. 232-2, PageID.10478-79). This is a specifically articulated objection, not a boilerplate objection, so it was not waived at the outset.

The Court does not find that CURT waived its objection by identifying 14 previously unaccused products. CURT reiterated its objection to Interrogatory 18

11

in emails exchanged during June and July 2024.  CURT stood firm that it

understood Horizon to seek product numbers for already-accused products.

Having stood by this position in discussions, the Court does not find a waiver of

the objection when CURT supplemented a response including 14 previously

unaccused aftermarket products without indicating that the identification was

subject to its objection.

Neither party acted perfectly here.  Horizon should have moved to compel in

July based on CURT's response related to Interrogatory 18, or confirmed that the

additional 14 products were all the possible infringing products.  CURT should

have said whether those 14 products were identified subject to its objection.  Both

parties have "should haves."  CURT will not be sanctioned under Rule 26(g) for

not avoiding its "should have."

Likewise, the Court will not sanction CURT under its inherent authority

because of the insufficiently articulated interrogatory.

Horizon cites *Sanford v. Russell*, 2021 WL 1186495 (E.D. Mich. Mar. 30,

2021), in support of the Court's use of its inherent authority.  *Sanford* was clear

about the scope of available sanctions imposed under the Court's inherent

authority:

> "Federal courts [also] possess certain 'inherent powers,'
> not conferred by rule or statute, 'to manage their own
> affairs so as to achieve the orderly and expeditious
> disposition of cases.'"  *Goodyear* [*Tire & Rubber Co. v.*

*Haeger*], 137 S. Ct. [ 1178,] 1186 [(2107)] (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).  "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"  *Ibid.*  "[O]ne permissible sanction is an 'assessment of attorney's fees' . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side."  *Ibid.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).  However, the Supreme Court "has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature."  *Ibid.*  "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue. . . .  Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link — between the litigant's misbehavior and legal fees paid by the opposing party."  *Ibid.*  Thus, "[t]he complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct."  *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011)).

Because Horizon has not sufficiently shown misconduct as it relates to aftermarket products and Interrogatory 18, the Court will not impose any sanctions under its inherent authority.

Though no sanctions will be awarded, the Court will allow Horizon the opportunity to amend Interrogatory 18.  Below, the Court provides new scheduling order deadlines that should accommodate this.

B.    <u>October 2024 Production of OE Technical and Sales Documents</u>

13

On July 26, 2024, Horizon moved to compel additional product numbers for CURT's OE products.  The parties were before the Court on a hearing on that motion during September 2024.  These products were already identified.  CURT agreed to provide the information after Horizon gave it a list of accused products. Horizon insisted that it couldn't; CURT's product numbers for the OE products were not publicly available.  Because the SKUs were not public, the Court ordered CURT to produce a final list of OE products.  (ECF No. 185).  CURT supplemented its response on October 10, 2024, identifying a "staggering" number (about 150) of new, additional SKUs and tens of millions of dollars in previously unreported sales.  (ECF No. 225, PageID.10242).  Horizon says it would have had this information sooner had CURT fully responded to Interrogatory 18.  (*Id.* at PageID.10250).

In its September 26, 2024, Order, the Court ordered CURT to produce the part numbers, technical documents, and sales information for the OE products at issue in the motions then pending.  (ECF No. 185, PageID.8146-47).  In its supplemental response, CURT provided over one hundred new product numbers. Critically, it did not produce technical documents for many of those products. (ECF No. 235, PageID.10981).  CURT said the documents either did not exist or could not be located.  (ECF No. 231, PageID.10447).  More specifically, CURT says it conducted a "painstaking and time-consuming investigation into every

legacy file, database, and internal system for OE SKUs and related technical documentations." (*Id.*; ECF No. 234). Horizon asserts that this excuse is bogus—customers require companies to keep technical information about their OE products. (ECF No. 225, PageID.10251). It notes that some products with missing documents were sold as recently as 2023. (*Id.*). Because of this missing information, Horizon argues that CURT failed to obey the Court's Order.

"On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Available sanctions under Rule 37(b)(2) include prohibiting the disobedient party from supporting or opposing designated claims or directing that certain matters be taken as established. The Court is not limited to those sanctions listed in the rule. This list of sanctions is also available if a party did not adequately prepare a Rule 30(b)(6) witness for deposition. Along with those sanctions, the Court may require the disobedient party to pay the reasonable expenses and fees caused by the failure unless the failure was substantially justified or other circumstances would make an award of expenses unjust. Fed. R. Civ. P. 37(d)(3).

The Court cannot award sanctions for withholding documents without evidence that responsive documents have been impermissibly withheld. Until there is evidence, Horizon's speculation is not enough. That said, the search for

technical documents occurred during CURT's prior counsel tenure.  And the Court has some concern about how thorough that search was, considering that some products were sold during 2023.  It does seem odd that prior counsel and CURT could not locate technical documents for products sold so recently.

No sanctions will be awarded yet.  Instead, current CURT counsel and/or CURT employees must undertake a new search with their client for the relevant technical documents.  If CURT counsel is not involved in the search, counsel must review the search efforts to determine whether efforts were reasonable and thorough.  When complete, counsel must file notice certifying that the search is complete and that documents were not located, or documents were located and produced, or documents were located but not produced based on a specific objection.  The Court will revisit sanctions related to production of technical documents only after the second search is complete.  Search and certification must be complete **by May 2, 2025**.  Thus, the motion for sanctions related to the technical documents is **DENIED WITHOUT PREJUDICE**.

C.     <u>Rule 30(b)(6) Deposition</u>

The final issue in the motion for sanctions is whether CURT adequately prepared Mr. Fisher as a corporate representative.  There are two potential avenues for sanctions here—one is violation of a Court order because the Court required CURT to produce Mr. Fisher for a full day of Rule 30(b)(6) testimony on electrical

products, and the other is "failure to attend a deposition" because of the failure to adequately prepare for the deposition.

Before deposing Mr. Fisher, Horizon moved for leave to depose him for 21 hours. The parties came to an agreement—Horizon would depose him for two days, 14 hours total. The dispute left for the Court to decide was whether Horizon would be limited to only three hours of corporate representative testimony on the second day or whether Horizon could choose how to spend the second day of deposition. The Court allowed Horizon to choose how to allocate its time. One of CURT's arguments against this was that it would be burdensome to prepare Mr. Fisher for another day of 30(b)(6) topics. The Court dismissed this argument. CURT was willing to prepare Mr. Fisher for three hours of 30(b)(6) testimony. The Court saw no meaningful difference in preparing for three hours versus more than three hours. (ECF No. 185, PageID.8143-44). The second day of the deposition occurred on October 2, 2024.

The second day of the deposition focused on the accused signal converter products, which concern electrical engineering, raised in Horizon Patent '142. (*See* ECF No. 232-3, Deposition Notice). The topics at issue here are Topics 7, 8, 10, 15, and 16. Horizon summarized the topics during the deposition: "Topic 7 is Curt's first awareness of the Horizon patents; Topic 8 is opinions of counsel; Topic 10 is the technical operation of the accused CURT products; Topic 15 is the design

17

and development of the accused CURT products; and Topic 16 is modifications to the accused CURT products." (ECF No. 239-8, PageID.11115). Horizon dropped its motion with respect to Topic 8.

Horizon notes that Mr. Fisher has no electrical engineering background and spent very little time preparing for the deposition. (ECF No. 225, PageID.10247). It gave examples of Fisher's inability to answer questions on some of these topics. For instance, for Topic 7, he was asked when CURT first became aware of Horizon's patents. (*Id.* at PageID.11117). Fisher said Horizon would have to ask the former CEO to get an answer. (*Id.*). The discussion later turned to signal converters. Mr. Fisher testified that the few products they had been discussing contained an M86 circuit board but no microchip. (*Id.* at PageID.11128-29). Horizon then asked Mr. Fisher to describe how the M86 board operates and how it was designed and developed, as called for in Topics 10 and 15. Mr. Fisher could not answer those questions. (*Id.* at PageID.11129-30). He could not answer the same questions for the M360 or M320 circuit boards, either. (*Id.* at PageID.11130-31).

CURT contends that the topics were "unreasonably broad, encompassing a range of undefined products and technologies (*e.g.*, 'technical operation' and 'design and development' of all accused products). (ECF No. 231, PageID.10449, 10462). It says Horizon never served more narrowly tailored topics nor provided

more specificity.  For instance, Horizon did not notice a topic regarding a specific

component, including any particular circuit board.  And CURT says the topics

relied on the overbroad definition of "Accused Products" in Interrogatory 18 which

do not meet the reasonable particularity requirements.  Still, CURT insists that Mr.

Fisher was adequately prepared and answered many questions.  (*Id.*).  Lastly,

CURT says any gaps in testimony were filled by its fact witness Robert Lange

whose testimony the company retroactively designated as 30(b)(6) testimony.  (*Id.*

at PageID.10463-64).

Rule 30(b)(6) places burdens on both parties.  The party seeking the

deposition "must describe the matters to be explored in the deposition with

'reasonable particularity' sufficient to enable the responding corporation or

business entity to produce a representative witness who can testify to the entity's

knowledge on the topics so identified."  *Alvey v. State Farm Fire & Cas. Co.*, 2018

WL 826379, at *3 (W.D. Ky. Feb. 9, 2018) (citation omitted).  A topic is stated

with reasonable particularity if it provides reasonable notice of what is called for.

*Id.*

The noticed party must designate a person or persons knowledgeable in the

topics listed in the notice to testify on the corporation's behalf.  *Wicker v. Lawless*,

278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) (citations omitted).  Before the

deposition, the designating party must prepare the witness to testify on matters not

only that the deponent knows, but also those that should be known by the designating party. *Id.*; *United States v. Humana, Inc.*, 2023 WL 3168340, at *3 (W.D. Ky. Apr. 28, 2023) ("Rule 30(b)(6) testimony is designed to be representative of the corporation's knowledge not the individual's knowledge."). "[T]he corporation or agency in preparation for the Rule 30(b)(6) deposition must review all matters known or reasonably available to it in a good faith effort to find out the relevant facts and to collect information, review documents[,] and interview those employees with personal knowledge." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2016 WL 9460471, at *4 (W.D. Ky. June 29, 2016).

Though the deponent must be prepared to testify to a broad range of relevant topics, "absolute perfection is not required of a 30(b)(6) witness." *Wicker*, 278 F. Supp. 3d at 1000. "The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012).

Producing an unprepared witness is akin to failure to appear and may subject the designating party to sanctions under Rule 37(d). *Wicker*, 278 F. Supp. 3d at 1000. The party claiming that a corporate representative was unprepared "must make at least an initial showing—with record citations—suggesting that the designee's preparation was inadequate." *Id.* (citation omitted). If the deponent is

deemed unprepared, the producing party is subject to the sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).  Fed. R. Civ. P. 37(d)(3).  Instead of or in addition to those sanctions, the Court must require the party failing to act, and/or its attorney, to pay reasonable expenses and attorney fees caused by the failure unless the failure was substantially justified.  *Id.*

CURT never objected to Topics 7, 10, and 16 on the grounds of overbreadth or vagueness.  (ECF No. 232-3, PageID.10490-93, 10499-10500).  It objected to Topic 15 in part on the ground that the topic is vague, ambiguous, or confusing, "including as to the 'Relevant Features.'"  (*Id.* at PageID.10498).  Topic 15 called for testimony about the design, development, and technical operation of any CURT Covered Product, "including any product that contains the Relevant Features" and any Accused Product.  It appears that Horizon defined Accused Products to be those CURT products accused of infringing the '142 Patent and Covered Products are Horizon products covered by its '142 Patent.  (*Id.* at PageID.10485).  The deposition notice does not define "Relevant Features."

The Court has no trouble finding that Topics 7 and 10 are stated with reasonable particularity.  CURT did not attempt to explain Fisher's inability to testify to the dates CURT first learned of Horizon patents and steps taken to determine whether it was infringing any Horizon patents.  But CURT argues that Topic 10 is problematic because it calls for the operation of any CURT Accused

Product, and it insists that "Accused Product" is overbroad as argued for Interrogatory 18.  Yet CURT did not point to deposition questions about an unaccused product.  Though it argues that no topic called for information about specific circuit boards, it did not explicitly connect the circuit board questions and whether those boards relate to as-of-yet unaccused products.  Indeed, Mr. Fisher was able to answer some questions about circuit boards, so it not as if the discussion of circuit boards caught him completely off guard.  (*See, e.g.*, ECF No. 239-8, PageID.11129).  But he could not answer questions about the technical operation of the products he was able to identify.  Technical operation is specifically called for in Topic 10.  Based on these observations, the Court finds that Mr. Fisher was inadequately prepared on Topics 7 and 10.

The only topic that CURT can reasonably be said to have objected for insufficient particularity is Topic 15.  As noted, this topic addresses any product that contains "Relevant Features," but "Relevant Features" is not defined in the notice.  Neither party points to another document that would contain the definition.  Still, as with Topic 10, CURT did not point to deposition questions that related to an unaccused product or a product that Horizon believed contained "Relevant Features" that Mr. Fisher could not address.  CURT's argument mentions the circuit boards, but based on the information presented to the Court, the circuit boards are reasonably encompassed in the topics and Mr. Fisher could testify about

some aspects of the circuit boards.  It is one thing to characterize a topic as vague or ambiguous before the deposition occurs and another thing to show that the questions asked concerned vague or ambiguous subject matter that the deponent could not reasonably answer.  CURT did not do the latter, which makes it difficult for the Court to conclude that Horizon's Topic 15 did not have the requisite reasonable particularity.

The same is true for Topic 16.  Topic 16 called for information about modifications, improvements, enhancements, or material changes to Covered Products or Accused Products following their initial launch.  (ECF No. 232-3, PageID.10497-99).  CURT did not object on vagueness or overbreadth, nor did it point to instances during the deposition where Horizon asked questions about modification to products that Mr. Fisher could not reasonably have been prepared to discuss.

Given CURT's insufficient argument, the Court need not decide the sufficiency of objections to the topics.  Instead, based on a reading of the deposition transcript (ECF No. 239-8) and the arguments presented, the Court concludes that Mr. Fisher was inadequately prepared to testify as a corporate representative.  It is notable, as Horizon suggests, that Mr. Fisher spent only around three hours to prepare for the electrical engineering day of the deposition, did not review documents, and did not undertake independent effort to prepare for

23

the subject matter, despite having no background in electrical engineering.  (ECF No. 23908, PageID.11103-04, 11113).  As noted in the Order requiring Mr. Fisher to be prepared for more than three hours of 30(b)(6) testimony, CURT could have chosen a different person as its representative, but it chose Mr. Fisher as its sole representative.  With that decision comes the responsibilities outlined above.

CURT argues that Robert Lange's testimony about the electrical engineering products covers much of what Mr. Fisher did not.  This argument is not well taken.  The parties deposed Robert Lange, a former CURT engineer who testified as a fact witness.  Later, CURT retroactively designated Mr. Lange as a Rule 30(b)(6) witness.  According to CURT, since Horizon knew that Mr. Lange helped develop some accused products, it had ample opportunity to ask him about the products during the deposition.  (ECF No. 231, PageID.10463, n. 12).  Mr. Lange's testimony is doubly important to CURT because when it retroactively changed Mr. Lange's designation, it also identified Mr. Fisher to testify to the "remainder" of Topics 7, 10, and 15 unaddressed by Lange.  (*Id.* at PageID.10448).

It is not as clear as CURT suggests that Mr. Lange addressed questions that Mr. Fisher could not answer.  He could not recall the circumstances in which he was made aware of one of Horizon's patents (Topic 7), though he did answer some questions about circuit boards (Topics 10 and 15).  (ECF No. 232-15).  It does not appear that Mr. Lange addressed anything related to Topic 16.  Nor did Horizon

24

agree to the retroactive designation.  At the time CURT's counsel announced the
new designation, Horizon's counsel explained that "by not identifying him as a
30(b)(6) witness in advance, obviously we didn't prepare to take him as a 30(b)(6).
. . . So it [the deposition] was limited to his personal capacity."  (ECF No. 236-3,
PageID.11012-13).

     As for the "remainder" of the topics Fisher was designated to address,
Horizon points out that neither its counsel nor Mr. Fisher understood the scope of
his responsibility to address the "remainder" of the topics.  (ECF No. 235,
PageID.10987).  And when ruling on the issue of Mr. Fisher's deposition, the
Court was neither presented with argument nor made a ruling with respect to a
"remainder" of topics.  The Court rejects the contention that Mr. Fisher was
appropriately and adequately identified to address the "remainder" of topics.

     Because (1) Mr. Lange did not address everything Mr. Fisher could not
answer, (2) Horizon was unprepared to question Mr. Lange as a corporate
representative, (3) Horizon objected to the retroactive designation, and (4) the
Court rejects the "remainder" argument, the Court concludes that there is no
adequate justification for Mr. Fisher's inability to answer questions on Topics 7,
10, 15, and 16.  In short, Mr. Fisher was unprepared for the deposition.

    D.    Sanctions Award

    Sanctions are warranted.  Horizon wants these sanctions imposed:

1) Court supervised investigation (directly or through a Special Master at Curt's expense) and supplemental response to Interrogatory No. 18, including performing the necessary "where used" searches first described by Mr. Fisher at his October 2 deposition.

(2) Strike Curt's defenses of non-infringement as to the '142 patent.

(3) Enforce the parties' agreement as to representativeness for all late disclosed products given that Curt has lost, destroyed, or inexplicably does not have the basic technical information as to the functionality of the newly disclosed products.

(4) An instruction to inform the jury of Curt's misconduct.

(5) Monetary sanctions for the additional litigation Curt necessitated, including fees and costs associated with Horizon's Motion to Bifurcate, Horizon's Opposition to Curt's Motion for a Protective Order, Horizon's Motion to Compel, the September 16 hearing where Curt made numerous misrepresentations to the Court, this Motion, and the October 2 Fisher deposition, where Curt's Rule 30(b)(6) designee was not prepared to testify on the electrical technology and accused products.

Most of these would be inappropriate considering Horizon was fully successful only on the deposition issue.

For CURT's failure to provide a knowledgeable Rule 30(b)(6) witness, the Court **ORDERS** that the second day of Rule 30(b)(6) be redone. CURT must select and prepare a corporate representative to testify to Topics 7, 10, 15, and 16 (not the "remainder" of those topics) in a single day, seven-hour deposition. The

deposition will be entirely at CURT's expense—this includes all costs associated with the deposition **AND** Horizon's attorney fees and costs incurred in preparing for and attending the redeposition.

Monetary sanctions are in order.  Rule 37(d)(3) *requires* an award of expenses caused by the failure to attend a deposition instead of or in addition to other sanctions.  CURT's position concerning Mr. Fisher's deposition preparedness was not substantially justified, and the Court sees no obvious circumstances that would make an award of expenses unjust.  To compensate Horizon for its successful argument related to the deposition, the Court requires CURT to pay Horizon's attorney fees associated with re-deposing Mr. Fisher, as explained above, and awards Horizon half of its attorney fees and costs incurred in drafting, filing, and arguing this motion.  The Court chooses an award of half of the fees and costs incurred drafting and arguing this motion because the deposition issue took up about half the time of oral argument and about half of the motion practice.  Horizon must submit a bill of costs to CURT within 21 days of this Order.  If after conferral the parties cannot agree on the award, Horizon must file the bill of costs and supporting argument.  CURT must respond to the bill of costs within 14 days.  No reply will be allowed.

To accommodate the search for technical documents and the redeposition, the Court will shift all expert-related scheduling order deadlines back two months.

Opening expert reports are due June 4, 2025; rebuttal expert reports are due July 2, 2025; and expert discovery closes August 1, 2025.  The search for technical documents must be **completed by May 2, 2025**.  The Court will leave it to the parties to schedule Mr. Fisher's deposition.  If an issue arises with scheduling, the parties must contact chambers to schedule a status conference.

These new scheduling order dates are designed to give Horizon time to amend Interrogatory 18 if it chooses to.

The Court will not award sanctions for failure to produce technical documents now.  Instead, CURT will undertake a final search for the documents and CURT's counsel will certify that those efforts were reasonable.  If after that search Horizon wants to pursue sanctions and no agreement is reached between the parties, Horizon may file a motion.

The Court will not recommend to the District Judge that a jury instruction be read informing the jury of misconduct.  That said, should future misconduct come to light, Horizon can raise the issue with the District Judge at that time.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R.

28

Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.


Date: April 11, 2025                     s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge